**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| NORMA CHRISTIAN, | : | CIVIL ACTION NO. |
| *Plaintiff* | : | 3:03CV00524(RNC) |
| | : | |
| v. | : | |
| | : | |
| JUDICIAL BRANCH OF THE | : | |
| STATE OF CONNECTICUT, | : | |
| COURT OPERATIONS DIVISION | : | |
| and SABRINA SANTORO, | : | August 19, 2004 |
| *Defendants.* | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

The Plaintiff, Norma Christian, has filed a Complaint against the State of Connecticut, Judicial Branch ("Judicial") and her supervisor, Sabrina Santoro ("Santoro"). In the Complaint, the Plaintiff alleges that she was discriminated based upon her race, color, disability, a previous arrest, and in retaliation for complaining about such discrimination. The Plaintiff also alleges that the defendants have deprived her of the right to equality in her contractual relationships in violation of Section 1981 of Title 42 of the U.S. Code.

The Plaintiff asserts that the defendant Judicial is liable under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, Section 504 of the Rehabilitation Act of 1973, and by Conn. Gen. Stat. §§ 46a-58(a), 46a-60(a)(1), 46a-60(a)(4), 46a-79, and 46a-80. The Plaintiff alleges that Santoro is liable pursuant 42 U.S.C. § 1983 and for intentional infliction of emotional distress and that Santoro deprived her of rights under the Fourteenth Amendment to the U.S. Constitution under color of state law.

The Defendants are filing this motion for summary judgment on all claims raised in the Plaintiff's Complaint. More specifically, the Defendants request that summary judgment be entered in their favor on the following grounds:

1. The Eleventh Amendment bars the Plaintiff's claims against the State: under 42 U.S.C. § 1981; under Section 504 of the Rehabilitation Act; for money damages and injunctive relief; for violations of Conn. Gen. Stat. §§ 46a-60, 46a-79 and 46a-80 (CFEPA) ;

2. The Plaintiff cannot establish a claim under 42 U.S.C. § 1981 and the State is not a person under § 1981;

3. The Plaintiff has failed to state a valid claim of a Title VII violation;

4. The Defendant Santoro may not be held liable under Conn. Gen. Stat. § 46a-60(a)(1);

5. The Plaintiff has failed to state a claim under Section 504 of the Rehabilitation Act;

6. The Plaintiff cannot establish a § 1983 claim against the Defendant Santoro and she is entitled to qualified immunity from damage claims;

7. The Plaintiff has failed to exhaust her administrative remedies and her claim under Conn. Gen. Stat. §§ 46a-79 and 46a-80 is untimely;

8. Plaintiff has no cause of action against the Defendants pursuant to Conn. Gen. Stat. § 46a-58;

9. The Plaintiff has not established a prima facie claim for intentional infliction of emotional distress; and,

10. The Plaintiff's claim for monetary damages from the defendants under 42 U.S.C. § 1981 is barred because 42 U.S.C. § 1983 is the exclusive federal remedy for the alleged violations by state actors.

## FACTS

The Defendants' Local Rule 56(a)1 Statement of Undisputed Material Facts, submitted pursuant to Local Rule 56(a) constitutes the facts of this case. Said Statement of Material Facts is incorporated herein by reference.

## LAW

### Standard Of Review.

A motion for summary judgment is granted when there is no genuine issue or dispute as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Larkin v. Town of West Hartford, 891 F. Supp. 719, 723 (D.Conn. 1995). A dispute over a material fact exists if the evidence would allow a reasonable jury to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The burden is on the moving party to demonstrate the absence of any material fact genuinely in dispute. American Int'l Group Inc. v. London American Int'l Corp., 664 F.2d 348, 351 (2d. Cir. 1981). However, "summary judgment must be entered against 'a party who fails ... to establish the existence of an element essential to [its] case, and on which it will bear the burden of proof at trial,'" Larkin, 891 F. Supp. at 723 quoting Celotex, 477 U.S. at 322.

> This court has held:
>
> In deciding whether there is a genuine issue of material fact, the court must draw all reasonable inferences in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986). Not every factual dispute will defeat a motion for summary judgment; a factual issue must be both "genuine" and "material." Id. at 247-48, 106 S.Ct. at 2509-10 (emphasis omitted). A factual issue is not "genuine" unless "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. at 248, 106 S.Ct. at 2510. A factual issue is not "material" unless it "might affect the outcome of the suit under the governing law." Id.

Larkin, 891 F.Supp. at 723-24.

Rule 56(c) "provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment: the requirement is that there be no genuine issue of material fact." Anderson v. Liberty, 477 U.S. at 247-248. Generally speaking, summary judgment is inappropriate where an individual's intent or state of mind are at issue. Patrick v. LeFevre, 745 F.2d 153, 159 (2d. Cir. 1984).

Summary judgment is available to defendants in discrimination cases. As the Second Circuit held in Meiri v. Dacon, 759 F.2d 989 (2d Cir.) cert. denied, 474 U.S. 829 (1985), in granting summary judgment for the defendants:

> . . ., we are of course mindful that summary judgment is ordinarily inappropriate where an individual's intent and state of mind are implicated. The summary judgment rule would be rendered sterile, however, if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion. Indeed, the salutary purposes of summary judgment - avoiding protracted, expensive and harassing trials - apply no less to discrimination cases than to commercial or other areas of litigation.

Id. at 998 (citations omitted); accord Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 40 (2d Cir. 1994).

To defeat the motion, the nonmoving party must show more than that "some metaphysical doubt as to the material facts." Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). "A party may not 'rely on mere speculation or conjecture as to the true nature of facts to overcome a motion for summary judgment.'" McCloskey v. Union Carbide Corp., 815 F.Supp. 78, 81 (D.Conn. 1993) quoting Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12, (2d. Cir. 1986) cert. denied, 480 U.S. 932 (1987). The "party opposing a motion for summary judgment simply cannot make a secret of his evidence until the trial for in doing so he risks the possibility that there will be no trial." Meiri v. Dacon, 759 F.2d at 998.

In the present case, the Plaintiff's total lack of evidence to support the essential elements of her claims compels the conclusion that no reasonable jury could render a verdict in her favor. As the Second Circuit stated in another employment discrimination case, "**some** evidence is not sufficient to withstand a properly supported motion for summary judgment; a plaintiff opposing such a motion must produce sufficient evidence to support a rational finding that the legitimate,

nondiscriminatory reasons proffered by the employer were false, and that more likely than not the employee's age [or national origin] was the real reason for the discharge." <u>Woroski v. Nashua Corporation</u>, 31 F.3d 105, 109-110 (2d Cir. 1994) (emphasis in original). In the absence of such evidence, summary judgment for the defendant is not only appropriate, but warranted in order to prevent the parties and this Court from "becoming entrenched in a frivolous and costly trial." <u>See</u> <u>Donahue v. Windsor Locks Board of Fire Commissioners</u>, 834 F.2d 54, 58 (2d Cir. 1987); <u>Raskin v. Wyatt</u>, 125 F.3d 55, 65 (2d Cir. 1997).

## ARGUMENT

I.     **The Eleventh Amendment Bars Plaintiff's Claims Under 42 U.S.C. § 1981; Pursuant to Section 504 of the Rehabilitation Act; For Money Damages And Injunctive Relief; For Violations Of Conn. Gen. Stat. §§ 46a-60, 46a-79 and 46a-80 ("CFEPA")**

The Court must dismiss the Plaintiff's claims against the Defendants, the Judicial Branch and Sabrina Santoro, brought pursuant to 42 U.S.C. § 1981; under Section 504 of the Rehabilitation Act; for money damages and injunctive relief; for violations of Conn. Gen. Stat. §§ 46a-60, 46a-79 and 46a-80, ("CFEPA") on the grounds that they are barred by the Eleventh Amendment. The named defendants in this case, a state employee and the state court system, are "an arm of the State" for purposes of Eleventh Amendment immunity. See <u>Banerjee v. Roberts</u>, 641 F.Supp. 1093, 1098 (D. Conn. 1986); <u>Mt. Healthy City School District Board of Education v. Doyle</u>, 429 U.S. 274, 280, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977).

The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of any State, or by Citizens or Subjects of any Foreign State.

The United States Supreme Court has consistently held that any unconsenting State is immune from suits brought in federal courts by its own citizens as well as by citizens of another

State. <u>Atascadero State Hospital v. Scanlon</u>, 473 U.S. 234, 105 S. Ct. 3142, 87 L. Ed.2d 171 (1985); <u>Edelman v. Jordan</u>, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L. Ed. 2d 662 (1974); <u>Hans v. Louisiana</u>, 134 U.S. 1, 10 S. Ct. 504, 33 L. Ed. 2d 842 (1890). In the absence of consent, a suit in which the State or one of its agencies or Branch is named as the defendant is proscribed by the Eleventh Amendment. See e.g. <u>Florida Dept. Of Health and Rehabilitative Services v. Florida Nursing Home Assn.</u>, 450 U.S. 147, 101 S. Ct. 1032, 67 L. Ed.2d 132 (1981) (per curiam). "This jurisdictional bar applies <u>regardless of the relief sought.</u>" <u>Pennhurst State School & Hospital v. Halderman</u>, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L. Ed. 2d 67 (1984) (emphasis added). Federal jurisdiction over suits against unconsenting States "was not contemplated by the Constitution when establishing the judicial power of the United States." <u>Hans v. Louisiana</u>, 134 U.S. at 15, 10 S. Ct. at 507.

A State may waive its Eleventh Amendment immunity, <u>Atascadero v. Scanlon</u>, 105 S. Ct. at 3145 or, in the absence of a waiver by the State, Congress may, pursuant to its authority under Section 5 of the Fourteenth Amendment, abrogate the Eleventh Amendment. <u>Fitzpatrick v. Bitzer</u>, 427 U.S. 445, 456, 96 S. Ct. 2666, 2671, 49 L. Ed. 2d 614 (1976). However, no such waiver may be found by the court unless the State has spoken in the "most express language or by such overwhelming implications from the test as [will] leave no room for any other reasonable construction." <u>Edelman v. Jordan</u>, 415 U.S. at 673, 94 S.Ct. at 1361 quoting <u>Murray v. Wilson Distilling Co.</u>, 213 U.S. 151, 171, 29 S. Ct. 458, 464, 53 L. Ed. 742 (1909)).

In this case, the State has not consented to suit nor waived its immunity and Congress have not abrogated that immunity. Accordingly, the plaintiff's § 1981 claim, the Rehabilitation Act claim, the claimed violations of CFEPA, and the claims for money damages and injunctive relief are all barred by the Eleventh Amendment.

### A. 42 U.S.C. § 1981 Claims

Claims brought pursuant to § 1981 against a state agency for money damages or injunctive relief are barred by the Eleventh Amendment. Edelman v. Jordan, 415 U.S. at 663 (holding that suits against states for money damages are barred by the Eleventh Amendment); McGinty v. New York, 251 F.3d 84, 90 (2d Cir. 2001), citing the holding in Cory v. White, 457 U.S. 85, 90-91, 102 S. Ct. 2325, 72 L. Ed. 2d 694 (1982), that states are protected by Eleventh Amendment immunity against suits seeking injunctive relief); see also Alabama v. Pugh, 438 U.S. 781, 98 S. Ct. 3057, 57 L. Ed. 2d 1114 (1978) (holding that the issuance of a mandatory injunction against the State of Alabama and the Alabama Board of Corrections was unconstitutional because the Eleventh Amendment barred suits brought against the States and their agencies).

The Plaintiff does not contend that the state has waived immunity in this case and has consented to suit. Therefore, regardless of the relief sought, the Defendants' motion for summary judgment on the pleadings for claims brought under § 1981 against the Judicial Branch and Santoro must be granted on the grounds that the claims are barred by the Eleventh Amendment. See, Pennhurst, 465 U.S. at 100, 104 S. Ct. at 908 (jurisdictional bar applies "regardless of the relief sought".)

### B. Claim Against Defendant Santoro

Plaintiff sued defendant Santoro in her individual capacity, seeking both monetary damages and injunctive relief. Santoro is a fellow state employee and the plaintiff's supervisor. "Injunctive relief against a state official may be recovered only in an official suit," Hill v. Shelander, 924 F.2d 1370, 1374 (7th Cir. 1991), because "[a] victory in a personal-capacity action is a victory against the individual defendant, rather than against the entity that employs him." Kentucky v. Graham, 473 U.S. 159, 167-68, 105 S. Ct. 3099 (1984). Marsh v. Krischner, 31 F. Supp. 79, 80 (D. Conn. 1998). Thus, to the extent that plaintiff seeks injunctive relief from Santoro in her individual capacity, that relief is not available.

### C. Plaintiff's Claims Under Section 504 of The Rehabilitation Act, 29 U.S.C. § 701 et seq.

There is no allegation that the state has consented to suit under the Rehabilitation Act or that Congress has abrogated the defendants' Eleventh Amendment immunity.  On the contrary, it is clearly established that claims under the Rehabilitation Act are barred by the Eleventh Amendment.  Garcia v. S.U.N.Y. Health Services Center of Brooklyn, 280 F. 3d 98, 114-115 (2d Cir. 2001); W.R. v. Conn. Dep't of Children and Families, 2003 U.S. Dist. LEXIS 5128 (D. Conn. 2003); Kilcullen v. New York State DOL, 2003 U.S. Dist. LEXIS 3826 (N.D.N.Y. 2003); Aiken v. Nixon, 236 F. Supp. 2d 211, 226 (N.D.N.Y. 2002).  Therefore, plaintiff's claims under the Rehabilitation Act claim should be dismissed.

Moreover, the individually named defendant, Santoro, may not be held liable under  §504 of the Rehabilitation Act.  In Garcia, the Court held that § 504 of the Rehabilitation Act did not provide for individual capacity suits.

Applying the Garcia holding to the instant case, the Plaintiff's Rehabilitation Act claim against Santoro should be barred as Santoro is an employee of the State of Connecticut.

### D. Claims Brought Under Conn. Gen. Stat. §§ 46a-60, 46a-79, and 46a-80 ("CFEPA")

The Plaintiff's claims against the Defendants for violating the Connecticut Fair Employment Practices Act, §§ 46a-60, 46a-79, and 46a-80, (hereinafter "CFEPA") are barred by the Eleventh Amendment.  In enacting CFEPA, the State of Connecticut did not waive its Eleventh Amendment immunity to suits in federal court.  Sections 46a-99 and 46a-100 expressly

limit suits to redress violations of CFEPA to actions brought in the state Superior Courts.

Section 46a-100 provides:

> Any person who has timely filed a complaint with the Commission on Human Rights and Opportunities in accordance with section 46a-82 and who has obtained a release from the commission in accordance with section 46a-83 or 46-101, **may also bring an action in the superior court for the judicial district in which the discriminatory practice** is alleged to have occurred or in which the respondent transacts business, except any action involving a state agency or official may be brought in the judicial district of Hartford.

Conn. Gen. Stat. § 46a-100 (emphasis added).

The issue of the state's waiver of immunity for redress of unfair employment practices in federal courts has been addressed by this court. <u>Walker v. State of Connecticut</u>, 106 F.Supp. 2d 364 (D.Conn. 2000). In <u>Walker</u>, a former deputy sheriff sued the Judicial Branch and county officials for the alleged discriminatory practices prohibited by Title VII of the Civil Rights Act of 1964. Included within that plaintiff's federal lawsuit were several causes of action for violations of CFEPA. In granting the defendant's motion to dismiss the state law claims, the court stated:

> Counts Four and Eight of the Complaint allege violations of the CFEPA. The only way plaintiff may bring a CFEPA claim in federal court against the State is by the consent of the State to be sued in that forum. The State has waived its immunity, but only as to cases brought in the Superior Court. Conn. Gen. Stat. Section 46a-99 provides that:

> Any person claiming to be aggrieved by a violation of any provision of sections 46a-70 to 46a-78, in-inclusive, may petition **the superior court for appropriate relief and said court shall have the power to grant such relief, by injunction or otherwise, as it deems just and suitable.**

> 'A state does not consent to suit in federal court by consenting to suit in the courts of its own creation.' <u>Smith v. Reeves</u>, 178 U.S. 436, 441-445, 20 S.Ct. 919, 44 L.Ed. 1140, (1900). This Court declines plaintiff's invitation to hold that simply because the State has consented to be sued in state court, it *a fortiori* must have meant to consent to federal jurisdiction also. '[I]t is not consonant with our dual system for the federal courts. . .to read the consent to embrace federal as well as state courts . . .[A] **clear declaration** of the state's intention to submit its fiscal problems to other courts than those of its own creation must be found.' <u>Great Northern Life Insurance Co. v. Read</u>, 322 U.S. 47, 54, 64 S. Ct 873, 88 L. Ed. 1121 (1944)(emphasis added), *quoted in* <u>Pennhurst State School & Hosp. v.</u>

Halderman, 465 U.S. 89, 99-100 n. 9, 104 S. Ct 900, 79 L. Ed.2d 67 (1983). The Court believes that the wording of the Connecticut statute, quoted verbatim, is the antithesis of the clear declaration mandated by Great Northern. **Summary judgment will be granted on the CFEPA claims as to the State and all defendants in both their individual and official capacities, as this Court lacks jurisdiction over the parties based on the clear reading of the statute.**

Id. at 370 (emphasis added.)

The reasoning in Walker is equally applicable to the present case. The Plaintiff's state law claims predicated on violations of CFEPA are barred by the doctrine of sovereign immunity and may not be brought in federal court by virtue of the Eleventh Amendment.

Moreover, the United States Supreme Court has also found that pendent jurisdiction does not override the Eleventh Amendment in cases against States based on state law.

As noted, the implicit view of these cases seems to have been that once jurisdiction is established on the basis of a federal question, no further Eleventh Amendment inquiry is necessary with respect to other claims raised in a case. This is an erroneous view and contrary to the principles established in our Eleventh Amendment decisions. The Eleventh Amendment is an explicit limitation to the judicial power of the United States.' Missouri v. Fiske, 290 U.S. at 25, 54 S. Ct. at 20. It deprives a federal court of power to decide certain claims against States that otherwise would be within the scope of Art. III's grant of jurisdiction....This constitutional part applies to pendent claims as well. As noted above, pendent jurisdiction is a judge-made doctrine of expediency and efficiency derived from the general Art. III language conferring power to hear all 'cases' arising under federal law or between diverse parties. See Mine Workers v. Gibbs, 383 U.S. At 725, 86 S.Ct at 1138. See also Hagans v. Lavine, supra, 415 U.S. at 545, 94 S.Ct. at 1383 (terming pendent jurisdiction 'a doctrine of discretion'). The Eleventh Amendment should not be construed to apply with less force to this implied form of jurisdiction than it does to the explicitly granted power to hear federal claims... In sum, contrary to the view implicit in decisions such as Greene v. Louisville & Interurban R. Co., 244 U.S. 499, 37 S.Ct 673, 61 L.Ed.2d 1280 (1917), neither pendent jurisdiction not any other basis of jurisdiction may override the Eleventh Amendment...We now hold that this principle applies as well to state-law claims brought into federal court under pendent jurisdiction.

Pennhurst, 465 U.S. at 119-121.

Further, the Second Circuit has recognized the Eleventh Amendment bar to the exercise of pendent jurisdiction over state law claims involving state officers consistent with Pennhurst. E.g., Baker v. Coughlin, 77 F.3d 12, 15 n.3 (2d Cir. 1996); Almendrahl v. New York State

Office of Mental Health, 743 F.2d 963, 968 (2d Cir. 1984).   The jurisdictional bar of the

Eleventh Amendment applies regardless of whether the relief sought from the state law claim is

injunctive or one for damages.  Pennhurst, 465 U.S. at 100, 102.  The Plaintiff's claim under

Conn. Gen. Stat. §§ 46a-60 must therefore be dismissed.

### E.  Conn. Gen. Stat. § 46a-70 Claim

The Plaintiff has brought a cause of action under Conn. Gen. Stat. § 46a-70a.  This statute

provides:

> State officials and supervisory personnel shall recruit, appoint, assign, train,
> evaluate and promote state personnel on the basis of merit and qualifications,
> without regard for race, color, religious creed, sex, age, national origin, ancestry,
> mental retardation, learning disability or physical disability, including but not
> limited to, blindness, unless it is shown by such state officials or supervisory
> personnel that such disability prevents performance of the work involved.

A violation of this statute constitutes a discriminatory practice, as defined in Conn. Gen.

Stat. § 46a-51(8).  Thus, an administrative process is available to an aggrieved person who files a

complaint with the Connecticut Commission on Human Rights and Opportunities (CHRO).

Conn. Gen. Stat. § 46a-82(a).  In addition, Conn. Gen. Stat. § 46a-99 allows an aggrieved person

to petition the Superior Court for appropriate relief, including an injunction.[1]

Yet, nothing in the Connecticut statutes constitutes an express waiver of Eleventh

Amendment immunity.  "The Court will give effect to a State's waiver of Eleventh Amendment

immunity only where stated by the most express language or by such overwhelming implication

from the text as [will] leave no room for any other reasonable construction."  Port Auth. Trans-

Hudson Corp. v. Feeney,  495 U.S. 299, 305, 110 S. Ct. 1868 (1990).  The wording of Conn.

Gen. Stat. 46a-99 "[i]s the antithesis of the clear declaration . . ." to waive sovereign immunity

---

[1]  Sec. 46a-99 provides:

  Any person claiming to be aggrieved by a violation of any provision of sections 46a-70 to 46a-78 inclusive, may
petition the superior court for appropriate relief and said court shall have the power to grant such relief, by
injunction or otherwise, as it deems just and suitable.

that is required by the Eleventh Amendment.  Walker, 106 F. Supp. at 370. The State of Connecticut has not waived its immunity to suit in federal court and this claim should be dismissed.

**II.    The Plaintiff Cannot Establish A Claim Under Section 1981 Because There Is No Evidence The Defendants Acted In A Purposefully Discriminatory Manner Because Of Her Race Or Color**

To state a claim under § 1981, a plaintiff must allege (1) [that she] is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) [that] the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.). Mian v. Donaldson, Lufkin & Jenrette Sec., Corp., 7 F.3d 1085, 1087 (2d Cir. 1993).  A Section 1981 action must allege "that the defendants' act were purposefully discriminatory ... and racially motivated." Albert v. Carovano, 851 F.2d 561, 571-72 (2d Cir. 1988) (en banc)(citations omitted).  The Plaintiff has put forward no evidence to support her assertion that the conduct of Santoro  directed towards her was discriminatory or racially motivated.  Abramowitz v. Inta-Boro Acres, Inc., 1999 U.S. Dist. LEXIS 2005  (E.D.N.Y. 1999).

In the Second Circuit, complaints relying on civil rights statutes are insufficient if they merely include a "litany of general conclusions." Hall v. Dworkin, 829 F. Supp. 1403, 1412 (N.D.N.Y. 1993) citing Barr v. Abrams, 810 F.2d 358, 362 (2d Cir. 1987). Cf. Martin v. N.Y. State Dep't of Mental Hygiene, 588 F.2d 699, 703 (2d Cir.) (per curiam), cert. denied, 409 U.S. 883 (1972) ("a complaint consisting of nothing more than naked assertions fails to state a claim").  Instead, "on a claim under § 1981, a plaintiff must show **both** that he was subjected to intentional discrimination, and that this discrimination interfered with a contractual relationship." Krulik v. Board of Educ. of City of New York, 781 F. 2d 15, 23 (2d Cir. 1986)(internal citations omitted, emphasis supplied).

The Plaintiff is unable to demonstrate that there are any material facts in dispute that Santoro intentionally discriminated against her when progressive discipline was initiated for the lost stenographic notes or she was assigned to a courtroom where matters of short duration were heard. Moreover, while the Complaint makes allegations against Santoro, the Plaintiff testified that she does not know who moved her belongings while she was out on an extended leave. Accordingly, this absolute failure of proof requires that the Court grant the Defendants' motion for summary judgment.

## III.     The Plaintiff Has Failed To State a Valid Claim Of A Title VII Violation

The Plaintiff alleges, "The defendants discriminated against the plaintiff in employment on the grounds of her race, color, disability, a previous arrest and in retaliation for complaining about such discrimination." (Complaint, ¶ 1). The Defendants are entitled to summary judgment on this count for several reasons: Defendant Santoro is not a proper party to a Title VII action; Title VII does not prohibit discrimination based on a temporary disability; Title VII does not prohibit discrimination based on a previous arrest; and the Plaintiff cannot prove that the legitimate, non-discriminatory reasons for the Defendants actions are false and are a pretext for discrimination.

In McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), the Supreme Court "established an allocation of the burden of production and an order for the presentation of proof," that applies to Title VII discriminatory treatment cases. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993). According to the Supreme Court, the plaintiff in an employment discrimination case has the burden at the outset of "proving by a preponderance of the evidence a prima facie case of discrimination." Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 251, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981); see also McDonnell Douglas, 411 U.S. at 802. If the plaintiff succeeds in establishing a prima facie case, the burden of production shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for its action. McDonnell Douglas, 411 U.S. at 802. "Any legitimate,

nondiscriminatory reason will rebut the presumption triggered by the prima facie case." Fisher v. Vassar College, 114 F.3d 1332, 1335-1336 (2d Cir. 1997). "Thus, 'the defendant need not persuade the court that it was actually motivated by the proffered reasons' in order to nullify the presumption and obligate the plaintiff to satisfy the burden of proof." Fisher, 114 F.3d at 1335-36 quoting Burdine, 550 U.S. at 254; see also Meiri v. Dacon, 759 F.2d 989, 996 n. 11 (2d Cir. 1985).

"If the defendant articulates a nondiscriminatory reason for its actions, 'the presumption raised by the prima facie case is rebutted,'" Fisher, 114 F.3d at 1336, and "simply drops out of the picture." St. Mary's, 509 U.S. at 511. At this point, the plaintiff has an opportunity to prove by a preponderance of the evidence that the employer's reason was "a pretext for discrimination." Burdine, 450 U.S. at 253; McDonnell-Douglas, 411 U.S. at 804. In order to meet this burden, the plaintiff must show by a preponderance of the evidence "*both that the reason was false, and that discrimination was the real reason*." Fisher, 114 F.3d at 1339, quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502; 515, 113 S.Ct. 2742 (1993) (italics in original). It is not enough for the plaintiff simply to show that the employer's proffered reason for its actions was not the real reason. Fisher, 114 F.3d at 1337-1338. Thus, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." St. Mary's, 509 U.S. at 507; Burdine, 450 U.S. at 253.

After the employer has articulated its nondiscriminatory reasons, the plaintiff has the opportunity to prove by a preponderance of evidence that the employer's reasons were a pretext for discrimination." But a reason cannot be proved to be a *'pretext for discrimination'*, unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." Hicks, 113 S.Ct. at 2752 (emphasis in Hicks). In the summary judgment context:

> this requires a plaintiff to establish a genuine issue of material fact with respect to whether defendant's articulated reason for its decision is pretextual. See Chertkova, 92 F.3d at 92. The plaintiff must do so by "produc[ing] not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, and

that more likely than not [discrimination] was the real reason." <u>Van Zant v. KLM Royal Dutch Airlines</u>, 80 F.3d 708, 714 (2d Cir. 1996); <u>Agugliaro v. Brooks Brothers, Inc.</u>, 927 F.Supp. 741, 746 (S.D.N.Y. 1996).

<u>Smith v. Planas</u>, 975 F. Supp. 303, 308 (S.D.N.Y. 1997); <u>accord Holt v. KMI-Continental</u>, 95 F.2d 123, 129 (2d Cir. 1996); <u>Chertkova</u>, 92 F.3d 81, 92 (2d Cir. 1996); <u>Woroski v. Nashua Corp.</u>, 31 F.3d 105, 108-09 (2d Cir. 1994).  At the final stage, the Plaintiff must satisfy her burden of proof that the Defendants intentionally discriminated against her on an unlawful basis. <u>Smith v. Planas</u>, 975 F. Supp. at 308.

In the case of <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 120 S. Ct. 2097 (2000), the Supreme Court recognized that simply offering some evidence does not meet the burden of showing pretext. The court noted:

> For instance, an employer would be entitled to summary judgment as a matter of law if the record conclusively revealed some other, non-discriminatory reason for the employer's decision, **or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there is abundant and uncontroverted independent evidence that no discrimination has occurred.** (Emphasis added).

<u>Id</u>.

The Plaintiff herself admits that as a court reporter she was required to take verbatim testimony through the use of stenographic equipment. (Facts, ¶ 6) Yet, the Plaintiff admits using the court monitor's recording equipment. (Facts, ¶ 33)

Accordingly, the Plaintiff must offer more than speculation or a difference in opinion about her capabilities to perform the Court Reporter II position in order to prove a pretext for discrimination.

In this regard, the employer's business judgment cannot be placed at issue but rather the focus must be solely on the employer's motivation. <u>See Juliette Blake-McIntosh v. Cadbury</u>

Beverages, Inc., a/k/a Dr. Pepper/Cadbury North America, a/k/a Dr. Pepper/Seven Up Company, Gary Lyons, Henry Udow, and John P. Soi; 1999 U.S. Dist. LEXIS 16550 (D. Conn. 1999).

In a disparate treatment employment discrimination case, the court is charged with determining whether intentional discrimination occurred, and does not have a "roving commission to review business judgment." Montana v. First Federal Savings & Loan Ass'n, 869 F.2d 100, 106 (2d Cir. 1989) (internal citations omitted). Thus, the "fact that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose it to Title VII liability." Burdine, 450 U.S. at 259. See also, Scaria v. Rubin, 117 F.3d 652, 655 (2d Cir. 1997)("This Court does not sit as a super-personnel department that reexamines an entity's business decisions."); Dister v. Continental Group, Inc., 859 F.2d 1108, 1116 (2d Cir. 1988) ("It is not the function of a fact-finder to second-guess business decisions or to question an [employer's] means to achieve a legitimate business goal"); Meiri v. Dacon, 759 F.2d 989, 995 (2d Cir.), cert. denied, 474 U.S. 829 (1985).

Measured against the forgoing standard, the Defendants are entitled to summary judgment as a matter of law. The Defendants made reasonable business decisions, based on long-established State personnel regulations to achieve the important goal of a smooth-running and dependable court system.

## IV.    The Plaintiff Cannot Establish A Prima Facie Case Of Discrimination Because She Cannot Produce Evidence Of Circumstances Giving Rise To An Inference Of Discrimination.

To defeat a motion for summary judgment on a claim of discriminatory treatment under Title VII, the plaintiff has the burden or proving:

> (1) that she belongs to a protected class; (2) that she was performing her duties satisfactorily; (3) that she was subjected to an adverse employment action; and (4) that the adverse action occurred in circumstances giving rise to an inference

of discrimination on the basis of her membership in that class.
<u>McLee v. Chrysler Corp.</u>, 109 F.3d 130, 134 (2d Cir. 1997); <u>Reeves</u>, 120 S. Ct. at 2106.  The
Plaintiff has established that she is an African-American female and therefore, satisfied the first
prong of a prima facie case.  The undisputed facts in this case clearly demonstrate that the
Plaintiff cannot meet the remainder of her burden.

The Plaintiff cannot establish that she was performing her duties satisfactorily.   The
Plaintiff failed to produce court-ordered transcripts and lost stenographic notes resulting in at
least one mistrial.  (Facts, ¶ 47) Then, this Plaintiff was disciplined in accordance with State
personnel regulations and her collective bargaining agreement for those shortcomings. (Facts, ¶
93)

The Plaintiff cannot and has not demonstrated that the Defendants' legitimate non-
discriminatory reasons were pretextual.   Rather, Plaintiff alleges in an entirely conclusory
fashion that a supervisor's communications to her regarding such matters as her use of court
monitor recording equipment and missing stenographic notes constitute some form of
harassment. She further suggests that an employer's investigation of reported missing
stenographic notes is somehow improper and infers unlawful discrimination. The actions taken
by the Defendants were based on legitimate, non-discriminatory reasons.  The communications
all dealt with legitimate job-related issues --  the production of transcripts by a court reporter.
The Plaintiff offers no direct evidence of such discrimination, and points to no similarly situated
employees who were treated differently than herself. (Facts,¶ 91)

The Plaintiff cannot establish that there were any similarly situated employees. In fact,
the Plaintiff cannot compare her situation to others as she was the only employee who returned to
work from an unforeseen medical absence of a year.  The Plaintiff was not similarly situated to
workers who took only limited, planned leaves, such as maternity leaves.

Accordingly, as the Plaintiff has failed to provide adequate evidence that the legitimate non-discriminatory reasons offered by the Defendants were false, this motion for summary judgment must be granted on the Plaintiff's Title VII claims.

### A.    The Plaintiff Cannot State A Claim Under Title VII Against The Defendant Santoro In Her Official and Individual Capacities

In the complaint, the Plaintiff pleads causes of action under Title VII against her supervisor, Sabrina Santoro. However individual defendants are not personally liable under Title VII. Cates v. Department of Correction, 2000 U.S. Dist. LEXIS 21110 (D.Conn. 2000). The individually named Defendant is not an employer within the meaning of Title VII because the Act defines the term "employer" to limit liability to employers with 15-20 employees. Since Santoro as an individual is not an employer, there is no subject matter jurisdiction over any claims against her.

Our circuit adopted the following analysis when it first determined that there was no individual liability under Title VII:

> "[C]ongress did not want to burden small entities with the costs associated with litigating discrimination claims. If Congress decided to protect small entities with limited resources from liability, it in inconceivable that Congress intended to allow civil liability to run against individual employees."

Tomka v. Seiler, 66 F. 3d 1295, 1314 (2d Cir. 1995), quoting Miller v. Maxwell's Int'l. Inc., 991 F.2d 583, 587 (9th Cir. 1993), cert. denied 510 U.S.1109, 114 S. Ct. 1049 (1994). Accordingly, the Second Circuit held that "individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII."

Moreover, in Miner v. Town of Cheshire, 126 F.Supp.2d 184, 200 (D.Conn. 2000); and McBride v. Routh, 51 F.Supp.2d 153, 157 (D.Conn. 1999), the courts found that since Tomka and the language of Title VII compel a holding that only employer-entities have liability under Title VII, individual supervisors may not be sued in their individual or official capacities.

Thus, judgment should enter for Santoro on the Plaintiff's Title VII claim against her in her official and individual capacities.

**B.** *The Defendant's Motion for Summary Judgment Should Be Granted Since Temporary Disability Is Not Covered Under Title VII, 42 U.S.C. § 2000e.*

As part of her Title VII action against the State, the Plaintiff lists discrimination based on a "temporary" disability as a basis for her claim. However, Title VII only proscribes discrimination based on race, color, religion, sex or national origin. See 42 U.S.C. § 2000e-2(a)(1). Because Title VII does not apply to discrimination based on a disability, this court should grant the Defendants' Motion for Summary Judgment as disability is not actionable under Title VII.

**V.** **The Individually Named Defendant May Not Be Held Liable Under Conn. Gen. Stat. § 46a-60(a)(1)**

Conn. Gen. Stat. § 46a-60(a)(1) provides in relevant part that,

> [i]t shall be a discriminatory practice in violation of [CFEPA] . . . For an **employer**, by himself or his agent, . . . To discriminate against him in compensation or in terms, conditions or privileges of employment because of the individual's . . . Age, sex . . . Or physical disability[.]" (Emphasis added.)

"Employer" is defined as "the state and all political subdivisions thereof and means any person or employer **with three or more persons in his employ**." Conn. Gen. Stat. § 46a-51(10) (emphasis added.) Thus, by definition, the only individuals who may be held liable under § 46a-60(a)(1) are those with three or more persons in their employ. Conversely, "employee" is defined as "any person employed by an employer." Conn. Gen. Stat. § 46a-51(9).

The Complaint does not allege that Santoro employs the Plaintiff. Rather, Santoro is identified in the Complaint as an employee of the Judicial Department; she is not the Plaintiff's employer.

The Connecticut Supreme Court concluded that § 46a-60 (a) (1) does not impose liability on individual employees, only on employers. Perodeau v. City of Hartford, 259 Conn. 729 (2002). Since CFEPA does not impose liability upon individual employees, this court should find that the Plaintiff has not stated a valid Section 46a-60(a) claim against Santoro.

**VI.    The Plaintiff Fails To State A Claim Under the Rehabilitation Act of 1973.**

In order to establish a prima facie case under the Rehabilitation Act , 29 U.S.C. § 701 et seq., a plaintiff must fulfill a tripartite test. She must first show by a preponderance of the evidence that she suffers from a physical or mental impairment. Second, the plaintiff must identify the activity claimed to be impaired and establish that it constitutes a "major life activity." Third, the plaintiff must show that her impairment "substantially limits" the major life activity previously identified. Weixel v. Bd. of Ed. of the City of New York, 287 F.3d 138, 147 (2d Cir. 2002) . In addition, the Supreme Court clarified that the identified major life activity must be "of central importance to daily life." Sutton v. United Air Lines, Inc., 527 U.S. 471, 491-92, 119 S. Ct. 2139, 144 L. Ed. 2d 450 (1999).

A handicapped person is defined as any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such impairment, or (iii) is regarded as having such an impairment. 29 U.S.C.S. § 706(8)(B).

The Second Circuit recently addressed the requirements for a claim under the Rehabilitation Act in affirming the district court's granting of summary judgment in a leg injury case. Potenza v. City of New York, 95 Fed. Appx. 390; 2004 U.S. App. LEXIS 8128 (April 23, 2004). The district court had granted the defendant's motion for summary judgment holding that

Potenza could not demonstrate that he was "disabled" under the meaning of the Rehabilitation Act.

Potenza had alleged that injuries to his foot and knee substantially impaired his ability to perform his work and to walk. Although "major life activities" include both working and walking (29 C.F.R. § 1630.2(h)(2)(i)), Potenza could not demonstrate that activities were "substantially limited" by his injury.

> When the major life activity involved is working, 'substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.' 29 C.F.R § 1630.2(j)(3); see also Sutton v. United Air Lines, Inc., 527 U.S. 471, 119 S. Ct. 2139, 144 L. Ed.2d 450 (1999).

Potenza v. City of New York, 95 Fed. Appx. 390; 2004 U.S. App. LEXIS 8128 (April 23, 2004).

Likewise, the effect on a plaintiff's ability to walk must be fairly significant before she will be determined disabled as "both the regulations and the manual make clear that comparatively moderate restrictions on the ability to walk are not disabilities." Potenza, quoting Kelly v. Drexel Univ., 94 F.3d 102, 106 (3d Cir. 1996).

In the case at bar, the Plaintiff has merely alleged that she was "handicapped for a period of time" based upon a fractured hip that occurred in a car accident. (Facts, ¶ 14). The Plaintiff has **not** alleged that she was permanently impaired in a major life activity. Just as in Potenza, the Plaintiff may have restrictions, but has not established disability.

As the Plaintiff cannot establish a prima facie claim under the Rehabilitation Act, judgment should enter for the Defendants.

**VII.    The Plaintiff Cannot Establish a § 1983 Claim Against Defendant Santoro And She Is Entitled To Qualified Immunity From Damage Claims**

### A.    The Defendant Santoro Is Entitled To Qualified Immunity

Qualified immunity is available to government officials whose "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed.2d 396 (1982); Berman Enterprises, Inc. v. Jorling, 3 F.3d 602, 607 (2d Cir. 1993), cert. denied, 510 U.S. 1073 (1994); Doe v. Connecticut Dep't. of Children and Youth Services, 712 F.Supp. 277, 283 (D.Conn. 1989), aff'd, 911 F.2d 868 (2d Cir. 1990). The defense of qualified immunity is designed "to eliminate meritless actions against public officials at the earliest possible state in litigation." Mozzochi v. Borden, 959 F.2d 1172, 1177-1178 (2d Cir. 1992).

In Harlow, the Court stated "that reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." Harlow, 457 U.S. at 818, 102 S.Ct. at 2738 (footnote omitted). The parameters of the right asserted "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right . . . . [I]n the light of pre-existing law the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 640-641, 107 S. Ct. 3034, 3039 (1987).

Government officials are shielded from personal liability for civil damages claims which arise out of the discretionary functions of their job. Harlow v. Fitzgerald, 457 U.S. at 818. Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990); Mozzochi v. Borden, 959 F.2d 1174, 1177 (2d Cir. 1992). "The qualified immunity defense protects an official if it was objectively reasonable for him to believe that his acts were lawful." Magnotti, 918 F.2d at 357. "As long as an official's conduct does not violate a clearly established statutory or constitutional right of which a reasonable person would have known, they cannot be held liable." Mozzochi, 959 F.2d at 1177; Cartier v. Lussier, 955 F.2d 841, 845 (2d Cir. 1992), Sanchez v. City of Santa Ana, 936

F.2d 1027, 1038 (9th Cir. 1990). See Piesco v. City of New York, 933 F.2d 1149 (2d Cir. 1991);

Orick v. Banziger, 945 F.Supp. 1084 (S.D. Ohio 1996). See also Connick v. Myers, 461 U.S.

138, 103 S. Ct. 1684, 75 L.Ed.2d 708 (1983).

Qualified immunity is "an entitlement not to stand trial or face the other burdens of

litigation." Mitchell v. Forsyth, 472 U.S. 511, 105 S. Ct. 2806, 2829 (1985); Giacolone v.

Abrams, 850 F.2d 79, 84 (2d Cir. 1988). "The entitlement is an immunity from suit rather than a

mere defense to liability . . ." Id. The principal purpose of the doctrine is to enable public

officials to do their jobs without fear of subsequently facing liability for actions they could not

reasonably have believed violated the law at the time. Harlow v. Fitzgerald, 102 S. Ct. at 2727

(1982), and to avoid disruption to effective government counsel by the burdens of litigation.

Mitchell v. Forsyth, 105 S. Ct. at 2809.

The doctrine of qualified immunity seeks to ensure that conscientious public officials

will feel free to discharge their duties unflinchingly and without diversion, that able citizens are

not deterred from accepting public office, and that needless expense can be avoided. Harlow,

102 S. Ct. at 2736. The test is one of objective reasonableness, and is determined by establishing

whether a reasonable official in the defendant's position could have believed that his actions were

lawful, in light of clearly established law. Anderson v. Creighton, 484 U.S. 635, 107 S. Ct.

3034, 3039 (1987).

The test is a stringent one and requires that there be a very close factual fit between the

case under consideration and previous case law establishing the illegality of the action or conduct

at issue in order for the law to be characterized as "clearly established." Thus, in determining

whether a particular right was clearly established, the Court must first identify the claimed right

in a manner suited to the facts and circumstances of the particular case. Anderson, 107 S. Ct. at

3039; Soares v. State of Connecticut, 8 F.3d 917 (2d Cir. 1993). Then it must examine the case

law of the Supreme Court and of the Circuit to determine whether, during the time period in

question, the law was so clearly established that a reasonable official would understand that her

actions were unlawful. Although the precise action in question need not have been held unlawful

to defeat a claim of qualified immunity, the unlawfulness must be apparent under preexisting law. Anderson, 107 S.Ct. at 3039. The Court must also decide whether it was clear at the time of the alleged violations of law that an exception did not permit the actions in question. Gittens v. LeFeure, 891 F.2d 38, 42 (2d Cir. 1989).

Finally, and perhaps most importantly, even if the court concludes that the law was clearly established, the Court must determine whether it was objectively reasonable for the official to believe that her actions did not violate those rights. Oliveira v. Mayer, 23 F.3d 642, 648-49 (2d Cir. 1994). The subjective motivation of the officials is irrelevant to the inquiry. Anderson, 107 S. Ct. at 3040; Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991). Rather, the focus is on whether reasonable officials in the position of the Defendants could have believed their actions were lawful. Where reasonable officials could disagree, the official is entitled to qualified immunity. Weg v. Macchiarola, 995 F.2d 15, 18 (2d Cir. 1993).

The Second Circuit has held that where the underlying § 1983 claim requires a showing of intent, as in a claim of unconstitutional retaliation, a government official's motive or intent in carrying out the questioned conduct should be considered in the qualified immunity analysis. Musso v. Hourigan, 836 F.2d 736, 742 -3 (2d Cir. 1988). See also Sheppard v. Beerman, 94 F.3d 823, 828-29 (2d Cir. 1996); and Blue v. Koren, 72 F.3d 1075, 1083 n. 5. (2d Cir. 1995).

When the defense of qualified immunity is raised to a § 1983 claim that is grounded in a state actor's unconstitutional motive as here, the federal district courts and Courts of Appeal have been placed in a quandary. "The 'clearly established law' and 'objective reasonableness' facets of current qualified immunity doctrine tug in opposite directions where . . . the 'clearly established law' itself contains a subjective component." Blue v. Koren, 72 F.3d at 1083.

These courts, including the Second Circuit, recognize that permitting consideration of motive could eviscerate the protection to which government officials are entitled by qualified immunity. In response, these courts have required that a plaintiff present proof of the unconstitutional motive of each defendant, and have imposed on plaintiffs a "heightened standard," requiring plaintiffs to provide particularized evidence of a direct or circumstantial

nature that demonstrates the required state of mind in order to avoid summary judgment on the

defense of qualified immunity.[2]  Blue v. Koren, 72 F.3d at 1084.  ("[T]he plaintiff must proffer

particularized evidence of direct or circumstantial facts as suggested in Justice Kennedy's

concurrence in Siegert v. Gilley, 111 S.Ct. 1789, 1795 (1991) supporting the claim of an

improper motive in order to avoid summary judgment.")  Particularized evidence of improper

motive include expressions by the state officials regarding their state of mind, circumstances

suggesting in a substantial fashion that the plaintiff has been singled out, or the highly unusual

nature of the actions taken.  Blue v. Koren, 72 F.3d at 1084.

        In Blue v. Koren, the Second Circuit articulated the following framework that should be

used when a motion for summary judgment is based upon qualified official immunity:

> [T]he first issue is whether a clearly established right is at stake. See Siegert, 111
> S. Ct. at 1793.  If it is the court must then address whether the conduct was
> objectively reasonable.  If not, the motion must be denied.  If the conduct was
> objectively reasonable, a conclusory proffer of an unconstitutional motive should
> not defeat the motion for summary judgment.  The reasonableness of the conduct
> is itself substantial evidence in support of the motion and requires in response a
> particularized proffer of evidence of unconstitutional motive.

Id. at 1084.

_____

[2] The "heightened standard" required by the Second Circuit is different from the "heightened standard" that the D.C. Circuit imposed on plaintiffs in Crawford-El v. Britton, 93 F.3d 813 (D.C. Cir. 1997), which the Supreme Court held was improper.  Crawford-El v. Britton, supra, 118 S. Ct. 1584 (1998).  In Crawford-El, the D.C. Circuit required a prisoner to adduce clear and convincing evidence of improper motive in order to defeat a motion for summary judgment on the ground of qualified immunity.  Thus, requiring the plaintiff to meet a heightened burden of proof.

The "heightened standard" required by the Second Circuit requires the plaintiff to offer specific evidence of unconstitutional motive which "we [the Second Circuit] are doubtful that it imposes a burden greater than is already required under Fed. R. Civ. P. 56. . .[We] confess considerable doubt as to whether the heightened standard is really heightened or is simply an application of the rule that conclusory assertions are insufficient to defeat a motion for summary judgment."  Blue, supra, 1083-84.  The Second Circuit's approach was impliedly approved by the Supreme Court in Crawford-El, supra.

"[F]irm application of the Federal Rules of Civil Procedure is fully warranted and may lead to the prompt disposition of insubstantial claims."  Id. at 1596, quoting Harlow v. Fitzgerald, supra, 102 S. Ct. at 2739, fn. 35).

Certainly, Santoro's conduct was objectively reasonable under the circumstances. The Plaintiff has offered no credible evidence to suggest that Santoro's actions to ensure that transcripts were taken accurately and timely provided violated clearly established law. This is especially so in light of the undisputed lack of personal involvement on Santoro's part in determining the discipline of the Plaintiff and the complete lack of evidence suggesting an "unconstitutional motive" on the part of Santoro. Santoro did not conduct the investigation of the Plaintiff that led to her discipline. The Judicial Branch, through Nicholas Cimmino (New Haven Trial Court Administrator), Nancy Brown (Supervisor of Transcript Services), and James Maher (Director of Court Operations) conducted the investigation that concluded that the Plaintiff had destroyed stenographic notes because she feared they would show the plaintiff was using a tape-monitoring machine. (Facts, ¶¶ 52, 57-59). Accordingly, the court should grant the Defendants' Motion For Summary Judgment on the grounds of qualified immunity.

### B. The Plaintiff Cannot Show A Violation Of Her Equal Protection Rights.

A plaintiff asserting a claim of a violation of her equal protection rights faces a much more stringent standard of proof than she does in a Title VII claim, a standard that this Plaintiff cannot meet. In a Title VII claim, a plaintiff makes a prima facie case of discrimination based upon evidence, which if believed by the trier of fact, establishes a presumption that her race was the reason for the adverse employment action. In an equal protection claim, a plaintiff "[f]aces the tougher standard of proving purposeful and intentional acts of discrimination based on ... [m]embership in a particular class ..." Sims v. Mulcahy, 902 F. 2d 524, 538 (7th Cir. 1990) (per curiam), citing Forrester v. White, 846 F.2d 29, 32 (7th Cir. 1988), citing Washington v. Davis, 426 U.S. 229, 242, 96 S. Ct. 2040, 2049, 48 L. Ed. 2d 597 (1976); Village of Arlington Heights v. Metropolitan Housing Dev. Corp., 429 U.S. 252, 265, 97 S. Ct. 555, 563, 50 L. Ed. 2d 450 (1977); Personnel Administrator of Massachusetts v. Feeney, 442 U.S. 256, 279, 99 S. Ct. 2282, 2296, 60 L. Ed. 2d 870(1979). "Proof of racially discriminatory intent or purpose is required to

show a violation of the Equal Protection Clause." Arlington Heights, 429 U.S. at 265. In order to establish a *prima facie* case of race discrimination violative of the Equal Protection Clause, the Plaintiff must demonstrate that she was treated differently from other similarly situated applicants because of her race, see Annis v. County of Westchester, 136 F.3d 239, 245 (2d Cir. 1998), citing Sims, supra; and that "defendants acted with discriminatory intent." Sims, 902 F.2d at 539 (citations omitted). The requirement of discriminatory intent or purpose "...implies that the decision maker, ...selected or reaffirmed a particular course of action at least in part 'because;' not merely 'in spite of' its adverse affects ... upon a member of a protected class." Personnel Administrator of Massachusetts v. Feeney, 99 S.Ct. at 2296. (Citations and footnotes omitted).

The Plaintiff's Equal Protection claim is brought against Santoro. In order to prevail, the Plaintiff must prove that Santoro subjected the Plaintiff to discipline and transfer, and that such actions were intentionally designed to discriminate against the Plaintiff because of her race. Other than these conclusory allegations, Plaintiff has demonstrated no basis for a trier of fact to believe that Santoro unlawfully discriminated against her, either intentionally or otherwise, because of her race.

Rather, the supporting affidavits and testimony demonstrate that the Plaintiff's Equal Protection claim is completely unfounded. Neither the Plaintiff's own testimony nor any other credible evidence is even remotely sufficient to establish that Plaintiff was treated differently from others who were "similarly situated." This conclusion is unavoidable in light of the undisputed fact that the Plaintiff previously worked under Santoro's supervision without complaint for approximately fourteen years, and that there were no "similarly situated" individuals. (Facts,¶ 79, 91).

The Second Circuit Court of Appeals has held that for a plaintiff to establish that she was treated more harshly than "similarly situated" employees, not in plaintiff's protected class, plaintiff must compare herself to others that are similarly situated **in all material respects**. At a minimum, this means this Plaintiff must compare herself to all the Court Reporter II's who were

employed at the New Haven Judicial District in 2001. Yet, this Plaintiff seeks to compare herself to others employees who were not truly "similarly situated." There were no other court reporters who lost notes and were unable to produce transcripts. No court reporter assigned to the Judicial District of New Haven, other than the Plaintiff, has been the subject of an investigation for destroying the stenographic notes and being unable to produce a court-ordered transcript. (Facts, ¶ 91) There were no other court reporters who were out of work a year without advance notice of their leave to the employer. (Facts, ¶¶ 11-12) Accordingly, the Plaintiff cannot establish that she was treated more harshly than similarly situated workers, which is her burden of proof in an equal protection claim. See Annis and Sims.

Even if the Court were to conclude otherwise, the Plaintiff's Equal Protection claim must fail for lack of the requisite discriminatory intent. "To prove discrimination in violation of the equal protection clause; plaintiff must show not only that the state action complained of had a disproportionate or discriminatory impact but also that the defendant acted with the intent to discriminate." Southside Fair Housing Corp. v. City of New York, 928 F.2d 1336, 1352 (2nd Cir. 1992) quoting United States v. Yonkers Board of Education, 837 F. 2d 1181, 1216 (2nd Cir. 1987). This Plaintiff fails to put forth any evidence which even remotely suggests that Santoro had the requisite discriminatory animus. Santoro, has stated under oath that she has no personal animus toward the Plaintiff. (Facts, ¶ 9) It is absurd to think that Santoro supervised the Plaintiff for nearly fourteen years without complaint, (Facts, ¶ 79) then suddenly develops racial animus directed at the Plaintiff while she is out on medical leave.

Moreover, if she could, the burden shifting framework of Title VII would come into play, Annis, 136 F.2d at 245, and the Defendants would articulate the same nondiscriminatory reasons set forth previously. The Defendants have established non-discriminatory reasons for the treatment of the Plaintiff based upon the her poor job performance.

Plaintiff's allegations comprise conclusory statements, unsupported by admissible evidence. Conclusory allegations that race was a factor does not equate to proof that race was the motivating factor in the discipline and transfer of the Plaintiff. Since the burden is always on the

Plaintiff to show that she has been the victim of intentional race discrimination, this absolute failure of proof independently requires that the Court grant the Defendants' Motion for Summary Judgment. <u>Fisher</u>, 114 F.3d at 1335.


C.      *The Plaintiff Cannot Maintain a § 1983 Claim Against Santoro In Her Individual Capacity As The Plaintiff Cannot Demonstrate Santoro's Personal Involvement.*

In order to establish liability of a defendant in her individual capacity under § 1983, the plaintiff is required to show the personal involvement of the defendant in the denial of equal protection. <u>Gill v. Mooney</u>, 824 F.2d 192, 196 (2d Cir. 1987); <u>Estate of Walker v. City of Bridgeport</u>, 676 F. Supp. 442, 446 (1986); <u>Bapat v. Ct. Dept. Of Health Services</u>, 815 F. Supp. 525 (D.Conn.1992). In order to establish personal involvement, the plaintiff is required to prove that Santoro (1) directly participated in the violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) created a custom or policy fostering violation or allowed the custom or policy to continue after learning of it; or (4) was grossly negligent in supervising subordinates who caused the violation. <u>Sealey v. Giltner</u>, 116 F.3d 47, 51 (2d Cir. 1997), quoting <u>Williams v. Smith</u>, 781 F.2d 319, 323-24 (2d Cir. 1986).

The Plaintiff cannot meet this burden. The Defendants have submitted affidavits describing the disciplinary procedure for the Court Reporter II position. It is undisputed that Santoro was a co-worker and never had the authority to suspend or transfer the Plaintiff. Clearly, there is no personal involvement on the part of Santoro that would establish a nexus between her and any of the Plaintiff's claims in order to establish liability under §1983.

**VIII.  The Plaintiff Has Failed To Satisfy The Statutory Prerequisites To Suit Under Title VII And Has Failed To Exhaust Her Administrative Remedies.**

*A. Failure To Exhaust Administrative Remedies*

Prior to filing a court action for damages under Title VII, a plaintiff is required to exhaust administrative remedies by filing a charge with the Equal Employment Opportunity Commission (EEOC).  See 42 U.S.C. § 2000e-5; Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982); Brown v. General Servs. Admin., 425 U.S. 820, 832-33 (1976).  First, a plaintiff must file a complaint with a state or local fair employment opportunity commission if one exists.  See 42 U.S.C. § 2000e-5(c); Great Am. Fed. Sav. & Loan Ass'n. v. Novotny, 442 U.S. 366, 373 (1979).  Second, the plaintiff must file a timely charge of discrimination with the EEOC.  See 42 U.S.C. § 2000e-5(e).  Finally, the plaintiff must receive a right to sue letter from the EEOC and act upon it to file suit within 90 days.  See 42 U.S.C. § 2000e-5(f)(1);  Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 152 (1984); Alexander v. Gardner-Denver Co., 415 U.S. 36, 47 (1974).

When a plaintiff first files discrimination charges with a state agency such as CHRO, she must eventually file charges with the EEOC within 300 days after the last alleged unlawful act comprising her Title VII claim. See 42 U.S.C. § 2000e-5(e)(1); Butts v. City of New York Dep't. of Hous. Preservation and Dev., 990 F.2d 1397, 1401 (2d Cir. 1993).  If the plaintiff requests that the state agency file the charge with the EEOC, the charge will be deemed to have been filed 60 days after it is filed with the state agency.  See 29 C.F.R. § 1601.13(b)(1).

The Plaintiff bears the burden of establishing the existence of all jurisdictional prerequisites and conditions precedent to suit. Fed. R. Civ. P. 8(a), 9(c).  "Absent a legitimate waiver, estoppel, or equitable tolling, failure to file an agency charge within the applicable time

period precludes a plaintiff from bringing a Title VII suit in federal court." <u>Yoonessi v. State</u> <u>Univ. Of New York</u>, 862 F. Supp. 1005, 1013 (W.D.N.Y. 1994). This Plaintiff has failed to establish that the employment discrimination charges were timely filed with the EEOC.

The Complaint merely contains the conclusory allegation that "[t]he plaintiff has complied with all of the procedural prerequisites to suit under the statutes aforementioned." (Complaint ¶ 8). The Complaint does not state when the charges were filed. Nor does it state who the charges were filed against, or what factual allegations were made, or under what statutory authority plaintiff was seeking relief. "A district court only has jurisdiction to hear Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge . . . . This exhaustion requirement is an essential element of Title VII's statutory scheme." <u>Butts</u>, 990 F.2d 1401.

To withstand this motion, a complaint must allege facts setting forth all of the essential elements of a viable legal theory. <u>See</u> <u>Gooley v. Mobil Oil Corp.</u>, 851 F.2d 513, 514 (1st Cir. 1988); <u>Gray v. County of Dane</u>, 854 F.2d 179, 182 (7th Cir. 1988). While the federal rules envision a liberal pleading standard, bald assertions and conclusions of law will not defeat a motion to dismiss. <u>See</u> <u>Leeds v. Meltz</u>, 85 F.3d 51, 53 (2d Cir. 1996); <u>Aulson v. Blanchard</u>, 83 F.3d 1, 3 (1st Cir. 1996). Courts may not assume that a litigant can prove facts not alleged or that the defendant has violated laws in ways that the litigant has not pleaded. <u>See</u> <u>Papson v.</u> <u>Allain</u>, 478 U.S. 265, 286 (1986); <u>Associated Gen. Contractors v. California State Council of</u> <u>Carpenters</u>, 459 U.S. 519, 526 (1983). "A complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." <u>DeJesus v.</u> <u>Sears, Roebuck & Co.</u>, 87 F.3d 65, 70 (2d Cir. 1996).

The Plaintiff's conclusory allegation does not establish that she satisfied Title VII's exhaustion requirement.  In addition, the Plaintiff fails to reference a right to sue letter, which is another essential element of a Title VII claim.  Finally, this Complaint is nearly devoid of dates of the alleged discriminatory acts.  The EEOC charge may encompass only those acts occurring within 300 days of the date on which the charge is filed with EEOC. To determine the timeliness of an EEOC complaint and an ensuing lawsuit, the Court must identify the dates on which the alleged discriminatory acts took place and compare those dates with the date in which the EEOC charge was filed.  <u>Delaware State College v. Ricks</u>, 449 U.S. 250, 252-62 (1980).  The court cannot make a determination based upon this Complaint.

**B.      *The §§ 46a-79 and 46a-80 Claims Are Untimely and The Plaintiff Failed  To Exhaust Her Administrative Remedies.***

The Plaintiff's  claim that she was discriminated against based on a prior arrest pursuant to Section Conn. Gen. Stat. 46a-80[3] is untimely.  A person claiming to be aggrieved by a

---

[3] **46a-80.** Denial of employment based on prior conviction of crime. Dissemination of arrest record prohibited.

(a) Except as provided in subsection (b) of this section and subsection (b) of section 46a-81, and notwithstanding any other provisions of law to the contrary, a person shall not be disqualified from employment by the state of Connecticut or any of its agencies, nor shall a person be disqualified to practice, pursue or engage in any occupation, trade, vocation, profession or business for which a license, permit, certificate or registration is required to be issued by the state of Connecticut or any of its agencies solely because of a prior conviction of a crime.

(b) A person may be denied employment by the state or any of its agencies, or a person may be denied a license, permit, certificate or registration to pursue, practice or engage in an occupation, trade, vocation, profession or business by reason of the prior conviction of a crime if after considering (1) the nature of the crime and its relationship to the job for which the person has applied; (2) information pertaining to the degree of rehabilitation of the convicted person; and (3) the time elapsed since the conviction or release, the state, or any of its agencies determines that the applicant is not suitable for the position of employment sought or the specific occupation, trade, vocation, profession or business for which the license, permit, certificate or registration is sought.

(c) If a conviction of a crime is used as a basis for rejection of an applicant, such rejection shall be in writing and specifically state the evidence presented and reasons for rejection. A copy of such rejection shall be sent by registered mail to the applicant.

(d) In no case may records of arrest, which are not followed by a conviction, or records of convictions, which have been erased, be used, distributed or disseminated by the state or any of its agencies in connection with an application for employment or for a permit, license, certificate or registration.

violation of this law must file a claim within thirty (30) days as provided by Conn. Gen. Stat. §46a-82(e).[4]  Yet, the Plaintiff did not file this claim until November 25, 2002.  On that date she filed an "Amended Complaint" with the CHRO.

The Plaintiff would have had to file a charge with the CHRO within thirty days in order to maintain her claim that she was unfairly treated when she was disciplined in 2001. "This requirement functions as a statute of limitations . . . in that discriminatory incidents not timely charged . . . will be time-barred upon the plaintiff's suit in district court."  *See* Quinn v. Green Tree Credit Corp., 159 F. 3d 759, 765 (2d Cir. 1998)(citations omitted).

In  National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113, 153 L. Ed. 2d 106, 122 S. Ct. 2061 (2002), the Supreme Court held that the continuing violations doctrine does not preserve time-barred discrete discriminatory acts. "Discrete discriminatory acts are not

---

[4] 46a-82. Complaint: Filing.

(a) Any person claiming to be aggrieved by an alleged discriminatory practice, except for an alleged violation of section 46a-68, may, by himself or his attorney, make, sign and file with the commission a complaint in writing under oath, which shall state the name and address of the person alleged to have committed the discriminatory practice, and which shall set forth the particulars thereof and contain such other information as may be required by the commission. After the filing of a complaint pursuant to this subsection, the commission shall serve upon the person claiming to be aggrieved a notice that: (1) Acknowledges receipt of the complaint and (2) advises of the time frames and choice of forums available under this chapter.

(b) The commission, whenever it has reason to believe that any person has been engaged or is engaged in a discriminatory practice, may issue a complaint except for a violation of subsection (a) of section **46a-80**.

(c) The commission may issue a complaint if: (1) An affirmative action plan filed pursuant to section 46a-68 is in violation of any of the provisions of section 4-61u or 4-61w, sections 46a-54 to 46a-64, inclusive, section 46a-64c or sections 46a-70 to 46a-78, inclusive; or (2) an agency, department, board or commission fails to submit an affirmative action plan required under section 46a-68.

(d) Any employer whose employees, or any of them, refuse or threaten to refuse to comply with the provisions of section 46a-60 or 46a-81c, may file with the commission a written complaint under oath asking for assistance by conciliation or other remedial action.

(e) Any complaint filed pursuant to this section must be filed within one hundred and eighty days after the alleged act of discrimination **except that any complaint by a person claiming to be aggrieved by a violation of subsection (a) of section 46a-80 must be filed within thirty days of the alleged act of discrimination. (Emphasis supplied).**

actionable if time barred, even when they are related to acts alleged in timely filed charges." Id. at 113. "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" Id. at 114. However, an employee may use prior acts "as background evidence in support of a timely claim." Id. at 113. In addition, it is well settled law in the Second Circuit that "discrete acts" include discriminatory transfers, job assignments and non promotions, and failure to compensate adequately. See, Gross v. Nat'l Broadcasting Co., Inc., 232 F. Supp. 2d 58, 68 (S.D.N.Y. 2002)("Alleged failures to compensate adequately, transfers, job assignments and non-promotions cannot form the basis for a continuing violation claim") Lightfoot v. Union Carbide Corp., 110 F.3d 898, 907 (2d Cir. 1997) ("[A] job transfer, or discontinuance of a particular job assignment, are not acts of a 'continuing' nature." (internal quotation marks and citation omitted)); Crosland v. City of New York, 140 F. Supp. 2d 300, 308 (S.D.N.Y. 2001)("It is well-established that transfers, demotions, failure to compensate adequately, and failure to promote are all discrete acts which do not constitute a continuing violation.").

Here, the Plaintiff filed her charge with the CHRO on November 25, 2002, relating to claimed discriminatory treatment commencing when she returned to work on February 23, 2001. It is clear that the Plaintiff's discipline in 2001, including her suspension and transfer to another courtroom, constitute separate and discrete acts. Thus, Plaintiff's claims are untimely and no longer actionable.

Accordingly, the Defendants move this court enter judgment in this Title VII action for the Plaintiff's failure to exhaust the available administrative remedies.

IX.    **There Is No Cause of Action Under Conn. Gen. Stat. § 46a-58.**

Conn. Gen. Stat. §46a-58(a) provides that:

It shall be a discriminatory practice in violation of this section for any person to subject, or cause to be subjected, any other person to the deprivation of any rights, privileges or immunities, secured or protected by the Constitution or laws of this state or of the United States, on account of religion, national origin, alienage, color, race, sex, blindness or physical disability.

The Connecticut Supreme Court has found that there is no cause of action under §45a-58 when the claims of employment discriminatory practices fall within the scope of Conn. Gen. Stat. §46a-60. Commission on Human Rights and Opportunities v. Truelove and Maclean, Inc., 238 Conn. 337, 347, 680 A.2d 1261 (1996). That is precisely the situation in this matter. The claims of discriminatory practices fall within the purview of Conn. Gen. Stat. § 46a-60, and the Complaint in fact alleges violations of Conn. Gen. Stat. § 46a-60.

Since the Plaintiff's claim under § 46a-58(a) is based on state law, the Connecticut Supreme Court's holdings are binding on the federal court. Federal courts "are bound by the construction of the statute propounded by the state's highest court." Reeves v. Johnson Controls World Services, Inc., 140 F.3d 144, 155 (2d Cir. 1998).

Accordingly, the Plaintiff fails to state a claim under Conn. Gen. Stat. § 46a-58 and judgment should enter for the Defendants.

X.    **Plaintiff Has Not Established A Prima Facie Case For Intentional Infliction Of Emotional Distress And This Court Lacks Jurisdiction To Consider Plaintiff's Claim For Intentional Infliction of Emotional Distress**

The Plaintiff's complaint alleges a state law claim of intentional infliction of emotional distress against Santoro. (Complaint, ¶ 3). There are four elements to a successful cause of action for intentional infliction of emotional distress: (1) [t]hat the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely

result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress ; and (4) that the emotional distress sustained by the plaintiff was severe. Petyan v. Ellis, 200 Conn. 243, 253 (1986) (quoting with approval Restatement (Second) of Torts, Section 46 (1965)).

Whether the Defendant's conduct may reasonably be regarded as extreme and outrageous is "a question, in the first instance, for [the] court. Only where reasonable minds can differ does it become an issue for the jury." Bell v. Board of Educ. Of West Haven, 55 Conn. App. 400 (1999).

> In interpreting what constitutes 'extreme and outrageous' conduct, Connecticut courts have relied on the Restatement (Second) of Torts § 46, comment (d)(1965), which provides: 'Liablility has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' See Delaurentis v. City of New Haven, 220 Conn. 225, 266-67, 597 A.2d 807 (1991); Petyan v. Ellis, 200 Conn. at 254 n. 5.

Thompson v. Service Merchandise Inc., et al., 1998 U.S. Dist. LEXIS 13669 (D.Conn. 1998), p. 7.

Liability for intentional infliction of emotional distress requires "conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." DeLaurenties v. New Haven, 220 Conn. 225, 267, 597 A.2d 807 (1991)(citation omitted).

The Plaintiff does not allege facts that rise to the level of the "extreme and outrageous" conduct. The Complaint fails to allege any conduct by Santoro that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Ziobro v. Ct. Institute for the Blind, et al., 818 F. Supp. 497, 502 (D.Conn. 1993)(quoting Restatement (Second) of Torts, § 46, comment (d) (1965)).

Moreover, the Plaintiff does not establish that any severe emotional distress resulted from the alleged actions of the Defendant.  The Plaintiff has not obtained any medical care as a result of this alleged "distress." (Facts, ¶ 85)  The Plaintiff has no medical reports or records or statements of expense pertaining to the examination and/or treatment any injury incurred as a result of the incidents alleged in her complaint. (Facts, ¶ 84). Thus, the Plaintiff cannot establish that her distress was severe.

Therefore, judgment should enter for the Defendants on this claim as the Complaint fails to state a cause of action for intentional infliction of emotional distress.

**XI.    The Plaintiff's Claim For Monetary Damages From The Defendant In Her Individual And Official Capacities Under 42 U.S.C. § 1981 Is Barred Because 42 U.S.C. § 1983 Is The Exclusive Remedy For The Alleged Violations By State Actors.**

The Plaintiff alleges a claim under 42 U.S.C. § 1981 against the individual defendant, Santoro. However, the Section 1981 claim must be denied as 42 U.S.C. § 1983 is the exclusive federal remedy for the alleged violations of Christian's constitutional rights.  See Burbank v. Office of Atty. Gen. of State of CT, 240 F. Supp. 2d 167, 175 (D.Conn. 2003).

Section 1981 provides, in relevant part,

> All persons within the jurisdiction of the United States shall have the same right ... To make and enforce contracts, ... And to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens ...

Since the Plaintiff's claims involve a "state actor," her exclusive remedy lies in an action under 42 U.S.C. § 1983.  The Supreme Court first set out this rule of law in 1989.  Jett v. Dallas Independent School District,  491 U.S. 701, 109 S. Ct. 2702, 105 L. Ed. 2d 598 (1989).  In Jett, the Supreme Court examined the relationship between Section § 1983 and § 1981. Concluding that in enacting Section 1983 Congress intended that it was enacting the exclusive remedy against state actors for the violation of constitutional rights, the Court stated:

> The historical evidence surrounding the revisions of 1874 further indicates that Congress thought that the declaration of rights in § 1981 would be enforced against state actors through the remedial provisions of § 1983.

Id. at 733-34.

In 1991, Congress amended Section 1981 to include the phrase" the rights protected by this section are protected against . . . impairment under color of state law." Subsequently, plaintiffs have argued unsuccessfully to other Circuit Courts that the amendment to § 1981 overruled Jett.   The Fourth, Fifth, Eighth and Eleventh Circuits have concluded the amendment to section 1981 did not change the rule set forth in the Jett case.  After examining the legislative history of the amendment, these circuits concluded that the purpose of the amendment was to clarify that Section 1981 applies to nongovernmental entities, not to reverse or alter the holding in Jett. See, Oden v. Oktibbeha County, 246 F.3d 458 (5th Cir. 2001);  Butts v. County of Volusia, 222 F.3d 891, 894 (11th Cir. 2000); Dennis v. County of Fairfax, 55 F.3d 151, 156 n. 1 (4th Cir. 1995);  Cerrato v. San Francisco Community College Dist., 26 F.3d 968 (9th Cir. 1994); Williams v. Little Rock Mun. Water Works, 21 F.3d 218 (8th Cir. 1994).

In Felton v. Polles, 315 F.3d 470, (5th Cir. 2002), the Fifth Circuit determined that the rule set out by the Supreme Court in Jett equally applies to state officials sued in their individual capacity. In so holding, the Fifth Circuit reasoned that the Supreme Court did not make a distinction between state entities and individuals acting pursuant to color of state law.

Recently the district court in Connecticut held that Congress did not abrogate Jett when they added subsection (c) in the Civil Rights Act of 1991.[5]  Burbank v. Office of Attorney General, et al., 240 F. Supp. 2d 167, 174 (D.Conn. 2003) citing, Felton v. Polles, 315 F.3d 470, 480-81 (5th Cir. 2002); other citations omitted); cf Federation of African Amer. Contractors v.

---

[5]  Subsection (c) states "The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of law." 42 U.S.C. § 1981(c).

<u>City of Oakland</u>, 96 F.3d 1204 (1996).   Although on its face the subsection appears to provide a cause of action against state actors, courts use the fact that Congress "neither expressed its intent to overrule <u>Jett</u>, nor explicitly created a remedy against state actors in addition to § 1983," to hold that they are unwilling to deviate from the Supreme Court's precedent. <u>Id.</u> (citing, <u>Felton</u> 315 F.3d at 480-81). Accordingly, the Section 1981 claim against Santoro must be dismissed.

## CONCLUSION

For all of the foregoing reasons, the Defendants respectfully submit that there is no genuine dispute as to all the material facts and they are entitled to summary judgment as a matter of law on the Plaintiff's Complaint.

DEFENDANTS,
JUDICIAL BRANCH OF THE
STATE OF CONNECTICUT,
COURT OPERATIONS DIVISION
and SABRINA SANTORO

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY:

Nancy A. Brouillet
Assistant Attorney General
Federal Bar No. ct03138
55 Elm Street, P.O. Box 120
Hartford, CT  06141-0120
Tel: (860) 808-5340
Fax: (860) 808-5383
E-Mail:
Nancy.Brouillet@po.state.ct.us

## <u>CERTIFICATION</u>

I hereby certify that a copy of the foregoing Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment was mailed in accordance with Rule 5(b) of the Federal Rules of Civil Procedure on this 19th day of August, 2004, first class postage prepaid to:

John R. Williams
Williams and Pattis, LLC
51 Elm Street, Suite 409
New Haven, CT 06510
Email: jrw@johnrwilliams.com

Nancy A. Brouillet
Assistant Attorney General