## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

NORMA CHRISTIAN,               :      CIVIL ACTION NO.
    *Plaintiff*               :      3:03CV00524(RNC)
                      :

    v.               :

                      :

JUDICIAL BRANCH OF THE STATE OF
CONNECTICUT, COURT OPERATIONS
DIVISION, and SABRINA SANTORO,      :
    *Defendants*               :      July 30, 2004

### AFFIDAVIT OF ANN-LAURIE PARENT

I, ANN-LAURIE PARENT, having been duly sworn deposes and says:

1. I am over 18 years of age and believe in the obligation of an oath and have personal knowledge of the facts herein contained.

2. I currently am the Personnel Officer for the State of Connecticut, Judicial Branch – Human Resource Management and have served in that capacity for 16 years.

3. I am familiar with the plaintiff in the instant matter, Norma Christian in my capacity as Personnel Officer.

4. Throughout her employment with the Judicial Branch, the plaintiff was assigned to the Judicial District of New Haven.

5. Ms. Christian was absent from work from her duties as a Court Reporter II due to an injury sustained in an automobile accident. She was out of work approximately one year.

EXHIBIT NO. 6

6. In the Offices of the Court Reporters assigned to the New Haven Judicial District, 235 Church Street, New Haven, CT due to limited work space, when an individual employee is to be absent for a significant period of time, it is customary practice that office space is cleared in order to be utilized by other employees.

7. Ms. Christian's possessions were boxed in a different manner than experienced by other employees due to the emergency nature of her absence.

8. It is customary practice for employees, who have prior knowledge they are going to out on long-term absences, to clear out their possessions themselves prior to leaving.

9. Ms. Christian's possessions were not boxed until the third or fourth month of her absence and only after the supervisor was notified that she would be absent for an extended period of time.

10. The plaintiff's personal possessions were not "scattered over the floor."

11. The plaintiff returned to work on or about February 23, 2001 without communicating to either her supervisor or any other supervisory staff her intention to return to work on that date.

12. The plaintiff left a note on her immediate supervisor's desk on February 26, 2001 from the plaintiff's physician that said the "estimated date of work return will be 2/23/01. At that time she [Norma Christian] will probably have a lifting restriction and she will need to be able to get up and move around during short intervals." (See note appended hereto as Attachment "A").

13. When Ms. Santoro, the plaintiff's supervisor, became aware of the work restrictions, she sought consultation from the Human Resource Management Division, the Court Operations Division and Nancy Brown, Manager of Transcript Services. She was attempting to determine how to accommodate Ms. Christian's restrictions. The doctor's note was not "rejected" as the plaintiff claims.

14. Ms. Santoro acted appropriately in requesting further clarification from Ms. Christian's physician. The agency required more specific information on the restrictions noted in order to ensure that further injury would not result in the course of performing normal job functions.

15. It is my understanding that the plaintiff upon her return to work was assigned to the family court as the matters heard here were usually of short duration which would permit the plaintiff to change position frequently.

16. The plaintiff was not assigned to the most chaotic courtroom in the building upon her return to work.

17. Ms. Christian was given a letter on February 28, 2001 by her supervisor that reiterated that the plaintiff should let whichever Judge to whom she was assigned know if she needed a recess. (See letter appended hereto as Attachment "B")

18. It is my understanding that when Ms. Christian returned to work that she used a court monitoring recorder to back up her own stenographic notes.

3

19. Stenographic reporters are paid more than court monitors. Under no circumstances are any court reporters to use court monitor recording machines at any time. The job classifications of Court Reporter and Court Monitor are two distinct classifications.

20. Court Reporters, as outlined in the job specification, "Records verbatim testimony by operating stenographic equipment; operates a stenographic machine…" Court Monitors are "responsible for recording verbal testimony during courtroom proceedings using electronic recording equipment." (See Job Descriptions appended hereto as Attachment "C").

21. At no time prior to Ms. Santoro becoming aware that the plaintiff was using the court monitoring recorder did Ms. Christian inform her supervisor that she was experiencing difficulties. When Ms. Santoro became aware of this fact, she offered to move the plaintiff to another work assignment, i.e., voire dire, which Ms. Christian declined.

22. There are no light duty assignments available to Court Reporters.

23. On occasion since her return to work, Ms. Santoro was unable to locate Ms. Christian throughout the workday. On one occasion, a member of the public who was to meet Ms. Christian to obtain a transcript from her arrived at the Court. Ms. Santoro was unable to locate Ms. Christian until approximately 10 a.m. When questioned to her whereabouts, the plaintiff was unable to offer a reasonable explanation.

24. On March 16, 2001, Ms. Santoro was unable to locate Ms. Christian and had been receiving telephone calls from the plaintiff's co-workers who were also unable to locate her throughout the day.

25. When Ms. Santoro was informed of Ms. Christian's whereabouts, she approached the plaintiff to inquire as to her work assignment. According to witness statements, Ms. Santoro did not use profanity toward the plaintiff nor did she refer to her with a racial epithet. (See statement appended hereto as Attachment "D").

26. The plaintiff refused to answer her supervisor's direct inquiry about her whereabouts on March 16, 2001 and responded using inappropriate language toward her supervisor.

27. As a result of the plaintiff's actions on March 16, 2001, she was placed on paid suspension and an administrative inquiry was conducted by James Maher, Director of Court Operations, Nicholas Cimmino, New Haven Trial Court Administration, and Nancy Brown, Supervisor of Transcript Services, into Ms. Christian's actions.

28. As a result of the investigation, Ms. Christian received a written reprimand on April 17, 2001 stemming from the March 16, 2001 confrontation with her supervisor. (See letter appended hereto as Attachment "E").

29. The plaintiff on April 24, 2001 received formal supervisory counseling at a supervisory counseling session regarding her duties and responsibilities. (See memorandum appended hereto as Attachment "F").

30. The plaintiff was not denied union representation on April 24, 2001 for the supervisory counseling session inasmuch as representation was not appropriate nor would it be in keeping with the collective bargaining contract.

31. In accordance with the collective bargaining agreement between the State of Connecticut, Judicial Branch and AFSCME, Local 749, Article XIV – Discipline, Section 7 – Disciplinary Interviews, "A union steward may attend a disciplinary interview…" (See description appended hereto as Attachment "G").

32. The supervisory counseling session was not disciplinary in nature.  No discipline was being considered during this meeting, nor was any discipline imposed as a result of this session.

33. Ms. Christian received a written follow-up to the issues discussed at the counseling session.  The memo was to ensure that Ms. Christian understood what the expectations were for her work performances. (See Attachment "F")

34. Ms. Christian was not "gratuitously" threatened with discipline. The plaintiff was made aware of expectations and the potential consequences should the expectations not be met.

35. All Judicial Branch employees are expected to maintain a certain level of productivity.

36. At some point, the plaintiff was directed to submit her stenographic notes on a daily basis only after she was unable to produce several days of notes, which have never been recovered.

6

37. It is my understanding that the plaintiff was assigned as a Court Reporter to Judge Alander's courtroom in New Haven on March 8, 2001, March 9, 2001 and March 13, 2001.

38. The plaintiff was unable to produce transcripts when requested for the testimony given on March 8, 2001, March 9, 2001 and March 13, 2001 before Judge Alander.

39. Between April 17, 2001 and May 11, 2001, both Ms. Santoro and Judge Alander were interviewed regarding the missing transcripts in accordance with the State of Connecticut personnel regulations and the applicable collective bargaining agreement.

40. Based on the investigation that was conducted, a pre-disciplinary hearing with the plaintiff was scheduled for May 11, 2001.

41. The hearing was held on May 11, 2001 in New Haven to determine whether the plaintiff should be disciplined for losing stenographic notes and for failing to provide the corresponding transcripts. The failure to provide the corresponding court-ordered transcripts ultimately caused at least one mistrial to be declared.

42. The plaintiff was represented by Attorney Norman A. Pattis of the law firm of Williams & Pattis, LLC., at the May 11, 2001 hearing.

43. It was the unanimous opinion of those who conducted the investigation that the plaintiff destroyed the stenographic notes because she feared they would show that she was using the tape-monitoring machine.

7

44. The plaintiff was notified by letter dated May 30, 2001 that as a result of the investigation received a thirty (30) day unpaid suspension for the period June 24, 2001 to July 13, 2001. (See letter appended hereto as Attachment "H").

45. No other Court Reporter has committed the same or substantially similar offenses to those of the plaintiff.

46. Other than the plaintiff, no court reporter assigned to the Judicial District of New Haven has been subject of an investigation for destroying stenographic notes and being unable to produce a court-ordered transcript.

47. These disciplinary actions resulted in an unsatisfactory performance evaluation dated October 29, 2001 in the categories of Thoroughness, Organization and Planning, Judgment/Initiative and Relationship with others (See evaluation appended hereto as Attachment "I").

48. A performance evaluation is not considered as a disciplinary action under the collective bargaining agreement or State of Connecticut personnel regulations.

49. In terms of the performance issues that led to the unsatisfactory rating, there have been no other employees whose performance has been the same or similar.

50. The performance evaluation in no way was a result of, or in retaliation against, her for filing a complaint with the CHRO. It was an accurate reflection of the significant poor performance standards exhibited by the plaintiff during the rating period.

51. At all relevant times, the plaintiff was not satisfactorily performing her duties as a Court Reporter II.

52. Following the October 29, 2001 unsatisfactory performance evaluation, the plaintiff did not take advantage of administration options available to her. She neither submitted a written rebuttal nor filed a grievance contesting the evaluation.

53. The plaintiff has not been subjected to discrimination and disparate treatment while employed by the Judicial Branch.

54. The plaintiff never filed a complaint with the Judicial Branch of any alleged discrimination by the Court Operations Division or Ms. Santoro.

55. The plaintiff was not subjected to any adverse employment action and was not subjected to any discrimination due to her arrest for the domestic dispute involving her boyfriend.

56. The medical accommodations of movement and decreased lifting were met.

57. At all relevant times, the plaintiff was not a "physically disabled person" as defined by Conn. Gen. Stat. § 46-51(15).

58. At all relevant times, the plaintiff's left hip fracture was not a chronic handicap, infirmity or impairment as it was not a permanent condition.

59. At all relevant times the plaintiff did not have a permanent and/or substantial limitation in her ability to function in major life activities.

60. The issues that resulted in supervisory intervention and discipline were investigated, substantiated, documented performance failures that had no relevance to the medical restrictions or the plaintiff's race and color.

61. The plaintiff voluntarily retired from the Judicial Branch effective May 1, 2003.

62. The discipline against the plaintiff (suspension without pay for failure to provide transcripts and a written warning) were in accordance with the State of Connecticut personnel regulations and the collective bargaining agreement and not based on any discriminatory intent.

63. I have read the foregoing statements and swear that they are true to the best of my knowledge and belief.

*Ann-Laurie Parent* [signature]

Ann-Laurie Parent
Personnel Officer


STATE OF CONNECTICUT          )
                              )    ss. Hartford
COUNTY OF Hartford            )


    Sworn and subscribed to before me on this          day of July, 2004.


[signature]

~~Commissioner of the Superior Court~~
Notary Public
Commission Expires _____

SHIRLEY A. TURNBULL
NOTARY PUBLIC
MY COMMISSION EXPIRES NOV. 30, 2007

11