Such arbitration proceedings shall take precedence over any other pending arbitration proceedings between the parties.

In any arbitration proceeding in which it is shown that derogatory material was considered and adversely affected the employee's chances for selection for a promotion, the remedy, if such material was without just cause, shall be limited to: (1) the removal of such material from the employee's personnel record, and (2) an order to redo the promotion from among the original applicants without consideration of such material. Accordingly, no remedy ordering the selection of the grievant shall be available nor shall the employee originally selected forfeit pay received while serving in the promotional position.

Section 4. This Article shall not be deemed to prohibit supervisors from maintaining written notes or records on an employee's performance or conduct for the purpose of preparing performance appraisals.

## ARTICLE XIV

## Discipline

All discipline under this Article shall be for just cause.

Section 1. Types of Discipline.
(a) Discipline includes discharge, demotion, suspension without pay, denial of an increment due to misconduct and letter of reprimand of an employee who has attained permanent status, but shall not include the non-reappointment of a person holding a statutory term of office.
(b) Division heads shall not have the authority to transfer any employee due to misconduct. Accordingly, transfers shown to be based on misconduct shall be voidable without regard to whether such misconduct occurred.
(c) Preventive discipline shall be defined as suspension with pay.

Section 2. Authority to Discipline.
Any designee of the Chief Court Administrator who is not a member of the bargaining unit.

Section 3. Procedures for Imposition of Discipline. Appeal Procedures.
(a) The employer shall inform the employee and the President of the Local in writing of the discharge, demotion, suspension without pay, denial of an increment or written reprimand, the effective date of such action, and the reasons for such action. The employer shall set forth supporting facts in reasonable detail.
(b) Within twenty (20) days of the imposition of discipline, an employee may file a Step III grievance. For written reprimands, the deadline remains at thirty (30) days.
(c) Within fourteen (14) days after the appropriate response at Step III, or if no response is forthcoming after the expiration of the time limit set forth in Article X. Grievance Procedure the Union may invoke arbitration – subject to (d) in this section.

(d) Written reprimands shall be grievable, but shall not be arbitrable unless and until used as grounds, in whole or in part, for other disciplinary action, or it constitutes the basis of a decision not to select an employee for a promotion as defined in this Agreement.

In any arbitration proceeding in which it is shown that a reprimand was considered and adversely affected the employee's chances for selection for a promotion, the remedy, if such material was without just cause, shall be limited to: (1) the removal of such material from the employee's personnel record, and (2) an order to redo the promotion from among the original applicants without consideration of such material. Accordingly, no remedy ordering the selection of the grievant shall be available nor shall the employee originally selected forfeit pay received while serving in the promotional position.

Section 4. Preventive Discipline
(a) Suspensions with pay shall not be grievable or arbitrable.
(b) If, as a result of an investigation of allegation of facts leading to a suspension with pay, no action is taken, the record of the suspension shall be removed from the employee's personnel file.

Section 5. Notwithstanding the above provisions of this Article, the Employer may impose any type of disciplinary action on employees who have not attained permanent status; such action shall not be grievable or arbitrable.

Section 6.
(a) Employees who engage in a strike, sympathy strike, work stoppage, slow-down, concerted withholding, interruption or disruption of service, sick-out, or any interference with the mission of the Judicial Branch may, at the exclusive option of the Employer, be discharged or disciplined.
(b) In taking action under paragraph (a) above, the Employer may also consider whether the employee induced, supported, or encouraged other employees to engage in activities prohibited by Article IV.

Section 7. Disciplinary Interviews.
(a) A Union steward may attend a disciplinary interview as a witness for, and consultant to, an employee when all of the following circumstances apply:
(1) The employee is being interviewed as part of an investigation of misconduct by a supervisor, official, or other representative of the Connecticut Judicial Branch.
(2) Such discipline is considered likely at the time of the interview, but no final decision have been reached.
(3) The employee requests the presence of a steward.
(4) A steward is available within a reasonable time, ordinarily not to exceed twenty-four (24) hours.
(5) No emergency work situation involving the employee or the steward exists.
(6) The steward does not interrupt or otherwise impede the interview.
(7) Only one steward may attend an interview or series of interviews.

Parent Affidavit Attachment "G"

(b) The rights conferred in the Section constitute the full extent to which the parties intend the Weingarten case to be applied under C.G.S. § 5-271(a).

(c) Ordinarily, violations of paragraph (a) shall not be grounds for altering disciplinary action. However, the arbitrator reviewing such action may order other relief appropriate to the nature and circumstances of the case.

**Section 8.** Whenever practicable, the investigation, interrogation, or discipline of employee shall be scheduled in a manner intended to conform with the employee's work schedule, with an intent to avoid overtime or compensatory time. When any employee is called to appear at any time beyond his/her normal work time, and actually testifies, he/she shall be deemed to be actually working. This provision shall not apply to Union Stewards.

## ARTICLE XV

### Reduction in Force

**Section 1. Definition.** A layoff is defined as the involuntary nondisciplinary separation of an employee due to a reduction in the work force. A layoff shall not be deemed to include a non-reappointment of a person appointed for a statutory term of office.

**Section 2. Reasons for Layoff.**
(a) Employees may be laid off because of lack of work, economy, insufficient appropriation, a change in departmental organization, abolition of position or any other cause.

(b) **Displacement by Volunteers.** Any increased use of volunteers shall not form the basis for a layoff of any unit employee.

**Section 3. Procedures for Reduction in Force.**
(a) Any necessary cutback in the number of employees shall be accomplished as far as practicable by normal attrition.

(b) **Scope of Layoff.** Layoffs within the bargaining unit may be instituted on a department-wide basis or may be limited to one or more position classifications.

(c) **Order of Layoff.** In the event a layoff is necessary, employees serving a probationary period shall, as far as practicable, be laid off first; thereafter permanent employees shall be laid off. In the event it becomes necessary to layoff an employee with more than three (3) years service the Employer shall first consult with the Union concerning the criteria for selecting employees. Seniority shall be a controlling factor in such selection.

In determining the practicability of laying off employees with less than three (3) years service, and in determining and weighing the criteria for selecting for layoff employees with more than three (3) years service, the Employer may consider the need to continue state-mandated services. The concept of state-mandated services shall not operate as a basis of retaining a less senior employee in a classification over a more senior employee in the same classification. The Employer bears the burden of

18

[right column, partially cut off:]

demonstrating that a se[...]
(d) Service as used i[...]
service as a full-time or p[...]
Judicial Branch and in [...]
"current" classification [...]
(1) for supervisory em[...]
job titles in the classific[...]
(2) for non-superviso[...]
classification series.
(3) Clerical Series. Se[...]
uous service full and p[...]
classifications from Offi[...]
fications are:

   Accounting Clerk
   Administrative Assist[...]
   Administrative Clerk[...]
   Administrative Secre[...]
   Assistant Juvenile M[...]
   Clerical Supervisor I
   Court Services Clerk[...]
   Courtroom Clerk I a[...]
   Deputy Clerk, G.A.[...]

Current continuous [...]
employees as of Decem[...]
necticut Judicial Branc[...]
The Employer shall [...]
notice of layoff and a[...]
natives.

**Section 4. Impact** [...]
(a) During the life o[...]
will be laid off as a di[...]
of its right to contract[...]
(b) The Employer w[...]
the employee is offere[...]
in the Employer's judg[...]
tion in pay; or (2) the [...]
which reasonably appe[...]
tions and skills. Ther[...]
period.
(c) The Judicial Bra[...]
workers to do barga[...]
employees. The Judic[...]
contract workers to c[...]
unit employees laid [...]
(SEE APPENDIX A).
(d) For layoff purp[...]
shall be granted Supe[...]
years of current cont[...]

JUDICIAL BRANCH
COURT OPERATIONS DIVISION
75 Elm Street
Hartford, CT 06106-1692
Fax: (860) 722-1613

**ADMINISTRATION**

| | | | |
|---|---|---|---|
| Director | (860) 722-1612 | Interpreting Services | (860) 722-5880 |
| Administrative Services | (860) 722-5889 | Personnel Services | (860) 722-1697 |
| Facilities/Maintenance Services | (860) 722-1653 | Seized Property | (860) 722-5843 |
| Financial Operations Services | (860) 722-1628 | Strategic Management | (860) 568-7012 |
| Computer Systems Support | (860) 722-1688 | | |

May 30, 2001

Ms. Norma Christian, CSR
Juvenile Matters Court
239 Whalley Avenue
New Haven CT 06511

Dear Ms. Christian:

    On May 11th of this year a hearing was held in New Haven to determine whether you should be disciplined for losing stenographic notes and for failing to provide the corresponding transcript(s). This failure to provide the corresponding court-ordered transcript(s) ultimately caused at least one mistrial to be declared.

    Connecticut General Statute Sec. 51-61 (c) provides that "Each court reporter and monitor shall, when requested, furnish ... within a reasonable time, a transcript of the proceedings ... as may be desired." Based on testimony at the May 11th hearing it was determined that you had exclusive custody of the notes in question and failed either willfully or negligently to perform your statutory duty. This determination was made, notwithstanding your allegation that Official Court Reporter Ms. Sabrina Santoro (your supervisor) already had possession of the notes, thus precluding you from preparing the transcript(s).

    The transcript of a proceeding is an integral part of the entire court process and court reporters, as noted above, have a statutory obligation to provide one when "desired." This is especially true for at least one of the hearings involved in this investigation where the transcript was the *sole* record of the court proceedings as well as the resulting court order. In this instance you clearly had the duty to provide the transcript. Aside from your statutory duty, you also failed in your duty to the litigants involved in the case. The resulting mistrial declaration will cause the parties to re-incur legal expenses and may expose them to a verdict that differs from the original court determination. This outcome reflects very poorly on the Judicial Branch and undermines, in a fundamental way, the public's confidence in the integrity and competency of the court process.

Given your failure to perform your statutory duties, the hardship you created for the parties involved in the litigation, and the harm you have caused to the reputation of the Judicial Branch, I hereby suspend you from work without pay for thirty (30) working days. This suspension will commence on Monday, June 4, 2001 through Friday, July 13, 2001.

Please be further informed that any similar incident of the inappropriate behavior discussed herein will be met with more serious discipline, which most likely will lead to the termination of your employment with the State of Connecticut, Judicial Branch.

Very truly yours,

Joseph D. D'Alesio
Executive Director
Court Operations


C:   James Maher, Director of Administration
     Robert D. Coffey, Director of Human Resource Management
     William Sadek, Judicial District Chief Clerk
     Sabrina Santoro, Official Court Reporter
     Nancy Brown, Supervisor of Transcript Services
     Ronald Macchio, Manager of Administrative Services, Superior Court
     Maria Kewer, Personnel Officer
     Cynthia Egan, President, AFSCME Local 731

Genadmin/christian-disc

*"Valuing Our Customers, Employees and Community"*.

# EMPLOYEE PERFORMANCE APPRAISAL REPORT

JD-ES-49 Rev. 4/93

---


# EMPLOYEE PERFORMANCE APPRAISAL REPORT

STATE OF CONNECTICUT
JUDICIAL BRANCH

COMPLETED

JD-ES-49 Rev. 4/93

Read "Supervisor's Guide to Performance Appraisal" (form JD-ES-49a) carefully before completing this report.

| EMPLOYEE'S NAME | | JOB TITLE | | |
|---|---|---|---|---|
| Norma Christian | 297680 | Court Reporter II | | |
| DIVISION | LOCATION | RATING PERIOD | | A/I DATE |
| Court Operations | New Haven-Juvenile | FROM 10/01/00 TO 09/30/01 | | January |

TYPE OF APPRAISAL
☐ Initial Probation    ☒ Annual    ☐ Promotional Probation    ☐ Other (specify) _____

Evaluate the employee on the job now being performed. Refer to the "Definition of Rating Levels" in the "Supervisor's Guide."
"X" the box which most nearly coincides with your overall judgement of each element.

| JOB ELEMENTS | | Outstanding | Very Good | Good | Fair | Unsatisfactory |
|---|---|---|---|---|---|---|
| **QUALITY OF WORK** | Thoroughness — The degree to which the employee's assignments reflect thoroughness and the established quality standards. | | | | | X |
| | Knowledge — The degree to which the employee demonstrates a grasp of the knowledge and skills required to perform the position's assignments. | | | X | | |
| | Organization and Planning — The degree to which the employee's work reflects systematic planning and efficient organization, (e.g. meeting deadlines, dependability.) | | | | | X |
| | Judgement/Initiative — The degree to which the employee's work reflects reasoning, problem solving ability and creativity. | | | | | X |
| QUANTITY OF WORK | The degree to which the employee's volume of work is accomplished and rate of progress meets production standards | | | | X | |
| RELATIONSHIP WITH OTHERS | The degree to which the employee works in harmony with staff, other agencies and outside contacts. | | | | | X |
| ATTENDANCE | The degree to which the employee's attendance adheres to standards. | | | | X | |
| SUPERVISORY ABILITY (if applicable) | The degree to which the employee's supervisory actions adhere to pertinent policy and procedures. | | | | | |
| OTHER | The employee may be rated on job elements not included above. Explain job element and rating in the "Remarks" section. | | | | | |

**REMARKS** — AN EXPLANATORY STATEMENT IS REQUIRED FOR EACH JOB ELEMENT RATED OUTSTANDING OR UNSATISFACTORY. ALSO INCLUDE ANY OTHER COMMENTS RELEVANT TO THE EMPLOYEE'S PERFORMANCE. ATTACH ADDITIONAL SHEETS IF MORE SPACE IS NEEDED.

see attached

**OVERALL RATING** (See Supervisor's Guide to Performance Appraisal for Instructions.)    ☐ SATISFACTORY    ☒ UNSATISFACTORY

| RATED BY (Signature) | TITLE | DATE SIGNED |
|---|---|---|
| [signature] | Official Reporter | 10/19/01 |
| APPROVED BY (Signature) | TITLE | DATE SIGNED |
| Larry Brown | Supervisor of Transcript Services | 10/29/01 |
| SIGNATURE OF EMPLOYEE* | | DATE SIGNED |
| Refused to sign | [signature] | 10/29/01 |

*Your signature confirms that you have seen this performance appraisal report and discussed it with your supervisor. It does not indicate your agreement with, or approval of, this appraisal report.

Parent AFFIDAVIT ATTACHMENT "I"



Use the first [...] columns to set forth the duties and responsibilities of the employ[ee's] job and the performance standards established at the beginning [of the rating] period. Use [the] last column to record the results accomplished for each duty or re[spo]nsibility at the end of the rating period.

NOTE: CONSULT THE SUPERVISOR'S GUIDE TO PERFORMANCE APPRAISAL BEFORE COMPLETING THIS SECTION.

| DUTIES AND RESPONSIBILITIES (include key results) | PERFORMANCE STANDARDS | RESULTS ACCOMPLISHED |
|---|---|---|
| 1. Attend court and all other court-related proceedings and record accurately the proceedings. | 1. Produce complete, accurate, transcribable recordings and notes of all proceedings. | Satisfactory. |
| 2. Prepare and deliver transcripts | 1. Meet minimum production rate of 100 pages per week for appeal transcripts. | Unsatisfactory. |
| | 2. Deliver appeal transcripts on or before estimated delivery date. | Unsatisfactory. |
| | 3. Produce verbatim, neatly typed, correctly spelled and punctuated transcripts. | Satisfactory. |
| 3. Issue transcript order acknowledgments and certificates of delivery | 1. Transcript order acknowledgements to be fully completed. | Unsatisfactory. |
| | 2. Accurate estimates within 15% for number of pages and estimated delivery date. | |
| | 3. Prompt distribution of transcript order acknowledgements. | |
| | 4. Prompt letter demanding satisfactory financial arrangements, if not given with order. | |
| | 5. Certificate of delivery to be fully completed and prompt. | |



Norma Christian was out of work for a period of the overall rating period due to an auto accident. She does possess the knowledge and skills required to perform the duties of a court reporter. There are some areas of concern, which are addressed below.

Thoroughness: Overall lack of concern for job responsibilities. This lack of concern resulted in the loss of several days' of stenographic notes, which has already resulted in at least one mistrial. This ultimately resulted a 30 day disciplinary suspension for employee.

Organization and Planning: Failure to return phone calls to attorneys and others requesting transcripts, either in a timely manner or at all. Failure to keep records organized, which has resulted in the need to have her stenographic notes turned in at the close of each business day, and signed out when removed for transcription. Lost several days of stenographic notes, which resulted in at least one mistrial, which resulted in a 30 day disciplinary suspension. Upon receiving an appeal order, gave an estimated date of delivery that amounted to the production of two point four pages per day, when mandatory minimum production is twenty pages per day for appeals. When given appropriate deliver date, appeal still delivered late. Appeal was not properly delivered upon completion. Statute requires appeal transcripts to be mailed to recipient via certified mail and this appears on a pre-printed form. Norma crossed out the word "certified" and mailed the transcript via regular mail.

Judgment and Initiative: Utilized monitor equipment on numerous occasions. Indicated she used the monitoring equipment for three days, and only three days, due to the fact she was out on prolonged sick leave and thought it was prudent to use tape as back up. Never discussed this subject with supervisor, prior to utilizing the equipment. Her stenographic notes clearly indicate she utilized the tape machine on a daily basis, not just three days. She then handed tapes to a monitor to type for her. Exercised poor judgement in crossing out of the word "certified" on the appeal delivery certificate and mailing via regular mail.

Relationship with Others: Displays unwillingness to cooperate with coworkers and supervisor. Failure to relay phone messages to coworkers. Failure to return calls and reply to inquiries made by supervisor. Received a written reprimand with regard to this behavior.