**State of Connecticut**
**COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES**
1229 Albany Avenue, Hartford, CT 06112  (860) 566-7710  Fax (860) 566-1997
www.state.ct.us/chro
TDD (860) 566-7710

January 22, 2003

Norma Christian
517 Grassy Hill Road
Orange, CT 06477

SUBJECT: **TRANSMITTAL OF DRAFT SUMMARY OF NO REASONABLE CAUSE**
CASE NAME:  Norma Christian v. State of Connecticut Judicial Branch
CHRO NO.:   0210109
EEOC No:    16aa11443

(XX)  Finding of No Reasonable Cause
(  )  Administrative Dismissal - Lack of Jurisdiction

Dear Ms. Christian:

Transmitted herewith is a <u>draft summary</u> of <u>No Reasonable Cause Finding</u> prepared by the investigator assigned to your complaint. Prior to final action, I am providing you with an opportunity to comment. You have <u>fifteen calendar days</u> to provide me with any written comments concerning the draft summary. During this fifteen (15) day period you may also review materials in the case file. Unless I hear from you within this period, final investigative action will occur on **Thursday, February 6, 2003**. You may consult with or retain an attorney. However, such consultation or retention will not extend the period of time for comment beyond the period of time noted above. Nor will such consultation with or retention of an attorney alter the period of time for reconsideration established by regulation or the statutory period for appeal.

If you do submit comments, they will be reviewed and considered. However, if your comments do not rebut the substance of the investigator's summary or present new evidence that requires further investigation, the investigator's draft summary will be finalized.

FL404(2)

**CHRO**       *Safeguarding Civil Rights in Connecticut*
Affirmative Action/ Equal Opportunity Employer

EXHIBIT NO. 11
Christian v. Judicial
3:03CV0524(RNC)



Additionally, if you submit written comments you must send a copy of the comments to the opposing party and sign the certification of mailing form attached hereto, and return it to the Commission.

Sincerely,

Epifanio Carrasquillo
Manager, Capitol Region

Enclosure: Draft Summary
Complainant(s)'/Respondent(s)' Certification of Mailing Form # 004

cc: Norman A. Pattis, Esq.
**WILLIAMS & PATTIS, LLC**
51 Elm Street
Suite 409
New Haven, CT 06510
(COMPLAINANT'S ATTORNEY)

Ann-Laurie Parent
Personnel Officer
Human Resource Management Unit
**STATE OF CONNECTICUT**
**JUDICIAL BRANCH**
75 Elm Street
Hartford, CT 06106
(RESPNODENT'S CONTACT)

FL404(2)

STATE OF CONNECTICUT
COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

Norma Christian
COMPLAINANT

FINDING OF NO
REASONABLE CAUSE
SUMMARY DISPOSITION

v.

State of Connecticut, Judicial Branch
RESPONDENT

CHRO NO. : 0210109
EEOC NO. : 16aa11443

DATE FILED: 8/29/01
DATE AMENDED: 11/15/02

## I STATEMENT OF INCIDENT(S):

The issues presented for inquiry are: (1) Whether the Complainant was subjected to unequal discipline and general treatment on the basis of her race/color (black) and her physical disability (fractured hip); (2) retaliated against because of prior opposition; (3) denied reasonable accommodation for a physical disability; (4) denied employment based on prior conviction of crime; in violation of Connecticut General Statutes §§ 46a-58(a), 46a-60(a)(1), 46a-60(a)(4), 46a-79, 46a-80, *the Americans with Disabilities Act, 42 U.S.C.12101 et seq.,* Title VII of the Civil Rights Acts of 1964 &1991 as amended.

## II SUMMARY OF POSITIONS:

(i) Complainant
The Complainant makes the allegations as stated at I above.

ii) Respondent
The Respondent denies the alleged discriminatory treatment and proffers reasons for actions taken which it contends are legitimate, non-discriminatory.

1

## III JURISDICTION:

In accordance with the Commission's Rules and Regulations, the complaint and case file were reviewed for the purpose of determining the Commission's jurisdiction. As a result thereof, the Investigator concludes that the Commission has jurisdiction to receive, investigate and issue a determination upon the merits of this complaint.

## IV THE PARTIES:

(1) The Complainant is a resident of this state and, at all times pertinent to the allegations in this complaint, was an employee of the Respondent.

(2) The Respondent, is the Judicial Branch of the State of Connecticut and at all times pertinent to the allegations in this complaint, the Respondent was the Complainant's employer.

## V THE "REASONABLE CAUSE" STANDARD:

As earlier noted, the Act imposes a duty on the Commission to receive, investigate and issue determinations upon the merits of discriminatory practice complaints [See Conn. Gen. Stat. Section 46a-82]. In this respect, the Act directs the Executive Director to refer complaints filed pursuant to Section 46a-82 to an investigator for the purpose of conducting an investigation into the facts relevant to the complaint. Similarly, it imposes a duty upon the Investigator to determine "if there is reasonable cause for believing that a discriminatory practice has been or is being committed as alleged in the complaint". [See Conn. Gen. Stat. Section 46a-83(c)].

Hence, the question pending before the Investigator is whether the facts of this complaint are sufficient to support a finding that there exists reasonable cause to believe that a discriminatory practice has occurred in the meaning of the Act. [See subparts (7), (8) of Section 46a-51, Conn. Gen. Stat.].

The Act defines reasonable cause to mean:

"A bona fide belief that the material issues of fact are such that a person of ordinary caution, prudence and judgment could believe the facts alleged in the complaint"

**Therefore, the Commission concludes that the Reasonable Cause standard requires:**

1. that the investigation be thorough and complete;
2. that the investigator consider all reliable and probative proof irrespective of whom it supports
3. that the investigator make findings with respect to all material issues of fact, including disputed facts;

   4. that the investigator resolve issues of credibility drawing appropriate inferences; and,
   5. that the investigator ultimately decide whether the facts are such that a person of ordinary, caution, prudence and judgment <u>could</u> believe the facts alleged in the complaint.

## VI  DISCUSSION AND CONCLUSIONS

Indeed, the aforegoing standard makes it clear that in order to determine whether the facts are sufficiently probative to establish that there exists reasonable cause to believe that the Respondent subjected the Complainant to the illegal discriminatory practices alleged in the complaint, the Investigator must make findings with respect to <u>each material issue in dispute.</u>

In the instant complaint, the Complainant has alleged several incidents which will be the basis of investigative inquiry.

### A.  Discipline Incident - Suspension, written reprimand, verbal counseling

1. Whether the Complainant is a member of a protected class of persons;
2. Whether the Complainant suffered an adverse employment decision;
3. Whether the Respondent articulates a legitimate, non-discriminatory reason for the alleged adverse action;
4. Whether the Respondent's proffered reason(s) is(are) factually true;
5. Whether the Respondent's proffered reason(s) is(are) worthy of credence;
6. Whether the evidence in the investigative file, considered in its entirety is sufficient to support a finding that there is or is not reasonable cause to believe that unlawful discrimination occurred.

**The Investigator makes and enters the following findings and conclusions:**

1. The Complainant claims membership in a class of persons statutorily protected on the basis of race/color, (black). This is not disputed.

2. The Complainant alleges that she was a victim of disparate treatment, specifically, unequal discipline (suspension, written reprimand), unequal terms and conditions of employment (e.g. denial of key card/parking, belongings scattered); light duty assignment; intensified scrutiny; verbal harassment and use of racial slur (A1-3, D1).

    The investigator has found no evidence that supports a reasonable inference that the Complainant was subjected to different or unequal treatment motivated by racial considerations. The incident surrounding the key card existed for at most a few days until the supervisor (Santoro) became aware of the problem and the Complainant was issued a card. Ms. Santoro was credible in her assertion of lack of knowledge of the problem until it was presented to her and she addressed it forthwith.

3

The investigator found no evidence to support an inference that the assignment to Judge Alander was motivated by racial or other unlawful animus. The nature of Alander's court proceedings matched the accommodation need requested by the Complainant and thus the assignment of the Complainant to that court does not strike the investigator as unreasonable.

The questions asked by Santoro of the Complainant regarding her whereabouts are not unreasonable for a supervisor who has suspicions that a subordinate is not performing the assigned duties nor is in the expected location wherein the assigned duties are to be performed.

The allegation of the use of a racial slur by Santoro is not accorded credibility by this investigator. The nature of the alleged slur and the manner in which it was used, if truthful, would clearly be offensive to any individual including a reasonable person in the Complainant's position. It is unbelievable to think that such conduct could have occurred without anyone either hearing the outburst, witnessing the actions or, even more importantly, witnessing the Complainant's state of composure immediately following that unpleasant encounter with Santoro. It is unbelievable to think the Complainant would not have gone to someone to either complain about Santoro's behavior or to commiserate with immediately following what could easily be considered hurtful and clearly offensive utterance hurled at her by Santoro. The inability to identify anyone or to identify steps taken to deal with the alleged improper conduct challenges credibility given knowledge of principles of generally accepted standards of conduct in the workplace.

3. The Respondent has provided a justification for the action taken with regard to specific allegations of disparate treatment and the investigator has found them to be legitimate and non-discriminatory in the absence of persuasive evidence to the contrary. The discipline incidents will be discussed below under Retaliation (C1-2,D1).

B. <u>Harassment</u> (general)

The Complainant alleges various acts of harassment towards her by Santoro such as: the placement of her personal belongings in boxes while she was out on medical leave; not being given a key card for parking upon her return; being assigned to Family Court (busy docket) upon her return from extended leave while her stenographic skills were unrefreshed; refusal to allow her to use recording equipment until she was able to regain her former stenographic skills; monitoring of her whereabouts; seizing her stenographic notes without her (Complainant's) knowledge. The investigator concludes from the evidence that there was great tension between the Complainant and her supervisor and that communication between the two grew more and more difficult and strained. There is insufficient evidence upon which to conclude that the difficulties experienced by the Complainant were as a result of her race/color, physical disability or prior opposition (A1-4,D1).

4

## C. Retaliation

On the issue of retaliation, the following facts are established without dispute by the evidence. The Complainant issued a written response dated March 18, 2001(B2) to a memo from Santoro dated March 16, 2001(B5) in which she documented encounters she had with Santoro during the day of March 16th. These encounters included racial and other obscenities hurled at the Complainant by Santoro (A1-4, B1, D1). This was denied by Santoro (D1) and corroborated by a witness (Blakeslee) who testified to overhearing a conversation between the Complainant and Santoro on the elevator which continued on to the 7th floor but recognized no racial nor other verbal obscenities uttered by Santoro (D1).

Before the conduct of retaliation can be established, there must be evidence of *protected* conduct engaged in by the Complainant that is either an act of opposition or participation by the Complainant as specified in CGS § 46a-54.

The evidence shows the Complainant filed her complaint on August 29, 2001 which was received by the Respondent on September 14, 2001. The Complaint Affidavit was amended on October 29, 2001 and this was served upon the Respondent November 13, 2001 (A3). The facts show that the Complainant received an unfavorable performance evaluation on October 23, 2001 (A3). The facts also show that the Complainant was issued a written reprimand for her conduct in the encounter with Santoro on March 16th. In a separate matter pertaining to the loss of stenographic notes, the Complainant was suspended without pay for thirty (30) days from June 4, to July 13, 2001.(C1)

In determining whether there is a nexus between the protected conduct and the resulting adverse actions by the Respondent, certain factors can be identified which, if present, can lead to a reasonable inference that unlawful retaliation occurred.

In the instant matter, "the closeness in time" between the Complainant's memo to Santoro registering her opposition to the latter's conduct and comments, also copied to Nancy Brown, Maria Kewer and the union steward, and the resulting disciplinary action taken by the Respondent (James Maher) is a reasonable basis for concluding that the discipline was retaliatory. But, in the context of events, the reprimand was not an unreasonable course of action taken, neither was it completely unwarranted and so the investigator finds insufficient evidentiary support for a conclusion of reasonable cause. In a similar vein, the investigator is unable to conclude, without more, that the 30-day suspension or the unsatisfactory evaluation was retaliatory even though they occurred after she had filed her complaint with the Commission. It is noted that the Complainant is still employed and is currently regarded by Santoro to be performing satisfactorily (D1). There seems to be no basis for anticipating that a second unfavorable performance evaluation will be issued.

5

### D. Failure to Reasonably Accommodate (physical/mental) Disability

In assessing whether the Complainant was denied reasonable accommodation for her disabling condition, certain considerations must be examined. First, it must be determined whether the Complainant is eligible for membership in a class of persons who are statutorily protected on the basis of a physical/mental disability.

C.G.S. 46-51 (15) defines a "physically disabled" person as

> "...any individual who has any chronic physical handicap, infirmity or impairment, whether congenital or resulting from bodily injury, organic processes or changes or from illness, including, but not limited to, epilepsy, deafness or hearing impairment or reliance on a wheelchair or other remedial appliance or device"

The Complainant in the instant matter does not identify herself as having a "chronic physical handicap, infirmity or impairment". The medical information describes a "left hip fracture" for which she was being treated with a return to work date of 2/23/01. A "left hip fracture" does not describe a *chronic handicap, infirmity or impairment* because a hip fracture is not a permanent condition. While the healing process for a hip fracture may be lengthy and there may be some lingering after-effects, these do not permanently and substantially limit the individual in performing a major life activity. There has been no evidence introduced to show that there are or will be permanent and /or substantial limitations in the Complainant's ability to function in major life activities therefore the Complainant is not considered disabled for the purposes of the statute.

### E. VIOLATION OF C.G.S §§ 46a-79, 46a-80

The Complainant has alleged a violation of Sections 46a-79 & 46a-80 of the Conn. General Statutes because Santoro expressed a fear of the Complainant fueled in part by knowledge of an incidence of domestic violence between the Complainant and her boyfriend which resulted in the arrest of the Complainant. CGS 46a-79 expresses this state's policy regarding the benefit to society when criminal offenders are rehabilitated and are allowed to return to society as productive members thereof. Section 46a-80 protects against the denial of employment by the state based on knowledge of a prior conviction of crime and prevents the dissemination of the arrest record.

There was no evidence presented to the investigator which could lead to an inference of denial of employment or loss of employment based on an agent of the state's knowledge of a prior arrest/conviction record of the Complainant.

6

## VII    DETERMINATION

On the basis of the evidence contained in the investigative file and testimony obtained from the Fact Finding inquiry, the investigator concludes that there **does not exist** reasonable cause for believing that a discriminatory act has occurred.

Dated and entered this \_\_\_\_\_ day of _____ 2003

        COMMISSION ON HUMAN RIGHTS
        AND OPPORTUNITIES


BY: _____
       Yvonne Duncan
       Assistant Commission Counsel