UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NORMA CHRISTIAN, | : | CIVIL ACTION NO. |
|    *Plaintiff* | : | 3:03CV00524(RNC) |
| | : | |
| v. | : | |
| | : | |
| JUDICIAL BRANCH OF THE | : | |
| STATE OF CONNECTICUT, | : | |
| COURT OPERATIONS DIVISION | : | |
| and SABRINA SANTORO, | : | |
|    *Defendants.* | : | August 19, 2004 |

## DEFENDANTS' LOCAL RULE 56(a)1 STATEMENT OF UNDISPUTED FACTS

Pursuant to Local Rule 56(a) of the Federal Rules of Civil Procedure for the United States District Court for the District of Connecticut, the Defendants hereby submit the following statement of material facts as to which there is no genuine issues to be tried.

1. At all relevant times, the Plaintiff, Norma Christian, was a resident of Orange, Connecticut. (Exhibit 1, Plaintiff's Affidavit to CHRO filed August 29, 2001).

2. The Plaintiff is an African-American female. (Complaint, dated March 24, 2003, ¶ 5).

3. The Defendant Court Operations Division of the State of Connecticut Judicial Branch is an arm of the State of Connecticut. (Complaint, ¶ 9).

4. The Defendant Sabrina Santoro is an employee of the Defendant Judicial Branch and the Official Court Reporter for New Haven, (Complaint, ¶ 7;

Exhibit 2, Affidavit of Sabrina Santoro, dated July 29, 2004, hereinafter "Santoro Aff.", ¶ 2).

5. Throughout her employment with the Defendant, the Plaintiff was employed by the Court Operations Division of the State of Connecticut Judicial Branch as a Court Reporter since 1977. (Ex. 1, Plaintiff's Affidavit to CHRO filed August 29, 2001; Complaint, ¶ 9, Ex. 2, Santoro Aff., ¶ 3).

6. As a Court Reporter for the Judicial Branch, the Plaintiff was responsible for recording verbatim testimony by operating stenographic equipment. (Exhibit 3, Plaintiff's Answers to the Defendants' Requests for Admissions dated May 28, 2004, ¶ 14; Exhibit 13, Excerpts from Deposition of Norma Christian, Vol. II., dated August 5, 2004, [hereinafter Christian Depo., Vol. II."], pp. 152:23-153:2).

7. Throughout her employment with the Defendant Judicial Branch, the Plaintiff has been assigned to the Judicial District of New Haven. (Complaint, ¶ 7).

8. Santoro was the Plaintiff's supervisor at the Judicial Branch from 1987 until the Plaintiff's retirement in 2003. (Complaint, ¶ 7; Exhibit 4, Excerpts from Deposition of Norma Christian, dated May 25, 2004, [hereinafter "Christian Depo.,"], p. 61:17-25).

9. Santoro has no personal animus towards the Plaintiff. (Ex. 2, Santoro Aff., ¶ 6).

10. On February 27, 2000, the Plaintiff fractured her hip in a motor vehicle accident that caused her to be unable to work. (Exhibit 5, Plaintiff's Responses to Defendant's Interrogatories and Requests for Production, dated December 3, 2003, Response to Interrogatory 2.)

11. The Plaintiff went out of work without any advance notice to her employer. (Exhibit 13, Christian Depo., Vol. II, p. 138:21-24).

12. The Plaintiff is not aware of any white reporters who were absent without prior notice to this employer (Exhibit 13, Christian Depo., Vol. II, p. 142:1-4).

13. The Plaintiff does not know of any white reporters who were out of work for nearly a year while employed at Judicial. (Exhibit 13, Christian Depo., Vol. II, p. 142:5-9, p. 143:14-16).

14. The Plaintiff alleges that she was "handicapped for a period of time." (Complaint, ¶ 5).

15. The "handicap" and the "period of time" referenced in this paragraph were that the Plaintiff was involved in a motor vehicle accident that caused her left hip to be broken and which left her walking with a cane and in a body brace for six months. in which she sustained a fractured hip

3

that caused her to be unable to work for nearly one year. (Ex. 5, Response to Interrogatory 2).

16. On January 19, 2001, Santoro wrote to the Plaintiff inquiring when she anticipated returning to work and if any accommodations would be needed. (Ex. 2, Santoro Aff., ¶ 10).

17. On February 23, 2001, the Plaintiff returned to work for the Defendant Judicial Department. (Complaint, ¶ 12).

18. Between February 20, 2000 and February 22, 2001, the Plaintiff was arrested in an incident involving her boyfriend when they had a "domestic dispute." (Complaint, ¶ 30; Ex. 5, Response to Interrogatory No. 16).

19. The Plaintiff had a physical altercation with her boyfriend. (Exhibit 13, Christian Depo., Vol. II, p. 145:9-20).

20. The Plaintiff told co-workers about this altercation with her boyfriend. The Plaintiff told co-workers that she had "fixed him – stabbed him with a broken plate" and had "cut up" her boyfriend. The co-workers advised Santoro of the Plaintiff's aforesaid comments. (Ex. 2, Santoro Aff., ¶ 11).

21. When the Plaintiff returned to work at Judicial, she was able to walk without crutches, but she used a cane when the need arose, for part of the day. (Ex. 4, Christian Depo, p. 92:3-6, p. 93:11-17).

4

22. Santoro was not present when the Plaintiff returned to work for Judicial on February 23, 2001. (Ex. 5, Response to Interrogatory 3; Ex. 2, Santoro Aff., ¶ 12).

23. Plaintiff alleges that on February 26, 2001, the Defendant Santoro rejected Plaintiff's physician's note. (Complaint, ¶ 12).

24. The Defendants did not reject that physician's note, but simply sought clarification of the Plaintiff's restrictions as the note stated that the Plaintiff, " will probably have a lifting restriction and she will need to be able to get up and move around during short intervals." (Ex. 2, Santoro Aff., ¶ 13; Exhibit 6, Affidavit of Ann-Laurie Parent, dated July 30, 2004 [hereinafter "Parent Aff."], ¶¶ 13-14).

25. Plaintiff alleges she discovered upon her return to work that her belongings had been removed from her desk and file cabinet, and that the tripod for the Plaintiff's steno machine had been broken. (Complaint, ¶ 14).

26. The Plaintiff was not there when her belongings were moved and is not aware of anyone saw the Defendant Santoro touch her belongings. (Exhibit 13, Christian Depo. Vol. II, p. 174:1–25).

27. The Plaintiff's possessions were not placed in boxes until the third or fourth month of her absence from work and only after the supervisor was notified that the Plaintiff would be absent for an extended period of time.

5

    Ms. Santoro did not personally touch the Plaintiff's possessions. (Ex. 6, Parent Aff., ¶ 9; Ex. 2, Santoro Aff., ¶ 9).

28. In the Office of the Court Reporters assigned to the New Haven Judicial District, 235 Church Street, New Haven, CT due to a limited work space, when an individual employee is to be absent for a significant period of time, it is customary practice that office space is cleared in order to be utilized by other employees. Ms. Christian's possessions were boxed in a different manner than experienced by other employees due to the emergency nature of her absence. It is customary practice for employees, who have prior knowledge they are going to be out on long-term absences, to clear out their possessions themselves prior to leaving. (Ex. 6, Parent Aff., ¶¶ 6-8).

29. Plaintiff alleges when she returned to work on February 23, 2001 that Defendant Santoro immediately assigned her to the busiest and most chaotic courtroom in the building. (Complaint, ¶ 19).

30. The Plaintiff was assigned to the family court as the matters heard were usually of short duration, which would permit the Plaintiff to change position frequently. (Ex. 2, Santoro Aff., ¶ 14; Ex. 6, Parent Aff., ¶ 15).

31. On February 28, 2001, Santoro gave the Plaintiff a letter reiterating that the Plaintiff should be sure to let whichever Judge to which she was assigned know if she needed to take a recess. The Plaintiff was also instructed in this letter to let Santoro know if there was anything with

which she needed assistance or if she was having any work related problems. (Ex. 2, Santoro Aff., ¶ 15; Ex. 6, Parent Aff., ¶ 17).

32. The Plaintiff was not assigned to the most chaotic courtroom in the building. (Ex. 2, Santoro Aff., ¶ 16; Ex. 6, Parent Aff., ¶ 16).

33. The Plaintiff admits that when she returned to work for Judicial in February 2001, she "occasionally used a court monitoring recorder to back up" her own stenographic notes of the courtroom proceedings. ( Exhibit 1, Plaintiff's Affidavit to CHRO filed August 29, 2001 at ¶ 14).

34. However, the Plaintiff's stenographic notes indicate that she utilized the court reporter monitoring equipment on a daily basis, not just for three days. (Exhibit 7, Affidavit of James Maher, dated July 22, 2004 [hereinafter "Maher Aff."], ¶ 7; Ex. 2, Santoro Aff., ¶ 17).

35. The Plaintiff admitted that she used the court monitoring recorders when employed as a court reporter, but could not say on how many occasions. (Ex. 13, Christian Depo., Vol. II, p. 161:22-25).

36. Stenographic reporters are paid more than court monitors. Several monitors reported to Ms. Santoro that the Plaintiff was using court reporter monitoring equipment and Ms. Santoro became concerned that perhaps the Plaintiff was having trouble writing stenographically. (Ex. 2, Santoro Aff., ¶ 18).

7

37. Stenographic reporters are paid more than court monitors. Under no circumstances are any court reporters to use court monitor recording machines at any time. The job classifications of Court Reporter and Court Monitor are two distinct classifications. (Ex. 6, Parent Aff., ¶ 19).

38. On March 15, 2001, Santoro discussed with the Plaintiff her use of monitoring equipment in the courtroom. At that time, the Plaintiff said she was using the equipment because some of the court proceedings were too fast and the Plaintiff would not be able to make an accurate and verbatim transcription strictly from her notes. (Ex. 2, Santoro Aff., ¶ 19).

39. At no time prior to Santoro becoming aware that the Plaintiff was using the court monitoring recorder did the Plaintiff inform her supervisor that she was experiencing any difficulties. (Ex. 2, Santoro Aff., ¶ 20; Ex. 6, Parent Aff., ¶ 21).

40. When Santoro became aware of the fact that the Plaintiff was having difficulty performing her court reporter duties, Santoro offered to move the Plaintiff to another work assignment, i.e. *voir dire.* The Plaintiff declined this offer. (Ex. 2, Santoro Aff., ¶ 21; Ex 6, Parent Aff., ¶ 21).

41. There are no light duty assignments available to Court Reporters. (Ex. 6, Parent Aff., ¶ 22).

42. Conn. Gen. Stat. § 51-61(c) provides that, "Each court reporter and monitor shall, when requested, furnish . . . within a reasonable time, a

8

transcript of the proceedings . . . as may be desired." (Exhibit 8, Conn. Gen. Stat. § 51-61(c)).

43. At some point, the Plaintiff was directed to submit her stenographic notes on a daily basis only after she was unable to produce several days of notes, which have never been recovered. (Ex. 6, Parent Aff., ¶ 36).

44. The Plaintiff was assigned as a Court Reporter to Judge Alander's courtroom on March 8, 2001, March 9, 2001 and March 13, 2001.  (Ex. 2, Santoro Aff., ¶ 24; Ex. 6, Parent Aff., ¶ 37) .

45. The Plaintiff was unable to produce transcripts when requested for the testimony before Judge Alander given on March 8, 2001, March 9, 2001 and March 13, 2001.  (Ex. 2, Santoro Aff., ¶ 25, Ex. 7, Maher Aff. ¶ 11; Ex. 6, Parent Aff. ¶ 38).

46. Between March 8 and March 13, 2001, the Plaintiff lost several days of stenographic notes and was unable to produce transcripts.  (Ex. 2, Santoro Aff., ¶ 25 ; Ex. 6, Parent Aff., ¶ 38) .

47. This loss of stenographic notes resulted in at least one mistrial.  (Ex. 2, Santoro Aff., ¶ 26 ; Ex. 6, Parent Aff., ¶ 41; Ex. 7, Maher Aff., ¶ 6).

48. On April 2, 2001, the Plaintiff was transferred from the Superior Court located at 235 Church Street, New Haven to the Juvenile Court located at

9

239 Whalley Avenue, New Haven. (Ex. 9, Plaintiff's Grievance dated April 2, 2001).

49. On occasion since her return to work, Santoro was unable to locate Ms. Christian throughout the work day. On one occasion, a member of the public who was to meet the Plaintiff to obtain a transcript from her, arrived at the Court. Santoro was unable to locate the Plaintiff until approximately 10 a.m. When questioned to her whereabouts, the Plaintiff was unable to offer a reasonable explanation. (Ex. 6, Parent Aff., ¶ 23).

50. On March 26, 2001, Santoro was unable to locate the Plaintiff and had been receiving telephone calls from the Plaintiff's co-workers who were also unable to locate her throughout the day. When Santoro was informed of the Plaintiff's whereabouts, she approached the Plaintiff to inquire as to her work assignment. According to witness statements, Ms. Santoro did not use profanity toward the Plaintiff nor did she refer to her with a racial epithet. (Ex. 6, Parent Aff., ¶¶ 24-25, Attachment D).

51. The Plaintiff refused to answer her supervisor's direct inquiry about her whereabouts on March 16, 2001 and responded using inappropriate language toward her supervisor. (Ex. 6, Parent Aff., ¶ 26).

52. As a result of the Plaintiff's actions on March 16, 2001, she was placed on paid suspension and an administrative inquiry was conducted by James Maher, Director of Court Operations, Nicholas Cimmino, New Haven Trial Administration, and Nancy Brown, Supervisor of Transcript Services, into the Plaintiff's actions. (Ex. 6, Parent Aff., ¶ 27; Ex. 7, Maher Aff.,¶ 4).

53. On April 17, 2001, the Plaintiff received a written reprimand for an incident stemming from a confrontation she had with her supervisor, Santoro, on March 16, 2001 in the New Haven Judicial District Courthouse. (Ex. 6, Parent Aff., ¶ 28; Ex. 7, Maher Aff., ¶ 5).

54. That April 17, 2001, written reprimand provided in part, "Managers have a clear obligation to ensure that assigned employees are performing their duties in a prescribed, competent fashion, and moreover, that employees are at their appropriate duty station, unless previously excused. As part of that obligation, supervisors have the right to ask staff what work they currently are performing, and to make inquiries regarding the location of employees during the work day. Your heated refusal to answer the question 'do you have any work to do?' and your refusal to explain where you were during part of the work day are in direct conflict with this supervisory obligation and are antithetical to a productive work environment." (Ex. 6, Parent Aff., ¶ 28, Attachment E).

55. Between April 17 and May 11, 2001, Sabrina Santoro and Judge Jon Alander were interviewed by the Judicial Department in accordance with the State of Connecticut personnel regulations and the applicable collective bargaining agreement. (Ex. 6, Parent Aff., ¶ 39; Ex. 7, Maher Aff., ¶ 8).

56. On April 24, 2001, the Plaintiff received formal supervisory counseling from Nancy Brown, Supervisor of Transcript Services regarding her duties and responsibilities with Judicial. (Ex. 6, Parent Aff., ¶ 29, Attachment F).

57. Based on the preliminary investigation, a predisciplinary hearing with the Plaintiff was scheduled for May 11, 2001. (Ex. 6, Parent Aff., ¶ 40).

58. On May 11, 2001, a hearing was held to determine whether the Plaintiff should be disciplined for losing stenographic notes and failing to provide the corresponding transcripts. At that hearing, the Plaintiff was represented by counsel, Attorney Norman Pattis of the Law Firm of Williams and Pattis. (Ex. 6, Parent Aff., ¶ 41; Ex. 7, Maher Aff., ¶ 12).

59. It was the unanimous opinion of those who conducted the investigation that the Plaintiff destroyed the stenographic notes because she feared they

would show that she was using the tape-monitoring machine. (Ex. 6, Parent Aff., ¶ 43; Ex. 7, Maher Aff., ¶ 14).

60. The Plaintiff was notified by letter dated May 30, 2001 that as a result of investigation into this failure to provide transcripts, the Plaintiff was suspended as a Court Reporter II without pay from June 24, 2001 through July 13, 2001. (Ex. 6, Parent Aff., ¶ 44).

61. No other Court Reporter has committed the same or substantially similar offense to those of the Plaintiff. Other than the Plaintiff, no court reporter assigned to the Judicial District of New Haven has been subject of an investigation for destroying stenographic notes and being unable to produce a court-ordered transcript. (Ex. 6, Parent Aff., ¶¶ 45-46).

62. On October 29, 2001, the Plaintiff received an unsatisfactory performance evaluation that was based upon substantiated poor work performance issues and documented disciplinary actions. (Ex. 6, Parent Aff., ¶ 47).

63. A performance evaluation is not considered a disciplinary action under the collective bargaining agreement or State of Connecticut personnel regulations. (Ex. 6, Parent Aff., ¶ 48).

64. That performance evaluation was in no way a result of or retaliation against the Plaintiff for filing a complaint with the CHRO. It was an accurate reflection of the significant poor performance standards exhibited by the Plaintiff during the rating period. (Ex. 6, Parent Aff., ¶ 50).

65. Following this October 29, 2001 unsatisfactory performance evaluation, the Plaintiff did not take advantage of the administrative options available to her. She neither submitted a written rebuttal nor filed a grievance contesting the evaluation. (Ex. 6, Parent Aff., ¶ 52).

66. In Paragraph 22 of the Complaint, the Plaintiff alleges that the Defendant Santoro said to the Plaintiff, "Get your ass to your office and do your transcripts" and further states that the Defendant Santoro shouted to the Plaintiff, "Get away from my office you black bitch." (Complaint, ¶ 22 ).

67. There were no witnesses to the statements alleged in Paragraph 22 of the Complaint and the Plaintiff never complained to anyone about these statements. (Ex. 6, Parent Aff., ¶ 54; Ex. 5, Response to Interrogatory 11).

68. Santoro never uttered any racial statements to or about the Plaintiff. Santoro never made a racial remark about the Plaintiff or any other Judicial Branch employee. (Ex. 2, Santoro Aff., ¶ 27).

69. Santoro had been the Plaintiff's supervisor since 1987. (Complaint, ¶ 4; Ex. 4, Christian Depo., p. 61:17-25).

70. On August 29, 2001, the Plaintiff filed a formal complaint charging discrimination based upon race, color and disability, with the Connecticut Commission on Human Rights and Opportunities (hereinafter "CHRO"), Claim No. 0210109. (Exhibit 1, Plaintiff's Affidavit to CHRO filed August 29, 2001).

71. On November 25, 2002, the Plaintiff filed an Amended Complaint with the CHRO dated November 22, 2002, alleging that "During the fact finding held on November 14, 2002, it was revealed that an agent of the respondent was bothered by the fact that the complainant had been arrested for what she termed, 'domestic violence.' As a result of said admission, the complainant believes that a violation of Connecticut General Statute (CGS) 46a-79 and CGS46a-80 has occurred." (Exhibit 10, Plaintiff's Amended Complaint to CHRO filed November 25, 2002)

72. The CHRO issued a transmittal of Draft Summary of No Reasonable Cause Finding on January 22, 2003. (Exhibit 11, CHRO Draft Summary of No Reasonable Cause Finding, dated January 22, 2003, hereinafter "CHRO Finding").

73. At all relevant times, the Plaintiff was not a "physically disabled person" as defined by Conn. Gen. Stat. § 46-51(15). (Ex. 6, Parent Aff., ¶ 57; Ex. 11, CHRO Finding, p. 6).

74. At all relevant times, the Plaintiff's left hip fracture was not a chronic handicap, infirmity or impairment as it was not a permanent condition. (Ex. 6, Parent Aff., ¶ 58; Ex. 11, CHRO Finding, p. 6).

75. At all relevant times, the Plaintiff did not have a permanent and/or substantial limitation in her ability to function in major life activities. (Ex. 6, Parent Aff., ¶ 59; Ex. 11, CHRO Finding, p. 6).

76. The Plaintiff has only alleged that that she was "handicapped for a period of time." (Complaint, ¶5).

77. The Complaint contains no allegations that the Plaintiff had a permanent and/or substantial limitation in her ability to function in major life activities. (Complaint).

78. In Paragraph 28 of the Complaint, the Plaintiff alleges that she made a "formal complaint" regarding alleged discrimination by the Defendants. . (Complaint, ¶ 28).

79. The Plaintiff testified that she does not remember complaining about discriminatory and abusive events alleged to have occurred while employed as a court reporter. (Ex. 13, Christian Depo. Vol., II, p. 161:14-16).

80. The Plaintiff never complained to Judicial of any alleged discrimination by the Court Operations Division or Santoro. (Ex. 6, Parent Aff., ¶ 54).

81. That formal complaint of discrimination referred to in the Complaint was the one made to CHRO. (Complaint, ¶ 28; Ex. 5, Response to Interrogatory 15).

82. While an employee of the Judicial Branch, the Plaintiff was a member of a union, AFSCME Local 749.  (Exhibit 12, Document entitled "Grievance Proceeding, Judicial Branch" dated April 2, 2001 supplied by the Plaintiff in December 3, 2003 sworn responses to Requests for Production ; Ex.13, Christian Depo., Vol. II, p. 152:4-6).

83. Pursuant to the collective bargaining agreement, the Plaintiff filed grievances against the Defendant Judicial Branch, on April 2, 2001, April 10, 2001,  June 7, 2001, and September 14, 2001.  (Exhibit 12,  Document entitled "Grievance Proceeding, Judicial Branch" supplied by the Plaintiff in December 3, 2003 sworn responses to Requests for Production ).

84. The Plaintiff has no medical reports or records or statements of expense pertaining to examination and/or treatment of the Plaintiff for injuries incurred as a result of the incidents alleged in her complaint.  (Ex. 5, Response to Production Request ¶1).

85. The Plaintiff has not been treated by any psychiatrist, psychologist, or counselor since leaving Judicial. (Ex. 13, Christian Depo., Vol. II, p. 150:11-18).

86. The Plaintiff was not subjected to any adverse employment decision and was not subjected to any discrimination due to her arrest for the domestic dispute involving her boyfriend. (Ex. 6, Parent Aff. ¶ 55; Ex. 2, Santoro Aff., ¶ 28).

87. The Plaintiff voluntarily retired from the Judicial Branch effective May 1, 2003. (Ex. 6, Parent Aff., ¶ 61).

88. The Plaintiff has not alleged that the State of Connecticut has waived immunity in this case and consented to suit. (Complaint).

89. The Plaintiff has not alleged that Congress has abrogated the Defendants' Eleventh Amendment immunity. (Complaint).

90. The Defendant Santoro is not an employer, but a supervisory co-worker of the Plaintiff. (Ex. 2, Santoro Aff., ¶ 29; Ex. 13, Christian Depo., Vol. II, p. 151:15-25).

91. Other than the Plaintiff, no court reporter assigned to the Judicial District of New Haven has been the subject of an investigation for destroying the stenographic notes and being unable to produce a court-ordered transcript. (Ex. 7, Maher Aff., ¶ 18; Ex. 6, Parent Aff., ¶ 46).

92. At all relevant times, the Plaintiff was not satisfactorily performing her duties as a Court Reporter II. (Ex. 6, Parent Aff., ¶ 51).

93. The discipline against the Plaintiff (suspension without pay for failure to provide transcripts and a written warning) were in accordance with State of Connecticut personnel regulations and the collective bargaining agreement, and not based on any discriminatory intent. (Ex. 6, Parent Aff., ¶ 62; Ex. 7, Maher Aff., ¶ 17).

94. The issues that resulted in supervisory intervention and discipline were investigated, substantiated, documented performance failures of the Plaintiff, that had no relation to any medical restrictions, or the Plaintiff's race or color. (Ex. 6, Parent Aff., ¶ 60).

        DEFENDANTS
        STATE OF CONNECTICUT,
        JUDICIAL BRANCH, ET AL.

        RICHARD BLUMENTHAL
        ATTORNEY GENERAL

BY: _____
     Nancy A. Brouillet
     Assistant Attorney General
     Federal Bar No. ct03138
     55 Elm Street, P.O. Box 120
     Hartford, CT  06141-0120
     Tel: (860) 808-5340
     Fax: (860) 808-5383
     E-Mail Address:
     Nancy.Brouillet@po.state.ct.us

## **CERTIFICATION**

I hereby certify that a copy of the foregoing Defendants' Rule 56(a)1 Statement of Undisputed Facts was mailed in accordance with Rule 5(b) of the Federal Rules of Civil Procedure on this          day of August, 2004, first class postage prepaid to:

John R. Williams, Esq.
Williams & Pattis, LLC
51 Elm Street, Suite 409
New Haven, CT  06510
Email:  jrw@johnrwilliams.com

                                                                _____
                                                                Nancy A. Brouillet
                                                                Assistant Attorney General