UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NORMA CHRISTIAN | : | |
| | : | |
| VS. | : | NO. 3:03CV524(RNC) |
| | : | |
| STATE OF CONNECTICUT, | : | |
| JUDICIAL BRANCH, | : | |
| COURT OPERATIONS DIVISION | : | |
| and SABRINA SANTORO | : | SEPTEMBER 7, 2004 |

**BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

**Introduction**

The plaintiff is an African-American woman who for many years was a

court reporter in the Connecticut Superior Court for the New Haven Judicial

District.  She was nearly killed in a serious automobile accident, and as a result

was unable to work for nearly a year.  When she returned to work under limited

medical restrictions, she was given the most physically difficult assignment

available in the courthouse for a person with her type of physical limitations, and

she was harassed unmercifully by the defendant Sabrina Santoro, her

supervisor.  This harassment specifically included on one occasion the use of a

racial epithet.[1]

The plaintiff has brought this suit against the Judicial Branch pursuant to Title VII and the Rehabilitation Act.  She also sues defendant Santoro under 42 U.S.C. §§ 1981 and 1983.  The defendants have moved for summary judgment.

**Standard of Review**

"The standards governing summary judgment are well-settled.  Summary judgment is appropriate only 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits..., show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'  Fed. R. Civ. P. 56(c); *see also* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists.

"In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant....Summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party."  Marvel Characters, Inc. v. Simon, 310 F.3d 280, 285-86 (2d Cir.

---

[1]  The facts are fully set forth in the plaintiff's Local Rule 56 Statement with supporting evidence, submitted herewith.  Like the defendants, the plaintiff incorporates her Local Rule 56 Statement herein by reference.

2

2002).

When the moving party "'fail[s] to fulfill its initial burden' of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied, 'even if no opposing evidentiary matter is presented,' for the non-movant is not required to rebut an insufficient showing." Giannullo v. City of New York, 322 F.3d 139, 140-41 (2nd Cir. 2003), *quoting* Adickes v. S.H. Kress & Co., 398 U.S. 144, 158, 160 (1970). "[T]he moving party bears the ultimate burden of establishing its right to summary judgment as a matter of law even when it does not have the ultimate burden of persuasion at trial." Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 982 (10th Cir. 2003).

When passing upon a motion for summary judgment, the court may not resolve factual disputes or make credibility determinations, even if the case is one which eventually will be tried without a jury. In re Unisys Savings Plan Litigation, 74 F.3d 420 (3d Cir. 1996). Rather, the court must resolve any ambiguities and draw all inferences against the moving party. Cargill, Inc. v. Charles Kowsky Resources, Inc., 949 F.2d 51 (2d Cir. 1991). The evidence of the party against whom summary judgment is sought must be believed. Revak v. SEC Realty Corp., 18 F.3d 81 (2d Cir. 1994). The court must construe the evidence in the light most favorable to the party opposing summary judgment

and deny the motion unless no construction of the evidence could support judgment in the plaintiff's favor.  Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970); Olin Corp. v. Consolidated Aluminum Corp., 5 F.3d 10, 14 (2d Cir. 1993); United States v. Certain Funds on Deposit in Scudder Tax Free Investment Account #2505103, 998 F.2d 129 (2d Cir. 1993); Union Pacific Corp. v. United States, 5 F.3d 523, 525 (Fed. Cir. 1993).  "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper."  Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

To raise a genuine issue of material fact sufficient to defeat a summary judgment motion, the opponent need not match, item for item, each piece of evidence proffered by the moving party.  So long as the opponent has offered enough evidence to exceed the "mere scintilla" threshold, summary judgment is to be denied.  In re Unisys Savings Plan Litigation, supra, 74 F.3d 420, 433.

Even if the nonmoving party's evidence appears "implausible," the court may not "weigh" the evidence and must proceed with the greatest caution.  R. B. Ventures, Ltd. v. Shane, 112 F.3d 54, 58-59 (2d Cir. 1997).  "If reasonable minds could differ as to the import of the evidence...and if...there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary

4

judgment." Id. at 59, quoting Brady v. Town of Colchester, 863 F.2d 205, 211 (2d Cir. 1988), and In re Japanese Elec Prods. Antitrust Litigation, 723 F.2d 238 (3d Cir. 1983) (internal quotation marks omitted).

"A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non moving party.' Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, '[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.'" Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir. 1997). Citing Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

"[T]he Second Circuit has cautioned that, in cases where motive, intent or state of mind are at issue, summary judgment should be used sparingly." Ruscoe v. Housing Authority of City of New Britain, 259 F. Supp. 2d 160, 166 (D. Conn. 2003) (Nevas, J.), citing Dister v. Continental Group, Inc., 859 F.2 1108, 1114 (2nd Cir. 1988).

**Claims Under the Connecticut Fair Employment Practices Act**

The plaintiff's claims under the Connecticut Fair Employment Practices Act are withdrawn.

## Claims for Injunctive Relief

The plaintiff claims injunctive relief only against the Judicial Branch and not against the defendant Santoro.

## Claims for Money Damages

The plaintiff claims money damages from defendant Santoro.  The plaintiff claims money damages from the Judicial Branch only pursuant to Title VII.

## Plaintiff's Rehabilitation Act Claim

The plaintiff makes no claim against defendant Santoro pursuant to the Rehabilitation Act.  The plaintiff recognizes that the Second Circuit has prohibited the award of money damages against a state under the Rehabilitation Act, holding that the Eleventh Amendment immunizes the states from such litigation.  Garcia v. S.U.N.Y. Health Sciences Center, 280 F.3d 98, 114-15 (2nd Cir. 2001).  Other circuits disagree with this view, however.  Koslow v. Commonwealth of Pennsylvania, 302 F.3d 161 (3rd Cir. 2002); Amos v. Maryland Dept. of Public Safety and Correctional Services, 178 F.3d 212 (4th Cir. 1999); Stanley v. Litscher, 213 F.3d 340 (7th Cir. 2000); Grey v. Wilburn, 270 F.3d 607 (8th Cir. 2001); Jim C. v. United States, 235 F.3d 1079 (8th Cir. 2000); Lovell v. Chandler, 303 F.3d 1039 (9th Cir. 2002); Douglas v. California Dept. of Youth Authority, 271 F.3d 812 (9th Cir. 2001); Robinson v. State of Kansas, 295 F.3d 1183 (10th Cir. 2002).  The plaintiff contends that Garcia was wrongly decided.  In

6

any event, the plaintiff remains free to pursue her claim for injunctive relief under the Rehabilitation Act.

The defendants contend, however, that the plaintiff was not "disabled" within the meaning of the law. The plaintiff respectfully disagrees. It is undisputed that the plaintiff suffered a substantial impairment of her ability to walk, for which she needed a reasonable accommodation. With that accommodation, she was fully capable of performing the essential functions of her job. The defendants denied her that accommodation by assigning her to the courtroom located farthest in the building from her office, when another courtroom just a few steps away was available.

A disability is "a physical or mental impairment that substantially limits one or more of the major life activities of an individual." 42 U.S.C. § 12102(2)(a). "An impairment substantially limits a major life activity if the individual is unable to perform a major life activity that the average person in the general population can perform, or is significantly restricted as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." Goldring v. Sillery Mayer & Partners, 119 F. Supp.2d 55, 59 (D. Conn. 1999), citing 29 C.F.R. § 1630.2(j)(1)(1998). This determination is fact-specific and is to be made on a

7

case-by-case basis.  Ennis v. National Ass'n of Business and Educational Radio, Inc., 53 F.3d 55, 59 (4th Cir. 1995).  "[T]o be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives.  The impairment's impact must also be permanent or long-term."  Toyota Motor Mfg., Ky, Inc. v. Williams, 534 U.S. 184, 122 S. Ct. 681, 691 (2002).

"'[S]ubstantially' in the phrase 'substantially limits' suggests 'considerable' or 'to a large degree.'...The word 'substantial' thus clearly precludes impairments that interfere in only a minor way with the performance of manual tasks from qualifying as disabilities."  Toyota Motor Mfg., Ky., Inc. v. Williams, 122 S. Ct. 681, 691 (2002).  The phrase "substantially limits" is concerned with substantial limitations and not with utter inabilities.  Bragdon, supra, 524 U.S. at 641; Lawson v. CSX Transportation, Inc., 245 F.3d 916, 924 (7th Cir. 2001).  "To be substantially limited, a person must be unable to perform a major life activity that the average person in the general population can perform, or be significantly limited in the condition, manner, or duration under which the individual can perform that activity as compared to an average person in the general population."  Webner v. Titan Distribution, Inc., 267 F.3d 828, 834 (8th Cir. 2001).

A "reasonable accommodation" includes, but is not limited to, "job

8

restructuring, part-time or modified work schedules, [and] reassignment to a vacant position." 42 U.S.C. § 12111(9)(B).  An employer must make "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii).

There is enough evidence in this case that the plaintiff suffered a disability and that the defendant knowingly failed to accommodate that disability, to permit this question to go to the jury.

**The Plaintiff's Racial Discrimination Claims**

Obviously, the heart of this case is the plaintiff's contention that she was subjected to racial discrimination by the Judicial Branch, in violation of Title VII, and by defendant Santoro, in violation of 42 U.S.C. § 1983.  Without repeating the extensive recitation of evidence set forth in the plaintiff's Local Rule 56 Statement, a jury in this case would be entirely justified in finding that the plaintiff was repeatedly subjected to disparate treatment on the basis of her race and that the highest levels of the Judicial Branch were aware of that fact and condoned it.  In respect to virtually every aspect of the conditions of her employment, she was treated differently from identically situated white court reporters.  Her office was trashed during her medical leave; theirs were not.  She

9

was for weeks denied a key card to the building; they were not.  She was denied a "light" judicial assignment when she returned from medical leave; they were granted such assignments.  She was harassed and verbally abused; they were not.  Her movements were monitored; theirs were not.  They were permitted to use recording equipment as a backup; she not only was prohibited from doing so but was punished for it.  She was disciplined for allegations of misconduct which the defendants knew were false, after she complained of the racial discrimination to which she was being subjected.  Less than two months after she filed a complaint of unlawful racial discrimination with the CHRO and the EEOC, she was given the first negative evaluation in her 17-year judicial career.  On one occasion, defendant Santoro screamed a racial epithet at the plaintiff in a public hallway of the courthouse.  The plaintiff promptly reported this misconduct to top management in Hartford, and was disciplined as a result.

The defendants, of course, have their competing version of these events. They claim no wrongdoing and that they disciplined the plaintiff for legitimate nondiscriminatory reasons.  But the plaintiff's evidence is contrary and a jury would be entitled to credit that evidence.

"In an employment discrimination case, the plaintiff has the burden of 'proving by the preponderance of the evidence a prima facie case of discrimination.'"  Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 37 (2d Cir.

10

1994), quoting <u>Texas Department of Community Affairs v. Burdine</u>, 450 U.S. 248, 252-53 (1981).[2]

"To make out a prima facie case, the plaintiff must show that:  (i) she is a member of a protected class; (ii) she was qualified for the position; (iii) the defendant took adverse action against her; and (iv) the adverse action occurred under circumstances giving rise to an inference of discrimination."  <u>Harper v. Metropolitan District Commission</u>, 134 F. Supp. 2d 479, 483 (D. Conn. 2001) (Covello, C.J.).  Stated another way, a plaintiff may make out a *prima facie* case "by showing that she is within a protected group; that she is qualified for the position; that she was subject to an adverse employment action...; and that a similarly situated employee not in the relevant protected group received better treatment."  <u>McGuinness v. Lincoln Hall</u>, 263 F.3d 49, 53 (2d Cir. 2001). "Alternatively, the fourth prong of the prima facie case may be satisfied if the plaintiff can demonstrate that the...adverse employment action occurred under circumstances giving rise to an inference of discrimination on the basis of plaintiff's membership in that class."  <u>Farias v. Instructional Systems, Inc.</u>, 259 F.3d 91, 98 (2d Cir. 2001).

---

[2]  A plaintiff need not necessarily prove a *prima facie* case to prevail, however. "For instance, if a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case."  <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 122 S. Ct. 992, 997 (2002).

"To establish a prima facie case of disparate treatment, a plaintiff must show, *inter alia*, that she was subjected to adverse employment action, under circumstances giving rise to an inference of prohibited discrimination." Fitzgerald v. Henderson, 251 F.3d 345, 356 (2d Cir. 2001).

"The plaintiff's burden of establishing a prima facie case of employment discrimination is 'not onerous.' Burdine, 450 U.S. at 253. Indeed, "[t]he nature of the plaintiff's burden of proof is de minimis." Harper v. Metropolitan District Commission, 134 F. Supp. 2d 470, 483 (D. Conn. 2001) (Covello, C.J.), citing Dister v. Continental Group, Inc., 859 F.2d 1108, 1114 (2d Cir. 1988). "As we have often emphasized, the burden of establishing this prima facie case in employment discrimination cases is 'minimal.'" McGuinness v. Lincoln Hall, 263 F.3d 49, 53 (2d Cir. 2001). Direct evidence is not necessary, and a plaintiff charging discrimination against an employer is usually constrained to rely on the cumulative weight of circumstantial evidence. See Rosen v. Thornburgh, 928 F.2d 528, 533 (2d Cir. 1991) ('An employer who discriminates is unlikely to leave a 'smoking gun,' such as a notation in an employee's personnel file, attesting to a discriminatory intent.')." Luciano v. Olsten Corp., 110 F.3d 210, 215 (2d Cir. 1997). Often, "[w]hat is most revealing of the true intention behind the [adverse employment action] is the timing." Harper v. Metropolitan District Commission, 134 F. Supp. 2d 470, 489 (D. Conn. 2001) (Covello, C.J.).

"[W]here a plaintiff seeks to make out her prima facie case by pointing to the disparate treatment of a purportedly similarly situated employee, the plaintiff must show that she shared sufficient employment characteristics with that comparator so that they could be considered similarly situated....In Shumway [v. United Parcel Service, Inc., 118 F.3d 60 (2d Cir. 1997)], we explained that such an employee 'must be similarly situated in all *material* respects' – not in *all* respects.  118 F.3d at 64 (emphasis added).  A plaintiff is not obligated to show disparate treatment of an *identically* situated employee.  To the contrary, Shumway holds that in those cases in which a plaintiff seeks to establish her minimal prima facie case by pointing to disparate treatment of a similarly situated employee, it is sufficient that the employee to whom the plaintiff points be similarly situated in all material respects....In other words, where a plaintiff seeks to establish the minimal prima facie case by making reference to the disparate treatment of other employees, those employees must have a situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination."  McGuinness v. Lincoln Hall, 263 F.3d 49, 53-54 (2d Cir. 2001).[3]

---

[3]

The *McGuinness* court added in a footnote, at p. 54: "[B]ecause a Title VII plaintiff may establish a prima facie case of discrimination in a number of different ways depending on the specific facts of a given case, *Shumway* does not require that a plaintiff always be able to show disparate treatment of an otherwise similarly situated employee as a

"[T]he prima facie case...includes a showing that the plaintiff was 'qualified' for the position." <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973).  "To satisfy the second element of the test, [the plaintiff] need...only demonstrate that he 'possesses the basic skills necessary for performance of [the] job.'" <u>De La Cruz v. New York City Human Resources Administration Department of Social Services</u>, 82 F.3d 16, 19 (2d Cir. 1996).  Citing <u>Powell v. Syracuse University</u>, 580 F.2d 1150, 1155 (2d Cir.), <u>cert. denied</u>, 439 U.S. 984 (1978); <u>Owens v. New York City Housing Authority</u>, 934 F.2d 405, 409 (2d Cir.), <u>cert. denied</u>, 502 U.S. 964 (1991).

The employer, of course, may seek to rebut the prima facie case by proof of a legitimate nondiscriminatory reason for the adverse employment action.  If the plaintiff is able to persuade the jury that the employer's explanation is false, however, that fact, combined with the prima facie case, is sufficient to permit a jury to find intentional discrimination.  "Proof that the defendant's explanation is unworthy of credence is...one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive....In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.  Such an inference is consistent with the general principle of evidence

_____

necessary prerequisite to a prima facie case under Title VII."

14

law that the factfinder is entitled to consider a party's dishonesty about a material fact as 'affirmative evidence of guilt.'" Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S. Ct. 2097, 108 (2000), quoting Wright v. West, 505 U.S. 277, 296 (1992).  "The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination.  Thus, rejection of the defendant's preferred reasons will permit...the trier of fact to infer the ultimate fact of intentional discrimination...[and] no additional proof of discrimination is required." St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511 (1993).  "[O]nly occasionally will a *prima facie* case plus pretext fall short of the burden a plaintiff carries to reach a jury on the ultimate question of discrimination...." Slattery v. Swiss Reinsurance America Corp., 248 F.3d 87, 94 (2d Cir. 2001).  Like all other aspects of an employment discrimination case, the falsity of the employer's asserted legitimate nondiscriminatory reasons for its actions may be inferred from circumstantial evidence.  See Robertson v. Sikorsky Aircraft Corp., 258 F. Supp. 2d 33 (D. Conn. 2003) (Goettel, J.).

     "In order to defeat a motion for summary judgment addressed to a claim of retaliation..., the plaintiff must first present sufficient evidence to make out a prima facie case, that is, evidence sufficient to permit a rational trier of fact to

find (1) that she engaged in protected participation or opposition..., (2) that the employer was aware of this activity, (3) that the employer took adverse action against the plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action....The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." Cifra v. General Electric Co., 252 F.3d 205, 216 (2d Cir. 2001). See Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir. 1998) (discharge less than two months after plaintiff complained to management and ten days after she filed complaint with state human rights office established *prima facie* case of causal relationship); Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 224 (2d Cir. 2001) (discharge less than three months after complaint filed and less than one month after service upon employer established *prima facie* case); Sitar v. Indiana Dept. Of Transportation, 344 F.3d 720, 728 (7th Cir. 2003) (discharge more than three months after filing complaint). In Sitar, *supra*, the court further held that "even if we thought that there was insufficient evidence of causation..., lack of causation should not have been the district court's sole basis for granting summary judgment....[F]or a plaintiff proceeding under the indirect method, causation [is] no longer...a part of her prima facie burden." 344 F.3d at 729.

16

When the plaintiff's version of the facts is examined in the light of these established legal principles, there just cannot be any reasonable debate about the fact that she has enough of a Title VII case against the Judicial Branch and enough of a racial discrimination case against Sabrina Santoro under Section 1983 to take her case to the jury.

Defendant Santoro also asserts, in essentially a *pro forma* way, the affirmative defense of qualified immunity.  There is no room for such a defense here, because the plaintiff's evidence if believed shows intentional racial discrimination by Santoro.  Obviously she cannot dispute that the law clearly prohibited racial discrimination in employment and that her actions – if they occurred – were prohibited.  She simply denies doing the things she is accused of doing.  That is for a jury to decide.

## Intentional Infliction of Emotional Distress

The plaintiff's state commonlaw claim of intentional infliction of emotional distress is made only against defendant Santoro.  The defendant claims that her alleged conduct was not, as a matter of law, "extreme and outrageous" and that the plaintiff, not having consulted a psychiatrist for treatment, is thereby precluded from alleging that her resulting emotional distress was "severe".  The defendant is mistaken on both aspects of this defense.

Whether the conduct alleged by plaintiff was "extreme and outrageous"

17

within the meaning of established law is a jury question, and the court should not

usurp the role of the jury unless no reading of the facts alleged by the plaintiff

could constitute the tort.  As the court held in <u>Mascia v. Faulkner</u>, No. 349036,

pp. 12-13 (New Haven J. D. 1995) (Fracasse, J.):  "Summary judgment is

inappropriate for issues involving 'motive, intent and subjective feelings and

reactions,' <u>United Oil Co. v. Urban Redevelopment Commission</u>, 158 Conn. 364,

376.  [Defendant's] intent, **whether the conduct was extreme and outrageous**,

whether [defendant's] conduct caused the [plaintiffs'] distress, and the severity of

the [plaintiffs'] distress are all genuine issues of material fact for the jury."  <u>Cf.</u>,

<u>e.g.</u>, <u>Berry v. Loyseau</u>, 223 Conn. 786, 807 (1992); <u>Mather v. Griffin Hospital</u>,

207 Conn. 125, 138 (1988); <u>Gilman v. Gilman</u>, 46 Conn. Sup. 21, 23 (1999);

<u>Lugo v. Rodriguez</u>, 8 CSCR 244 (1992); <u>Hansen v. Berger, Lehman Assoc.</u>, 9

CSCR 1243, 12 Conn. L. Rptr. No. 17, 555 (1994).  See also <u>Batick v. Seymour</u>,

186 Conn. 632, 646-47 (1982).  Courts in sister jurisdictions take the same

position.  <u>E.g.</u>, <u>Shubbe-Hirt v. Baccigalupi</u>, 94 F.3d 111 (3d Cir. 1996); <u>Halio v.

Lurie</u>, 15 A.D.2d 62, 222 N.Y.S.2d 759, 764 (2d Dept. 1961); <u>Murphy v. Murphy</u>,

486 N.Y.S.2d 457, 459 (3d Dept. 1985); <u>Flatley v. Hartmann</u>, 138 A.D.2d 345,

525 N.Y.S.2d 637, 638 (2d Dept. 1988); <u>Richard v. Armon</u>, 144 A.D.2d 1, 4, 536

N.Y.S.2d 1014, 1016 (2d Dept. 1989); <u>Collins v. Willcox Inc.</u>, 158 Misc.2d 54, 57,

600 N.Y.S.2d 884, 886 (N.Y. County, 1992).

Many courts have held facts no more offensive than those alleged here to be sufficiently "extreme and outrageous" to meet that element of the wrong.

In Berry v. Loyseau, 223 Conn. 786 (1992), an employee was threatened by one employer and assaulted by another.  In Benton v. Simpson, 78 Conn. App. 746 (2003), a supervisor's repeatedly telling three subordinates that they "made him sick" and were a "cancer" in the company not only was sufficiently extreme and outrageous to justify litigation but was sufficient to establish probable cause for a $500,000 attachment of the supervisor's personal assets. In Whelan v. Whelan, 41 Conn. Sup. 519, a husband had falsely told his wife he was suffering from AIDS.  In Brown v. Ellis, 40 Conn. Sup. 165 (1984), the plaintiff's job supervisor had given him work assignments in disregard of his fear of heights.[4]  In Mellaly v. Eastman Kodak Co., 42 Conn. Sup. 17 (1991), the plaintiff's supervisor had taunted him about his alcoholism.  In Centi v. Lexington Health Care Center, 1997 Conn. Super. LEXIS 1202 (Licari, J.), the court held that the actions of the defendant in terminating the plaintiff's employment were

---

[4] "An additional consideration in determining whether extreme and outrageous behavior exists is whether the plaintiff is particularly susceptible to emotional distress because of some physical or mental condition or peculiarity; behavior that otherwise might be considered merely rude, abrasive or inconsiderate may be deemed outrageous if the defendant knows that the plaintiff is particularly susceptible to emotional turmoil."  Honaker v. Smith, 256 F.3d 477, 492 (7th Cir. 2001).

19

sufficiently extreme and outrageous to be submitted to a jury for determination because the termination of employment was accompanied by a change of work assignments, the setting of unrealistic goals for the employee, the supervisor's coming to the employee's house on a Sunday, and the giving of pretextual reasons for termination.  In <u>Gilman v. Gilman</u>, 46 Conn. Sup. 21, 736 A.2d 199 (1999), the defendant had telephoned the police and falsely reported that her ex-husband was smoking marijuana in his house, at a time when she knew he was entertaining a new girlfriend, resulting in disruption of their dinner.  In <u>Nance v. M.D. Health Plan, Inc.</u>, 47 F. Supp. 2d 276 (D. Conn. 1999), the court held that an employer's questioning that signaled to others its belief that the plaintiff was a homosexual could be found sufficiently "extreme and outrageous" in the eyes of a jury to constitute a basis for a finding of intentional infliction of emotional distress.  In <u>Caesar v. Hatford Hospital</u>, 46 F. Supp. 2d 174 (D. Conn. 1999), the court held that an employer's acts in discriminating against the plaintiff and making false reports regarding her to the Department of Public Health were sufficiently "extreme and outrageous" to state a claim for intentional infliction of emotional distress.  In <u>Kennedy v. Coca-Cola Bottling Co. of New York, Inc.</u>, 170 F. Supp. 2d 294, 298 (D. Conn. 2001), the court held that the actions of an employer in disclosing to the employees and supervisors involved in wrongdoing the plaintiff's complaints that they had engaged in a variety of illegal or improper

activities at the workplace, with the result that the plaintiff suffered retaliation and harassment, was conduct sufficiently "extreme and outrageous" to go to a jury. In McKelvie v. Cooper, 190 F.3d 58 (2d Cir. 1999), the Second Circuit, applying Connecticut law, held that the alleged actions of police officers in abusing the patron of a bar during a search of the premises could be found by a jury to be sufficiently extreme and outrageous to warrant a verdict in the plaintiff's favor.  In Moss v. Town of East Haven, 2001 WL 1002684, at *2 (Conn. Super. 2001), the court held that a police officer's conduct at the plaintiff's home in threatening the plaintiff "with his hand on his exposed service revolver" while not allowing the plaintiff to leave, was sufficiently "extreme and outrageous" to warrant submitting the action to a jury's determination.  In Bell v. Board of Education, 55 Conn. App. 200, 739 A.2d 321 (1999), the court held that allegations that the defendant imposed a system of education which created a pervasive atmosphere of fear and terror in an elementary school classroom over a two-year period adequately alleged conduct which a jury could find was "extreme and outrageous".[5]  See also Baird v. Rose, 192 F.3d 462 (4th Cir. 1999), holding that the actions of a

---

[5]  In Appleton v. Board of Education, 254 Conn. 205 (2000), the Supreme Court cited Bell with approval.  Appleton held that an employer's actions in "condescending" to the plaintiff, suggesting to her daughter that she should "take a few days off from work" and having her escorted off the premises by police did not reach the minimum standard articulated in Bell and other cases for conduct which is "extreme and outrageous".

school teacher in humiliating a student in class because of her clinical depression was "extreme and outrageous" under Virginia law.  In  Rosten v. Circuit Wise, Inc., 7 C.S.C.R. 1147 (1992), an employer discharged the plaintiff because of her union organizing activities.  In Lugo v. Rodriguez, 8 C.S.C.R. 244 (1992), an attorney intentionally delayed in releasing a lis pendens.  Breach of an oral agreement to restructure a loan was held sufficiently extreme and outrageous in Connecticut National Bank v. Montanari, 9 CSCR 196 (1994). Surveillance by an insurance company to determine the validity of a claim was held sufficiently extreme and outrageous to withstand a motion to dismiss in Bosco v. MacDonald, 13 Conn. L. Rptr. No. 10, 312 (1995).  In a similar case, the United States Court of Appeals for the First Circuit, applying Connecticut law, held that a union officer's conduct over a period of three weeks in driving by a union member's home several times a day and following him when he left his house was sufficiently extreme and outrageous to support a jury verdict in the member's favor.  Johnson v. Teamsters Local 559, 102 F.3d 21 (1st Cir. 1996). See also Anderson v. Drapp, 35 Conn. L. Rptr. No. 11, 415 (2003) (Doherty, J.), holding that criminal stalking over a long period was "extreme and outrageous" within the meaning of the common law.  In Desardouin v. United Parcel Service, Inc., 285 F. Sup. 2d 153, 161 (D. Conn. 2003), the court held that comments by the defendant's driver, made in the presence of the plaintiff's customers,

suggesting that the plaintiff was a poor credit risk and arguably making racially demeaning references to him, could be found "extreme and outrageous" so as to survive a motion for summary judgment.  A job supervisor's false accusation of lying, made in the presence of one of the plaintiff's fellow employees, is sufficiently "extreme and outrageous" to warrant submitting the case to the jury. Musacchio v. Cooperative Educational Services, 1995 WL 681664, 1 Conn. Ops. 1319 (1995).  Cf., Decampos v. Kennedy Center, Inc., 1990 WL 264687 at * 4 (1990).  An allegation that a police officer had written a letter in support of his former girlfriend, who was a fellow officer, in which he falsely asserted that a person who had brought charges against her was lying, asserted conduct that was sufficiently extreme and outrageous to survive summary judgment.  Stack v. Jaffee, 248 F. Supp. 2d 100, 104-05 (D. Conn. 2003) (Burns, J.).  A cause of action for intentional infliction of emotional distress was stated in an employment context when the plaintiff alleged that his supervisor "severely harassed and mistreated [him], and created a situation where he was denied effective assistance in the performance of his job, open communication and fairness, unfairly placed on a 60-day performance improvement plan and then constructively fired."  Grossman v. Computer Curriculum Corp., 131 F. Supp. 2d 299, 310-11 (D. Conn. 2000).  An allegation that an employer framed an employee for theft, terminated her with that as an excuse, and then publicly

23

branded her a thief was sufficiently extreme and outrageous to survive a motion
to strike in <u>White v. Thornton Oil Corp.</u>, 32 Conn. L. Rptr. No. 14, 505 (2002);
and later, in a ruling by a different judge, to survive a motion for summary
judgment in <u>White v. Thornton Oil Corp.</u>, 36 Conn. L. Rptr. No. 8, 279 (2004).
The action of a police officer in sending a taunting Christmas card to a pretrial
detainee at the Hartford Correctional Center was sufficiently "extreme and
outrageous" to survive a motion to strike.  <u>Johnson v. Martin</u>, 2 Conn. Ops. 764,
1996 WL 383351, at *3 (Conn. Super. 1996) (Sheldon, J.).  In <u>Talit v. Peterson</u>,
44 Conn. Sup. 490, 497-98 (1997) (Blue, J.), the allegation that the defendants
had subjected the plaintiff, a coworker, to unjustified criticism and caused her to
lose her job for filing a grievance was held sufficiently extreme and outrageous to
survive a motion to strike.  A verbal threat to commit an assault may be "extreme
and outrageous" within the law's meaning.  RESTATEMENT (SECOND) OF
TORTS § 31 (1965); <u>American Progressive Life & Health Ins. Co. of N.Y. v.
Better Benefits, LLC</u>, 35 Conn. L. Rptr. No. 12, 435, 437 (2003) (*dicta*) (Blue, J.).
The disputed allegation that the defendant physicians had falsely reported to
police that the plaintiff had physically abused his wife, causing the plaintiff to be
arrested, were potentially sufficiently extreme and outrageous to require denial of
a motion for summary judgment in <u>Pantaleo v. Ravski</u>, 19 Conn. L. Rptr. No. 1,
28 (1997) (Silbert, J.).  Terminating an employee in retaliation for his union

activities has been held to be sufficiently "extreme and outrageous" to support a jury verdict and award of substantial damages for intentional infliction of emotional distress.  Mihalick v. Cavanaugh, 26 F. Supp. 2d 391, 396 (D. Conn. 1998).  The action of a school official in falsely reporting suspected child abuse to the Department of Children and Families was held sufficiently "extreme and outrageous" to survive a motion for summary judgment in Chain v. Biddle, No. CV-97-0407047 (N.H. Sup. Ct. 1999) (Licari, J.); and to survive a Motion to Strike in Greco v. Anderson, 28 Conn. L. Rptr. No. 17, 605 (2001) (Shortall, J.). Assigning the plaintiff to a work station close to that of a co-employee who had threatened her and whom she feared was held sufficiently "extreme and outrageous" to survive a motion to strike in Karanda v. Pratt & Whitney Aircraft, 24 Conn. L. Rptr. 521 (1999).

All of these cases found the conduct alleged to be such that a jury representing a fair cross-section of the community should determine whether it was "extreme and outrageous" as required by the law.  Ultimately, it is a community standards test that applies.  For a court to strike a complaint at the pleading stage, or to grant summary judgment prior to trial, constitutes a judicial determination as a matter of law that the alleged conduct is acceptable in our society.  In any case where it is not obvious that the conduct *is* acceptable, the court should defer to the collective wisdom of the jury.  Faraclas v. Botwick, 32

25

Conn. L. Rptr. No. 11, 414 (2002).

Other jurisdictions agree with Connecticut's prevailing view that a very wide range of human interaction, when presented as the tort of intentional infliction of emotional distress, can withstand a motion to dismiss. E.g., Newby v. Alto Riviera Apartments, 60 Cal. App. 3d 288, 131 Cal. Rptr. 547 (1976) (a landlord's threats to evict a tenant for organizing other tenants); Alcorn v. Anbro Engineering, Inc., 2 Cal. 3d 493, 468 P.2d 216 (1970) (racial taunting by a supervisor); Contreras v. Crown Zellerbach Corp., 88 Wash. 2d 735, 741 (1977) (racial jokes by a supervisor); Carroll v. Beyeriche Landesbank, 125 F. Supp. 2d 58 (S.D.N.Y. 2000) (sexual harassment of a female employee); Akers v. Alvey, 338 F.3d 491, 496-97 (6th Cir. 2003) (sexual harassment by supervisor); Patterson v. Xerox Corp., 901 F. Supp. 274, 279 (N.D. Ill. 1995) (harassment of pregnant employee by supervisor); Pavilon v. Kaferly, 204 Ill. App. 3d 235, 149 Ill. Dec. 549, 561 N.E.2d 1245, 1251 (1990) (employer pressured employee for dates, offered her money for sexual favors, and threatened to rape or kill her); Milton v. Illinois Bell Tel. Co., 101 Ill. App. 3d 75, 56 Ill. Dec. 497, 427 N.E.2d 829, 832 (1981) (employer engaged in pattern of harassing employee to force her to falsify work reports); Mejia v. City of New York, 119 F. Supp. 2d 232, 285-

86 (E.D.N.Y. 2000) (racial remarks by a police officer[6]); <u>Brown v. Muhlenberg Township</u>, 269 F.3d 205 (3d Cir. 2001) (police officer shot plaintiff's dog); <u>Bundren v. Superior Court</u>, 145 Cal. App. 3d 784, 791 (1983) (hospital's attempt to collect debt while debtor was still hospitalized); <u>Wilson v. Monarch Paper Co.</u>, 939 F.2d 1138 (5th Cir. 1991) (reassigning a college-educated executive to perform janitorial duties); <u>Mroz v. Lee</u>, 5 F.3d 1016 (6th Cir. 1993) (defamation); <u>Shubbe-Hirt v. Baccigalupi</u>, 94 F.3d 111 (3d Cir. 1996) (supervisor's verbal abuse of female subordinate after telling fellow supervisors he was going to "trim her bush"); <u>Ross v. Saint Augustine's College</u>, 103 F.3d 338 (4th Cir. 1996) (faculty retaliation against student for testifying on behalf of a professor in a reverse discrimination case); <u>Jackson v. Brown</u>, 904 P.2d 685 (Utah 1995) (groom's last-minute cancellation of wedding).  Often, it is not the discrete, individual acts that rise to the level of extreme and outrageous conduct, but the pattern of such discrete acts that does so.  *E.g.*, <u>Davignon v. Clemmey</u>, 322 F.3d 1, 6-7 (1st Cir. 2003) ("a long and relentless campaign of harassment and intimidation").

      This court does not "sit as a seventh juror."  The plaintiff has a right to

_____

      [6]  The court also held that a lower standard for outrageousness applies when the defendant is a public official, like a police officer, because misconduct by one in a position of power is by its very nature more offensive than similar misconduct by a private citizen.

have a jury determine whether the conduct in question is sufficiently outrageous to justify an award of damages.  Berry v. Loyseau, supra, 223 Conn. at 807; Mather v. Griffin Hospital, 207 Conn. 125, 138 (1988).

Finally, as to the claim that there is insufficient evidence of actual emotional distress in this case, Connecticut law is clear that medical evidence is not necessary to support a judgment for emotional distress damages.  The credible testimony of the victim is sufficient.  Berry v. Loiseau, 223 Conn. 786, 811, 614 A.2d 414 (1992); Schanzer v. United Technologies Corp., 120 F. Supp. 2d 200, 217 (D. Conn. 2000).  In Opielowski-Brouwer v. Haddam Hills Academy, 31 Conn. L. Rptr. No. 6, 193 (2002) (Shapiro, J.), the court refused to reduce a jury's award of $260,000 for emotional distress caused by an employer's verbally threatening and abusive conduct during the plaintiff's wrongful termination from employment, in the absence of any medical evidence.  Emotional distress consisting of a loss of joy in the everyday events of life, characterized by no longer singing in the shower, with no professional attention whatsoever, is sufficient not only to establish this element of the tort but to support a substantial six-figure jury award.  DeLaurentis v. City of New Haven, 220 Conn. 225, 597 A.2d 807 (1991).  "Just as the fact of treatment is not sufficient to prove the existence of severe emotional distress, the absence of treatment does not

28

preclude proof of severe emotional distress."  <u>Birdsall v. City of Hartford</u>, 249 F.

Supp. 2d 163, 175 (D. Conn. 2003) (Underhill, J.) (holding that "memory loss and

anxiety...are sufficiently serious that a reasonable jury could find for the

plaintiff").

## <u>Conclusion</u>

The defendants may be able to convince a jury of their claims.  The

dispute between them and the plaintiff is factual in nature, however, and not

legal.  If the plaintiff's claims are believed as they may be, the plaintiff will be

entitled to prevail in this action.  The motion for summary judgment must be

denied.


Respectfully submitted:


_____
JOHN R. WILLIAMS (ct00215)
Williams and Pattis, LLC
51 Elm Street, Suite 409
New Haven, CT 06510
Telephone: 203.562.9931
FAX: 203.7876.949
E-Mail: jrw@johnrwilliams.com
Plaintiff's Attorney

CERTIFICATION OF SERVICE

On the date above stated, a copy hereof was mailed to Attorney Nancy A. Brouillet, Assistant Attorney General P. O. Box 120, Hartford, CT 06141-0120 (Fax: 860.808.5383; E-Mail: nancy.brouillet@po.state.ct.us).

_____
John R. Williams