UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NORMA CHRISTIAN | : | |
| | : | |
| VS. | : | NO. 3:03CV524(RNC) |
| | : | |
| STATE OF CONNECTICUT, | : | |
| JUDICIAL BRANCH, | : | |
| COURT OPERATIONS DIVISION | : | |
| and SABRINA SANTORO | : | SEPTEMBER 7, 2004 |

**PLAINTIFF'S LOCAL RULE 56 STATEMENT**

A.   **RESPONSES TO DEFENDANTS' CLAIMS OF FACT:**

1. Agree.

2. Agree.

3. Agree.

4. Agree.

5. Agree.

6. Agree.

7. Agree.

8. Agree.

9. Disagree.  (Exhibit A, ¶¶ 4, 5, 7, 9, 10, 11; Exhibit B, ¶¶ 8, 9, 10, 12, 13, 14, 15, 16)

10. Agree.

11. Objection. Irrelevant. The defendants admit that the plaintiff was forced out of work because of a severe, and obviously unforeseeable, automobile accident.

12. Disagree. The plaintiff is familiar with a white male court reporter who was forced to take a lengthy emergency medical leave because of a heart attack. (Exhibit A, ¶¶ 7, 9; Exhibit B, ¶¶ 12, 13; Exhibit C, ¶ 9)

13. Disagree. (Ibid.)

14. Agree.

15. Agree. In addition, the plaintiff required reasonable accommodation of her ongoing accident-related disability upon her return to work. (Exhibit B, ¶ 5)

16. Agree.

17. Agree.

18. Agree.

19. Agree.

20. Objection. Irrelevant.

21. Agree.

22. Agree.

23. Agree.

24. Disagree. (Exhibit B, ¶ 6)

25. Agree.

26. Agree.

27. Because the plaintiff was not present, she is unable to respond to this allegation.

28. Disagree. (Exhibit A, ¶ 4; Exhibit B, ¶¶ 8, 9; Exhibit C, ¶ 8)

29. Agree.

30. Disagree. (Exhibit A, ¶¶ 7, 9; Exhibit B, ¶¶ 12, 13; Exhibit C, ¶ 12)

31. Agree.

32. Disagree. (Exhibit A, ¶¶ 7, 9; Exhibit B, ¶¶ 12, 13; Exhibit C, ¶ 12)

33. Agree.

34. It is not possible to respond to this claim because of its vagueness in that "on a daily basis" is not defined in terms of the number of days involved. Therefore, the plaintiff objects to this paragraph and moves to strike it.

35. Agree.

36. Agree that stenographers are paid more than court monitors. Disagree as to the second sentence, because defendant Santoro had no such concerns when white male court reporters used such equipment. (Exhibit A, ¶ 8; Exhibit B, ¶ 15; Exhibit C, ¶ 14)

37. Agree with sentence one and sentence three. Disagree with sentence two. (Exhibit A, ¶ 8; Exhibit B, ¶ 15; Exhibit C, ¶ 14)

38. Disagree. (Exhibit B, ¶ 15)

39. Disagree. (Exhibit A, ¶ 6; Exhibit B, ¶¶ 15, 16, 17)

40. Disagree. (Exhibit B, ¶ 15)

41. Disagree. (Exhibit A, ¶¶ 7, 9; Exhibit B, ¶¶ 12, 13; Exhibit C, ¶ 12)

42. Agree.

43. Disagree. (Exhibit A, ¶ 13(a); Exhibit B, ¶ 21)

44. Agree.

45. Disagree. (Exhibit A, ¶ 13(a); Exhibit B, ¶ 21)

46. Disagree. (Ibid.)

47. Disagree. (Ibid.)

48. Agree.

49. Disagree. (Exhibit B, ¶ 14)

50. Disagree. (Exhibit B, ¶ 16) Plaintiff moves to strike Paragraphs 24 through 26 of the Parent affidavit because they are inadmissible hearsay.

51. Disagree. (Exhibit B, ¶ 16) Plaintiff moves to strike Paragraphs 24 through 26 of the Parent affidavit because they are inadmissible hearsay.

52. Agree that the defendants did these things to the plaintiff. Disagree as to the reason they did them. (Exhibit A, ¶¶ 10, 11; Exhibit B, ¶¶ 16, 17)

53. Agree that the punishment was imposed. Disagree as to the reason for the punishment. (Exhibit A, ¶¶ 10, 11; Exhibit B, ¶¶ 16, 17)

4

54. Disagree that this reprimand was imposed upon the plaintiff. Disagree as to the truth of its assertions. (Exhibit A, ¶¶ 10, 11; Exhibit B, ¶¶ 16, 17)

55. Agree.

56. Agree.

57. Agree that a predisciplinary hearing was scheduled. Disagree as to the reasons. (Exhibit A, ¶¶ 13, 14)

58. Agree.

59. Disagree. (Exhibit A, ¶¶ 8, 13; Exhibit B, ¶ 15; Exhibit C, ¶ 14)

60. Agree.

61. Disagree with first sentence, because the plaintiff did not commit any such offense. (Exhibit A, ¶ 13(a)) Agree with second sentence.

62. Agree that the plaintiff received such an evaluation. Disagree as to the reason, in that the unfavorable evaluation closely followed the plaintiff's having filed a complaint against the defendants with the Commission on Human Rights and Opportunities and the Equal Employment Opportunity Commission. (Exhibit B)

63. Objection. Irrelevant. The question is not whether it is "considered a disciplinary action under the collective bargaining agreement or State of Connecticut personnel regulations" but whether it constitutes an adverse

employment action within the meaning of federal law.  *See* Patrolmen's Benevolent Ass'n. v. City of New York, 310 F.3d 43, 51 (2d Cir. 2002); de la Cruz v. New York City Human Resources Admin. Dep't of Social Servs., 82 F.3d 16, 21 (2d Cir. 1996); Rodriguez v. Board of Educ., 620 F.2d 362, 366 (2d Cir. 1980).

  64. Disagree.  (Exhibit A, ¶ 11; Exhibit B)

  65. Disagree.  (Exhibit D)

  66. Agree.

  67. Disagree.  (Exhibit B, ¶ 17)

  68. Disagree.  (Exhibit A, ¶ 11; Exhibit B, ¶ 16)

  69. Agree.

  70. Agree.

  71. Agree.

  72. Objection.  Irrelevant.  University of Tennessee v. Elliott, 478 U.S. 788, 795 (1986); Raniola v. Bratton, 243 F.3d 610, 623-24 (2d Cir. 2001).  *Cf., e.g.,* DeCintio v. Westchester County Med. Ctr., 821 F.2d 111, 114-15 (2nd Cir. 1987); Roth v. Koppers Indus, Inc., 993 F.2d 1058, 1060-63 (3rd Cir. 1993); Rao v. County of Fairfax, Va., 108 F.3d 42, 45 (4th Cir. 1997); Duggan v. Board of Education, 818 F.2d 1291, 1293-95 (7th Cir. 1987); Abramson v. Council Bluffs Community School Dist., 808 F.2d 1307, 1308-09 (8th Cir. 1987); McInnes v.

California, 943 F.2d 1088, 1093-94 (9th Cir. 1991).

    73. Disagree. Toyota Motor Mfg., Ky, Inc. v. Williams, 534 U.S. 184, 122 S. Ct. 681, 691 (2002).

    74. Disagree. Toyota Motor Mfg., Ky, Inc. v. Williams, 534 U.S. 184, 122 S. Ct. 681, 691 (2002).

    75. Disagree. Toyota Motor Mfg., Ky, Inc. v. Williams, 534 U.S. 184, 122 S. Ct. 681, 691 (2002).

    76. Agree.

    77. Disagree. Toyota Motor Mfg., Ky, Inc. v. Williams, 534 U.S. 184, 122 S. Ct. 681, 691 (2002).

    78. Agree.

    79. Disagree. (Exhibit A, ¶¶ 6, 14; Exhibit B, ¶¶ 11, 17)

    80. Disagree. (Ibid.)

    81. Agree that the plaintiff complained twice to the CHRO and the EEOC, but otherwise disagree. (Ibid.)

    82. Agree.

    83. Agree.

    84. Agree.

    85. Agree.

    86. Agree.

87. Agree.

88. Irrelevant.  The defendant's susceptibility to suit for employment discrimination is clear as a matter of law.  Fitzpatrick v. Bitzer, 427 U.S. 445 (1976).

89. Irrelevant.  Fitzpatrick v. Bitzer, 427 U.S. 445 (1976).

90. Agree that Santoro is not an employer.  Disagree that she is a co-worker.  (Defendants' Answer to Complaint, ¶ 7)

91. Agree.

92. Disagree.  (Exhibits A, B and C, in their entirety)

93. Disagree.  (Ibid.)

94. Disagree.  (Ibid.)


**B.    PLAINTIFF'S STATEMENT OF FACTS:**

1. The defendant Judicial Branch of the State of Connecticut is an employer as defined in Title VII and the Connecticut Fair Employment Practices Act.  (Defendants' Answer to Complaint, ¶ 6)

2. The defendant Santoro is, and was at all times mentioned in the Complaint, the Court Reporter for the Judicial District of New Haven, where the plaintiff has been employed throughout her career.  Defendant Santoro was the plaintiff's supervisor at all times mentioned in the Complaint.  (Defendants'

8

Answer to Complaint, ¶ 7)

    3. The plaintiff has been employed by the defendant Judicial Branch as a Court Reporter since January of 1977. (Defendants' Answer to Complaint, ¶ 9)

    4. The unfavorable performance evaluation which the plaintiff received in October of 2001 was the first unfavorable performance evaluation she had received since her employment began in January of 1977. (Defendants' Answer to Complaint, ¶ 28) That unfavorable evaluation followed by less than two months the plaintiff's filing of an employment discrimination complaint with the Connecticut Commission on Human Rights and Opportunities and the United States Equal Employment Opportunity Commission. (Exhibit B)

    5. On February 27, 2000, the plaintiff was involved in a car accident which broke her left hip and left her in a body brace for six months and unable to work for one year. (Exhibit A, ¶ 2; Exhibit B, ¶ 4) When she returned to work, her physician issued a letter to the defendants explaining that the plaintiff had "a lifting restriction and she will need to be able to get up and move around during short intervals." (Exhibit B, ¶ 5)

    6. While the plaintiff was out of work due to her injury, her dictating machine, books, transcripts, files containing transcript orders, shoes, tape recorder, pens, pencils, transcript covers and other items of personal property were placed in cardboard boxes and thrown on the floor. No other court reporter

or court monitor ever was subjected to such treatment.  (Exhibit A, ¶ 4; Exhibit B, ¶¶ 8, 9)

      7.  After the plaintiff returned to work, defendant Santoro for two weeks refused to provide her with a key card to obtain entrance to the building, despite requests for the card.  (Exhibit A, ¶ 5; Exhibit B, ¶ 10)

      8.  The plaintiff complained in writing to the Human Resources division of the defendant Judicial Branch, in writing to defendant Santoro, and orally to Nancy Brown of Human Resources concerning the facts that (a) she was denied a key card for two weeks whereas a white court reporter who had such a key card was ordered by defendant Santoro not to share it with the plaintiff, and (b) her property was boxed and thrown on the floor despite the fact that many white court reporters had gone out on extended leaves without having their property so abused.  (Exhibit A, ¶ 6; Exhibit B, ¶ 11)

      9.  Several white female court reporters and monitors who were out on extended maternity leave, and a white male court reporter who was out of work on an extended medical leave because of a heart condition, were upon returning to work assigned to work with retired judges who did not work the entire day and whose work load was light.  This type of assignment was denied to the plaintiff, who instead was assigned upon her return to work in the Family Court, which was the most strenuous and chaotic assignment in the courthouse.  (Exhibit A,

¶¶ 7, 9; Exhibit B, ¶¶ 12, 13)

    10.  Two or three white male court reporters had, like the plaintiff, occasionally used court monitoring recorders to back up their stenographic notes.  Defendant Santoro was aware of these facts.  (Exhibit A, ¶ 8; Exhibit B, ¶ 15; Exhibit C, ¶ 14)

    11.  Upon the plaintiff's return to work, defendant Santoro called the plaintiff names, intimidated the plaintiff, stuck notes on the plaintiff's door and harassed her on the telephone and via memos and e-mail.  (Exhibit A, ¶ 9(b))

    12.  On March 16, 2001, defendant Santoro subjected the plaintiff to verbal harassment in front of others concerning the plaintiff's work habits. (Exhibit A, ¶ 10)

    13.  On the afternoon of March 16, 2001, in a hallway of the Superior Court building in New Haven, defendant Santoro shouted at the plaintiff: "Get your ass to your office and do your transcripts....Get away from my office you black bitch."  (Exhibit A, ¶ 11; Exhibit B, ¶ 16)

    14.  As a result of the defendants' having transferred the plaintiff from the New Haven Judicial District Courthouse to the New Haven Juvenile Courthouse, the plaintiff suffered a loss of approximately $12,000 in transcript payments. (Exhibit A, ¶ 12)

    15.  The plaintiff never lost and/or misplaced her stenographic notes from

11

a trial that caused a mistrial to be declared.  (Exhibit A, ¶ 13(a))

 16.  The plaintiff complained to Nancy Brown of the Judicial Branch Human Relations division concerning the discrimination to which she was being subjected, until she was ordered not to make such complaints.  (Exhibit A, ¶ 14)

 17.  Unlike her treatment of the white court reporters, defendant Santoro closely monitored the plaintiff's comings and goings within the courthouse, berating her if she stepped out for a cup of coffee and attempting to discipline her for actions which were permitted to white court reporters.  (Exhibit B, ¶¶ 14, 15)

 18.  On March 18, 2001, the plaintiff complained in writing to the Manager of Transcript Services about the verbal and explicitly racial abuse to which defendant Santoro had subjected her on March 16, 2001.  In retaliation for that complaint, on March 21, 2001, the Director of Court Operations suspended the plaintiff and on April 2, 2001, the plaintiff was reassigned to the Juvenile Courthouse at New Haven.  (Exhibit B, ¶ 17)

 19.  On April 9, 2001, defendant Santoro ordered the plaintiff to turn in her stenographic notes at the end of each business day.  No such requirement ever has been imposed upon any white caucasian court reporter.  (Exhibit B, ¶ 18)

 20.  On April 23, 2001, defendant Santoro ordered the plaintiff to report to "a formal counseling session" on April 24 and denied her union representation.

On April 24, 2001, the Manager of Transcript Services reiterated defendant Santoro's order that the plaintiff turn in her stenographic notes at the end of each business day and threatened the plaintiff with "discipline" if she failed to do so. No white court reporter ever has been subjected to treatment of this kind. (Exhibit B, ¶¶ 19, 20)

21. On May 30, 2001, the defendants suspended the plaintiff without pay for ten days on the ground that the plaintiff had lost stenographic notes. In fact, to their knowledge, the plaintiff had not lost those notes but in fact had, as ordered, turned them in to defendant Santoro. (Exhibit B, ¶ 21)

22. Contrary to her claims, defendant Santoro was fully aware that the plaintiff would return to work, after her accident, when she did. Both she and the Judicial Branch had been notified. (Exhibit C)

23. While it is true that offices are used by others when the regular occupants are absent, it is not true that personal belongings are removed from the desks under these circumstances. Moreover, the desk from which defendant Santoro removed the plaintiff's belongings in fact was not being used by anybody. It was a personal desk which the plaintiff had purchased with her own funds. (Exhibit C, ¶ 8)

24. Because of the nature of their assignments, some judges make far lighter demands upon court reporters than others. For example, Judge

Reynolds, whose courtroom was located only a few steps from the plaintiff's office, handled tax appeals and ordinarily was done for the day by 11:00 a.m. Judge Alander, to whom defendant Santoro assigned the plaintiff immediately upon her return to work, was located farther from the plaintiff's office than any other courtroom in the building and his courtroom was always the busiest and required the most work.  (Exhibit C, ¶ 12)

    25.  Upon receiving her unfavorable evaluation from the defendants in October of 2001, the plaintiff immediately filed a retaliation complaint with the Commission on Human Rights and Opportunities and the Equal Employment Opportunity Commission.  (Exhibit D)

                                  THE PLAINTIFF


BY_____
    JOHN R. WILLIAMS (ct00215)
    Williams and Pattis, LLC
    51 Elm Street, Suite 409
    New Haven, CT 06510
    Telephone: 203.562.9931
    FAX: 203.7876.949
    E-Mail: jrw@johnrwilliams.com
    Her Attorney

CERTIFICATION OF SERVICE

On the date above stated, a copy hereof was mailed to Attorney Nancy A. Brouillet, Assistant Attorney General P. O. Box 120, Hartford, CT 06141-0120 (Fax: 860.808.5383; E-Mail: nancy.brouillet@po.state.ct.us).

_____
John R. Williams