UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

NORMA CHRISTIAN,

    Plaintiff,

V.

    CASE NO. 3:03CV524(RNC)

JUDICIAL BRANCH OF THE
STATE OF CONNECTICUT, ET AL.,

    Defendants.

## RULING AND ORDER

Plaintiff served as a court reporter for the Judicial Branch of the State of Connecticut ("the Branch") for many years until her retirement in May 2003. She claims that for approximately seven months in 2001, the Branch and her immediate supervisor, Sabrina Santoro, discriminated against her because of her race after she returned from a lengthy absence. Defendants have moved for summary judgment dismissing the complaint in its entirety. In response to the motion, plaintiff has withdrawn a number of claims. The remaining claims are (1) a race discrimination claim against the Branch under Title VII of the Civil Rights Act of 1964; (2) a race discrimination claim against Santoro under 42 U.S.C. § 1983; and (3) a common law claim against Santoro for intentional infliction of emotional distress ("IIED").[1] For the

---

[1] Plaintiff also asserts a claim for injunctive relief against the Branch under § 504 of the Rehabilitation Act. This claim warrants no extended discussion because plaintiff has failed to indicate what injunctive relief she needs as a retiree and the record discloses no basis on which injunctive relief can be granted.

reasons that follow, the motion is granted.

Background

The pleadings, depositions, affidavits and other exhibits on file, viewed most favorably to the party opposing summary judgment, show the following. Plaintiff, who is African-American, fractured her hip in a motor vehicle accident and was out of work for almost a year. When she returned, Santoro assigned her to the busiest courtroom, telling her she should inform the judge when she needed a recess. Plaintiff had difficulty keeping up with the courtroom proceedings and therefore began to use a recording device as a "back-up," although this practice was expressly forbidden by the Branch.

Plaintiff's return to work was marked by other difficulties as well. She was upset to find that her belongings had been removed from her desk while she was on leave and the tripod for her stenographic machine had been broken. In addition, her request for a key card to the courthouse parking garage was not acted on for two weeks.

On March 16, 2001, a heated exchange took place between plaintiff and Santoro in a hallway of the courthouse. As a result, plaintiff was suspended with pay pending an investigation. James R. Maher, Director of Court Operations, subsequently gave her a written reprimand for insubordination.

On April 2, 2001, plaintiff was reassigned from Superior

Court to Juvenile Court. She filed a union grievance objecting to the transfer but got no relief. She was required to undergo formal supervisory counseling from Nancy Brown, Supervisor of Transcript Services, regarding her duties and responsibilities. (Defs.' Index of Evidence Ex. 6, Attach. F.). This precipitated the filing of another union grievance. The grievance alleged that plaintiff was being subjected to a pattern of unfair treatment. Once again she got no relief.

Things soon got worse. On May 30, 2001, after a hearing, plaintiff was suspended without pay for thirty days by Executive Director of Court Operations Joseph D'Alesio. The reason given was her inability to provide stenographic notes or transcripts for courtroom proceedings in a number of cases. Branch officials were convinced that she had destroyed the notes. In one of the cases, the Branch's lack of a proper record of courtroom proceedings resulted in the declaration of a mistrial.

Finally, on October 29, 2001, plaintiff received an unsatisfactory performance evaluation for the first time in her career with the Branch. The negative evaluation was based on the conduct for which she had been disciplined since her return from medical leave. The evaluation was prepared by Santoro and approved by Brown.

Discussion

Standard for Summary Judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with [any] affidavits [presented by the parties] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Because the purpose of summary judgment is to isolate and dispose of claims that lack evidentiary support, the nonmoving party may not rest on the allegations of its pleadings, but must point to evidence showing that the case involves a genuine issue of material fact requiring a trial. A fact is "material" for purposes of Rule 56 if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc, 477 U.S. 242, 248 (1986). An issue as to a material fact is "genuine" if the evidence, viewed most favorably to the nonmoving party, would permit a reasonable jury to return a verdict for that party. Id.

Title VII Claim[2]

Title VII makes it unlawful for an employer to discriminate against any individual with respect to terms, conditions, or privileges of employment because of the individual's race. 42

---

[2] The complaint alleges that plaintiff has complied with Title VII's procedural prerequisites and received a release of jurisdiction from the Connecticut Commission on Human Rights and Opportunities. Defendants deny these allegations but present no evidence to support their position. Accordingly, I address the Title VII claim on the merits.

4

U.S.C. § 2000e-2(a)(1). A plaintiff can establish a prima facie case of discrimination by showing that he or she (1) belongs to a protected group; (2) was performing satisfactorily; (3) suffered an adverse employment action; and (4) the action occurred in circumstances supporting an inference that it was caused by discrimination. Evidence comprising a prima facie case raises a presumption that the defendant's action was motivated by discrimination. To rebut this presumption, the defendant must articulate a non-discriminatory reason for its action. The burden then shifts back to the plaintiff to show that the proffered reason is not the true or only reason for the defendant's action and that the action was motivated at least in part by discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973); see also Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).

Sufficient evidence to permit a jury to find that the defendant's stated reason for its action is untrue, combined with evidence comprising a prima facie case, may permit an inference that the defendant is "dissembling to cover up a discriminatory purpose." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000). see also Windham v. Time Warner, Inc., 275 F.3d 179, 188 (2d Cir. 2001); Zimmerman v. Assocs. First Capital Corp., 251 F.3d 376, 381 (2d Cir. 2001). However, "conclusory allegations of discrimination are insufficient to satisfy the

requirements of Rule 56(e)." Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985).

Plaintiff's Title VII claim against the Branch is based on alleged acts of retaliation by the Branch in violation of the statute. To defeat a motion for summary judgment in a Title VII retaliation case, a plaintiff must present sufficient evidence to permit a jury to find that (1) she engaged in activity protected by Title VII; (2) her employer was aware of the activity; (3) the employer took adverse action against her; and (4) there was a causal connection between the protected activity and the adverse action. See Cifra v. G.E. Co., 252 F.3d 205, 216 (2d Cir. 2001). If the plaintiff makes that showing, the defendant is required to provide a legitimate, nonretaliatory reason for its action. See Richardson v. N.Y. State Dep't of Corr. Serv., 180 F.3d 426, 443 (2d Cir. 1999). If that is done, the plaintiff must point to evidence that would permit a jury to find that the defendant's explanation is a pretext for retaliation. Id.

Plaintiff alleges that she was subjected to retaliation in violation of Title VII when she was suspended with pay in March 2001 and transferred to Juvenile Court the next month. The complaint alleges that the Branch took these actions because plaintiff had complained to Brown in writing that Santoro had called her a "black bitch." (Compl. ¶ 23.) Plaintiff has admitted under oath that she made no such complaint to anyone.

(Defs.' Index of Evidence Ex. 13 (Christian Dep. at 161).) This is fatal to her retaliation claim based on the suspension without pay and transfer because there is no allegation (or evidence) that she engaged in any other protected activity.[3]

Plaintiff claims that she was subjected to further retaliation when she was suspended without pay on May 30, 2001. She alleges that she was suspended because she objected to having to turn in her stenographic notes to Santoro at the end of each day. Plaintiff's brief does not attempt to show that she has a prima facie case of retaliation based on this suspension and it is unlikely that she does.[4] Moreover, the Branch provides clear and convincing evidence that she was suspended for a legitimate, nondiscriminatory reason -- her failure to provide notes or transcripts of several proceedings -- and she provides no evidence casting doubt on the Branch's explanation. In this

---

[3] To the extent plaintiff's complaint can be construed to allege that the suspension and transfer constituted disparate treatment in violation of Title VII, her claim cannot withstand summary judgment. The Branch has offered a legitimate, nondiscriminatory reason for Maher's actions -- plaintiff's insubordinate behavior toward Santoro on March 16 -- which is strongly supported by the account of a disinterested third party, Judicial Marshal Blakeslee, who witnessed the insubordinate behavior and, at the request of his supervisor, promptly prepared a written statement of what he saw and heard. Plaintiff provides no evidence that a similarly situated white court reporter (i.e. one who had engaged in insubordinate behavior) was treated differently by the Branch. Nor does she offer any other evidence to support a finding of pretext.

[4] Plaintiff points to no evidence that she complained to anyone that Santoro's order was discriminatory.

7

regard, she alleges that the officials who suspended her knew her notes had been confiscated by Santoro, but she points to no evidence that they were even aware of any such allegation before she was suspended.

Plaintiff claims that the negative performance review of October 2001 constituted yet another act of retaliation in violation of Title VII. She correctly points out that the evaluation was issued after she filed a complaint with the CHRO. However, a negative performance evaluation alone is not an adverse employment action. See Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000); Torres v. Pisano, 116 F.3d 625, 640 (2d Cir. 1997); Boyd v. Presbyterian Hosp., 160 F. Supp. 2d 522, 537 (S.D.N.Y. 2001). And the Branch's legitimate, nonretaliatory reason for the negative evaluation -- plaintiff's insubordinate conduct and failure to keep notes or produce transcripts -- is unrebutted.

Section 1983 Claim

Plaintiff claims that Santoro treated her differently than similarly situated white court reporters in violation of her Fourteenth Amendment right to be free from discrimination by state officials based on race. In connection with this claim, plaintiff alleges that Santoro (1) made her wait two weeks before giving her a key card to the parking garage; (2) failed to give her a light duty assignment; (3) monitored her movements; (4)

refused to let her use a recording device; and (5) subjected her to harassment and verbal abuse.

Plaintiff's claim against Santoro is analyzed using the same burden shifting framework applied to her Title VII claim against the Branch. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 n.1 (1993). This claim fares no better.

Plaintiff points to no evidence to support a finding that the two week delay in providing her with a key card constituted an adverse employment action. She points to no evidence that she requested a light duty assignment from Santoro, nor any evidence that Santoro gave a light duty assignment to a white reporter who similarly failed to request one. She does not deny that the assignment Santoro gave her enabled her to take frequent breaks, and a jury would be bound to find that when she was subsequently transferred to a different job she was so unhappy she filed a grievance. There is no evidence of unusual or improper monitoring of her actions by Santoro, nor any evidence of a failure by Santoro to monitor a similarly situated white reporter. Santoro's refusal to permit plaintiff to use a recording device cannot constitute an adverse employment action because such use was prohibited by the Branch and plaintiff offers no admissible evidence that Santoro knowingly permitted any white reporter to use a recording device as a back-up. Finally, plaintiff's allegations of harassment and verbal abuse

9

are conclusory and unsupported by proof of specific facts and, whatever Santoro might have said or done, there is no claim that the result was a discriminatorily hostile work environment. See Phillips v. Bowen, 278 F.3d 103, 109 (2d Cir. 2002); Howley v. Town of Stratford, 217 F.3d 141, 153 (2d Cir. 2000).

Plaintiff's allegation that Santoro called her a "black bitch," although insufficient to raise a genuine issue of material fact, is nevertheless so troubling on its face as to warrant some further discussion. Significantly, this allegation appears only in the affidavit plaintiff filed with the CHRO. The CHRO investigator rejected the allegation as incredible (Defs.' Index of Evidence Ex. 11.) and it has not been repeated since. The allegation is incredible in light of plaintiff's admitted failure to complain about it to anyone at the time; the inherent improbability of a person in Santoro's position making such an outrageous statement, which could cost her her job; the contents and tone of Santoro's written communications to plaintiff before and after she returned to work, which are plainly inconsistent with plaintiff's claim of racist hostility; and the absence of any allegation or evidence of any other racist statements by Santoro in the many years she served as plaintiff's supervisor.

Plaintiff's credibility on this issue is seriously undermined, moreover, by her admission that she did not report

10

Santoro's alleged slur to anyone, although she previously swore in her affidavit to the CHRO that she promptly reported it to Brown in writing. She now says that she did not know anyone she could complain to at the time. However, she filed a union grievance a short time after the racist statement allegedly was made, claiming a pattern of unfair treatment. Obviously relevant to any such alleged mistreatment would be her supervisor's calling her a "black bitch." But there is no allegation or evidence that plaintiff accused Santoro of using those words until she filed her CHRO complaint. Finally, plaintiff's allegation is contrary to the account of a disinterested witness concerning the events of March 16, which the witness put in writing at the request of his supervisor on March 19. (Defs.' Index of Evidence Ex. 6, Attach. D.) In view of all this, I am quite certain that no reasonable juror could or would credit plaintiff's testimony.

### IIED Claim

Since none of plaintiff's federal claims have survived summary judgment, supplemental jurisdiction will not be exercised over plaintiff's state law claim. See 28 U.S.C. § 1367(c)(3).

### Conclusion

Accordingly, defendants' motion for summary judgment is granted, the federal claims are dismissed with prejudice, and the IIED claim is dismissed without prejudice.

So ordered this 31st day of March 2005.

```
_____
    Robert N. Chatigny
 United States District Judge
```